**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **EARL BRADLEY** | **CIVIL ACTION** |
| **VERSUS** | **NO. 24-2678** |
| **TIME HOOPER, WARDEN** | **SECTION "P" (5)** |

# RESPONSE IN OPPOSITION TO GRANTING WRIT OF HABEAS CORPUS

## STATEMENT OF THE CASE

Petitioner, Earl Bradley, is a state court prisoner currently incarcerated at the Louisiana State Penitentiary in Angola, Louisiana. On October 28, 1999, the Jefferson Parish Grand Jury returned an indictment charging Earl Bradley and co-defendant, Albert T. Russell, with the July 31, 1999 Second Degree Murder of Barton Sanford, in violation of LSA-R.S. 14:30.1. (SCR, Vol. 1, pp. 37-38).[1] Bradley entered a plea of not guilty on February 28, 2000. (SCR, Vol. 1, p. 6). The matter proceeded to trial on August 21, 2000, which resulted in a mistrial. (SCR, Vol. 2, pp. 3326-3327). A second trial began on June 11, 2002, wherein the jury returned a verdict of guilty as charged. (SCR, Vol. 1, pp. 191-192). Bradley was sentenced to life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence on July 18, 2002. (SCR, Vol.1, p. 192). The

[1] Respondent refers to the Bates Stamp page designation at the bottom-center of each page of the state court record (SCR). Additionally, Respondent notes that Albert T. Russell entered a plea under Alford on the amended charge of Accessory after the Fact to Second Degree Murder in violation of La. R.S. 14:25:30.1. (SCR, Vol. 3, pp. 5211-5214).

conviction and sentence were obtained in Case No. 99-5825, Division "O," on the docket of the Twenty-Fourth Judicial District, Parish of Jefferson.

Bradley filed an appeal seeking direct review on April 15, 2003, which was docketed under Louisiana Fifth Circuit Court of Appeal No. 03-KA-384. (SCR, Vol. 1, pp. 740-769). On direct appeal, through counsel Bradley asserted the following errors: (1) the evidence was insufficient to support the verdict; and (2) his statements should have been suppressed because they were not legally obtained. On September 16, 2003, the Louisiana Fifth Circuit Court of Appeal affirmed Bradley's conviction and sentence. *State v. Bradley*, 08-384 (La. App. 5 Cir. 9/16/03), 858 So.2d 80. Specifically, the Court found no merit to either of Bradley's assignments of error. (SCR, Vol. 3, pp. 5329-5341).

On October 1, 2003, through counsel Bradley sought review of the Louisiana Fifth Circuit decision by filing a timely writ application with the Louisiana Supreme Court, Writ No. 03-K-2745. (SCR, Vol. 4, pp. 6461-6462). On February 13, 2004, that court denied relief. *State v. Bradley*, 03-2745 (La. 2/13/04), 867 So.2d 688. (SCR, Vol. 5, p. 6558).

<u>Post-Conviction Procedural History</u>

The post-conviction procedural history in this case is extensive. Bradley has filed five (5) applications for post-conviction relief. Bradley filed his first *pro se Uniform Application for Post-Conviction Relief* in the 24th J.D.C. on January 10, 2005.[2] In the application for post-conviction

[2] The application bears a date stamp of January 20, 2005. However, the application was signed but not dated by the petitioner. The affidavit submitted with the application is dated January 6, 2005 and petitioner signed and dated the memorandum in support on January 10, 2005. (See, SCR, Vol. 1, pp.913, 918, 937). Pursuant to the state "mailbox rule," the respondent uses the date the petitioner signed his application as the date of filing. *See*, *Causey v. Cain*, 450 F.3d 601, 604-05 (5th Cir. 2006).

relief, Bradley raised the following assignments of error: (1) he was entitled to DNA testing of swabs from the victim's hands and four drops of blood found at the crime scene pursuant to La. Code Crim. P. art. 926.1; and (2) ineffective assistance of counsel, with 8 subparts under this second assignment of error. Bradley alleged his trial counsel was ineffective for: (1) failing to file a motion to quash the indictment; (2) failure to file a bill of particulars; (3) failure to produce evidence of deal given to a State's witness at a motion to suppress hearing; (4) failure to view video surveillance nor object to the State's introduction of the video; (5) failure to call alibi witnesses to the stand; (6) failure to object to hearsay evidence; (7) failure to investigate the mental capacity of State's key witness; and (8) failure to advise Bradley of the constitutional rights waived by not taking the stand. (SCR, Vol. 1, pp. 905-969).

On February 1, 2005, the trial court issued an order denying relief finding Bradley did not comply with the requirements of La. Code Crim. P. art. 926.1 in seeking DNA testing, and that there was no merit to Bradley's claims of ineffective assistance of counsel as the claims pertained to trial counsel's trial tactics which do not rise to the level of ineffective assistance of counsel. (SCR, Vol. 1, pp. 902-904). Bradley did not seek review from the Louisiana Fifth Circuit Court of Appeal. *See* Local Rule 4-2, Local Rule 4-3.

Bradley filed a second *pro se Uniform Application for Post-Conviction Relief* in the 24th J.D.C. on May 8, 2008.[3] (SCR, Vol. 1, pp. 972-1006). In his second APCR, Bradley sought DNA testing under La. Code Crim. P. art. 926.1. The district court denied the request for relief pursuant

---

[3] The application bears a date stamp of May 14, 2008. Bradley did not date his application for post-conviction relief. Bradley's affidavit set forth in the application is dated May 8, 2008. Pursuant to the state "mailbox rule," the respondent uses the date the petitioner signed his application as the date of filing. *See, Causey v. Cain*, 450 F.3d 601, 604-605 (5th Cir. 2006). (SCR, Vol. 1, pp. 972-1006).

to La. Code Crim. P. art. 926(E), noting Bradley failed to follow the mandatory procedure provided in La. Code Crim. P. art. 926(D) regarding post-conviction applications.[4] The district court's May 20, 2008 Order specifically stated that the trial court's denial of the application for post-conviction relief "expresses no opinion of the merits of any claim." (SCR, Vol. 1, p. 1008). The record affirmatively reflects that Bradley did not seek review of this decision by the Louisiana Fifth Circuit. *See* Local Rule 4-2, Local Rule 4-3.

On June 27, 2008, Bradley filed a third *pro se Uniform Application for Post-Conviction Relief* in the 24th J.D.C.[5] Bradley listed three assignments of error: (1) that his conviction was obtained in violation of the United States and Louisiana Constitutions because Bradley was not informed of the nature of the charges against him; (2) the trial court exceeded its jurisdiction by allowing an insufficient accusation allegation sheet to be used for criminal charges; and (3) double jeopardy. The district court denied relief as untimely under La. Code Crim. P. art. 930.8 and

---

[4] **La. C.Cr.P. art. 926 Petition**

A. An application for post conviction relief shall be by written petition addressed to the district court for the parish in which the petitioner was convicted. A copy of the judgment of conviction and sentence shall be annexed to the petition, or the petition shall allege that a copy has been demanded and refused.

***

D. The petitioner shall use the uniform application for post conviction relief approved by the Supreme Court of Louisiana. If the petitioner fails to use the uniform application, the court may provide the petitioner with the uniform application and require its use.

E. Inexcusable failure of the petitioner to comply with the provisions of this Article may be a basis for dismissal of his application.

[5] The application bears a date stamp of July 2, 2008. Bradley did not date his application for post-conviction relief. However, Bradley's affidavit set forth in his application is dated June 27, 2008. Pursuant to the state "mailbox rule," the respondent uses the date the petitioner signed his application as the date of filing. *See, Causey v. Cain*, 450 F.3d 601, 604-605 (5th Cir. 2006). (SCR, Vol. 1, pp. 1012-1017)

repetitive and successive under La. Code Crime P. art. 930.4, issuing an order on July 11, 2008. (SCR, Vol. 1, pp. 1033-1035). Upon review of the record, there is nothing to indicate Bradley sought writs at the Louisiana Fifth Circuit Court of Appeal following denial of his third application for post-conviction relief by the trial court. *See* Local Rule 4-2, Local Rule 4-3.

Bradley filed Supervisory and/or Remedial Writs with the Louisiana Supreme Court on June 30, 2008, Writ No. 08-KH-1951.[6] (SCR, Vol. 5, pp. 6559-6580). The Louisiana Supreme Court denied the writ application on January 30, 2009, finding Bradley failed to show that he filed an application for post-conviction relief that was denied in an order that did not conform to the requirements of La. Const. Art. V, Section 8(B). La. C.Cr.P. art. 930.2[7].; cf. *State v. Cordero*, 08-1717 (La. 10/3/08), 933 So.2d 203. (SCR, Vol. 5, p. 6634). *State ex rel. Bradley*, 08-1951 (La. 1/30/09), 999 So.2d 750.

Bradley filed a *Motion for Evidentiary Hearing* on September 29, 2010, in the 24th J.D.C. (SCR, Vol. 1, pp. 1045-1046). The district court issued an order denying the *Motion for Evidentiary Hearing* on October 13, 2010. (SCR, Vol. 1, pp. 1048-1050). Bradley filed a *Motion to Preserve Evidence* in the 24th J.D.C. on April 10, 2017. (SCR, Vol.1, pp. 1053-1060). The *Motion to Preserve*

---

[6] The writ was received and filed on August 11, 2008, but was metered on July 28, 2008. (SCR, Vol. 5, p. 6631) The application was signed on June 29, 2008. Pursuant to the state "mailbox rule," the respondent uses the date petitioner signed his application as the date of filing. *See, Causey v. Cain*, 450 F.3d 601, 604-605 (5th Cir. 2006). However, June 29, 2008 is a Sunday; thus, respondent uses the next business day of June 30, 2008,as the date of filing. *See* La. C.Cr.P. art. 13; Fed.R.Civ.P. 6.

[7] That codal article reads:
**La. C.Cr.P. art. 930.2 Burden of Proof**

The petitioner in an application for post conviction relief shall have the burden of proving that relief should be granted.

*Evidence* was denied by the district court on April 19, 2017. (SCR, Vol.1, pp. 1061-1064). Bradley filed an application for supervisory writ review with the Louisiana Fifth Circuit Court of Appeal on May 17, 2017 (SCR, Vol. 3, pp. 5343-5344).[8] Bradley's Application for Supervisory Writ was denied by the Fifth Circuit Court of Appeal on June 2, 2017, Writ No. 17-KH-263. (SCR, Vol. 3, p. 5365). Bradley filed an application for supervisory and/or remedial Writs with the Louisiana Supreme Court on June 14, 2017.[9] The Louisiana Supreme Court denied Bradley's Application for Supervisory and/or Remedial Writs on October 15, 2018. *See* Writ No. 17-KH-1187. (SCR, Vol. 5, p. 6666) *State ex rel. Bradley v. State*, 17-1187 (La. 10/15/18), 253 So.3d 1305.

Bradley, through counsel, filed a fourth *Uniform Application for Post-Conviction Relief* on April 12, 2021 in the 24th J.D.C. (SCR, Vol. 1, pp. 1101-1480). In addition to filing the application for post-conviction relief, Bradley filed a *Motion for Stay of Post-Conviction Relief Proceedings* on April 12, 2021. (SCR, Vol. 1, pp. 1096-1099). Bradley sought post-conviction relief regarding his non-unanimous jury conviction in violation of the 6th and 14th Amendments to the United States Constitution citing the *Ramos v. Louisiana* decision. *See Ramos v. Louisiana*, 590 U.S. 83, 140 S.Ct. 1390, 20 L.Ed.2d 583 (2020). On May 18, 2021, the district court issued an order denying Bradley's request to stay post-conviction proceedings. (SCR, Vol. 1, pp. 1481-1482). The May 18,

---

[8] Bradley signed and dated his application on May 17, 2017. Pursuant to the state "mailbox rule," the respondent uses the date petition signed his application as the date of filing. *See, Causey v. Cain*, 450 F.3d 601, 604-605 (5th Cir. 2006).

[9] The application contains the date of June 15, 2017. However, the e-filing was received by the Legal Programs Department at the Louisiana State Penitentiary and Supreme Court Central Staff on June 14, 2017. Under the "mailbox rule" the date when prison officials receive the pleading from the inmate for delivery to the court is considered the time of filing for limitations purposes. *Coleman v. Johnson*, 184 F.3d 398, 401 (5th Cir. 1999); *Spotville v. Cain*, 149 F.3d 374, 376-378 (5th Cir. 1998).

2021 Order denied Bradley's application for post-conviction relief as untimely pursuant to La. Code of Crim. P. art. 930.8.

Bradley filed, through counsel, an Application for Writ of Review with the Fifth Circuit Court of Appeal on July 28, 2021. (SCR, Vol. 3, pp. 5367-5630) The Fifth Circuit denied the Writ application on August 9, 2021, Writ No. 21-KH-534. (SCR, Vol. 3, pp. 5631-5632). The Fifth Circuit found the trial court correctly denied Bradley's application for post-conviction relief based upon the current state of the law, as the Louisiana Supreme Court had yet to rule on whether *Ramos* should be applied retroactively to cases on state collateral review. The Louisiana Fifth Circuit Court of Appeal concluded the trial court did not err in ruling that Bradley had not alleged a valid claim under La. C.Cr.P. arts. 930.3 or 930.4.

Bradley filed an Original Application for Writ of Review with the Louisiana Supreme Court on September 20, 2021, Writ No. 21-KP-1409. (SCR, Vol. 5, pp. 6667-6950). The Louisiana Supreme Court denied the Application for Supervisory Writ on April 18, 2023. (SCR, Vol. 5, p. 6951) *State ex rel. Bradley v. Vannoy*, 21-1409 (La. 4/18/23), 359 So.3d 509.

Bradley, through counsel, filed a fifth *Uniform Application for Post-Conviction Relief* in the 24th J.D.C. on December 28, 2022. (SCR, Vol. 2, pp. 2087-2704). Bradley set forth the following claims in his application: (1) factual innocence under La. Code Crim. P. art. 926.2; (2) *Brady* violation; (3) *Napue* violation; (4) ineffective assistance of counsel, and (5) that a hearing should be held. Bradley also filed a Request to Stay Post-Conviction Proceedings pursuant to La. Code Crim. P. art. 925 on January 9, 2023 in the 24th J.D.C. (SCR, Vol. 2, pp. 2705-2707). On February 1, 2023, the district court issued an order allowing Bradley to supplement his application no later than April 3, 2023. The district court ordered the State to file any procedural objections and/or answer on the

merits within 30 days of the order. (SCR, Vol. 2, p. 2708).

The State filed Procedural Objections to Bradley's fifth *Uniform Application for Post-Conviction Relief* on March 3, 2023. (SCR, Vol. 2, pp. 2716-2726). The State filed a Motion to Supplement its Procedural Objections on March 8, 2023, and thereafter supplemented its procedural objections. (SCR, Vol. 2, pp. 2740-2767). Bradley filed an Opposition to the State's Procedural Objections on March 31, 2023. (SCR, Vol. 2, pp. 2773-2777). Bradley filed a Supplemental Memorandum in Support of Application for Post-Conviction Relief on March 31, 2023. (SCR, Vol. 2, pp. 2768-2772). The State filed a Response to Petitioner's Opposition to State's Procedural Objections on May 3, 2023. (SCR, Vol. 2, pp. 2800-2806). Bradley filed a Reply to the State's Response to Petitioner's Opposition on May 10, 2023. (SCR, Vol. 2, pp. 2806-2822).

On May 31, 2023, the district court issued an order denying Bradley's fifth *Uniform Application for Post-Conviction Relief*. (SCR, Vol. 2, pp. 2823-2825). The district court found Bradley did not meet his burden under La. Code Crim. P. art. 926.2 for a claim of factual innocence in that Bradley failed to present any evidence in support of his claim that meets the necessary criteria set forth in La. C.Cr.P. art. 926.2. The trial court found the "grace period" provided in La. C.Cr.P. art. 926.2(A) only applies to "factual innocence" claims, and not to any claim "bootstrapped" thereto. The district court ruled that Bradley's claims of ineffective assistance of counsel, *Brady* violation, and *Napue* violation were untimely pursuant to La. C.Cr.P. art. 930.8. The district court determined Bradley's claims of *Brady* and *Napue* violations were also procedurally barred as successive under La. C.Cr.P. art. 930.4 (D) and/or (E). Pursuant to La. C.Cr.P. art. 928, an application may be dismissed without an answer if the application fails to allege a claim which, if established, would entitle petitioner to relief. The district court determined that Bradley had not alleged a valid claim

reviewable in accordance with La. C.Cr.P. art. 930.3 or 930.4 and therefore, Bradley was not entitled to relief sought.

Bradley filed a Motion to Reconsider in the district court on June 14, 2023. (SCR, Vol. 2, pp. 2840-2877). The district court denied the Motion for Reconsideration on June 21, 2023, ruling that a Motion to Reconsider was not authorized by law. Nonetheless, the district court, in an abundance of caution, did address the merits of the motion in the interest of judicial efficiency and to provide clarity. (SCR, Vol. 2, pp. 2887-2888).

Bradley filed a Application for Supervisory Writs on August 2, 2023, Writ No. 23-KH-377. (SCR, Vol. 3, p. 5634). The State filed an Opposition to Application for Supervisory Writs with the Louisiana Fifth Circuit on September 1, 2023. (SCR, Vol. 4, pp. 6392-6443). The Louisiana Fifth Circuit denied the writ on September 6, 2023, Writ No. 23-KH-377. *State v. Bradley,* 23-377 (La. App. 5 Cir. 9/6/23) (unpublished order),(SCR, Vol. 4, pp. 6444-6459).

Bradley filed an Application for Supervisory Writ with the Louisiana Supreme Court on October 6, 2023. (SCR, Vol. 5, pp. 6952-7774). The State filed a Motion for Leave to Exceed Page Limit for Exhibit Index on October 24, 2023, which was granted . (SCR, Vol. 6, pp. 7827-7831). The State filed a response on October 24, 2023. (SCR, Vol. 6, pp. 7832-7895). The Louisiana Supreme Court denied Bradley's Application for Supervisory Writ on May 7, 2024, Writ No. 23-KP-1339. (SCR, Vol. 6, p. 7896). *State v. Bradley*, 23-1339 (La. 5/7/24), 384 So.3d 348.

Bradley filed this federal habeas corpus petition in the United States District Court, Eastern District of Louisiana on November 14, 2024. (SCR, Vol. 2, pp. 2979-2980). The petition is not timely filed in accordance with 28 U.S.C. § 2244(d)(1). Respondent provides this Court with a copy of the state court record. Respondent submits that this matter be disposed of without an evidentiary

hearing.[10]

## STATEMENT OF THE RECORD

Respondent supplies this Court with a complete copy of the state court record. The state court record consists of six volumes, contains 7896 pages, and is Bates Stamped at the bottom-center of each page of the State Court Record.

Volumes One contains a copy of the appellate court record in Appeal No. 03-KA-384. The appellate court record is a copy of the Clerk's record from the date the petitioner was charged until the date the briefs were filed in the Louisiana Fifth Circuit Court of Appeal. The volume contains transcripts of all pre-trial and trial proceedings, as well as the appellate court briefs.

Volumes One, Two, and Three contain a copy of the 24th Judicial District Clerk of Court's record, which additionally contains all post-convictions pleadings and rulings. Volumes One, Two, and Three contain briefs associated with the post-convictions pleadings and rulings, including this Court's Order pertaining the Bradley's Writ of Habeas Corpus. Volumes Two and Three also include all subpoenas and returns filed in the 24th J.D.C. record.

Volumes Three and Four contain copies of the four writ applications filed by Bradley in

[10] The AEDPA's statutory scheme "is designed to strongly discourage" state court prisoners from submitting new evidence in federal court. *Cullen v. Pinholster*, 563 U.S. 170, 131 S.Ct. 1388, 1401, 179 L.Ed.2d 557 (2011). Under the AEDPA, a habeas petitioner's entitlement to an evidentiary hearing when he has failed to develop the factual basis of a claim is restricted to the narrow exceptions of 28 U.S.C. § 2254(e)(2); and, habeas review for claims adjudicated on the merits is explicitly limited to the state court record. The United States Supreme Court has recently held: "that review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 131 S.Ct. at 1398. The Supreme Court specifically held that: "[i]f a prisoner has 'failed to develop the factual basis of a claim in State court proceedings,' § 2254(e)(2) bars a federal court from holding an evidentiary hearing, unless the applicant meets certain statutory requirements." *Cullen v. Pinholster*, 131 S.Ct. at 1400, Fn. 4.

Louisiana Fifth Circuit, which includes Writ No. 03-KA-384, Writ No. 17-KH-263, Writ No. 21-KH-534, and Writ No. 23-KH-377. Additionally, Volumes Three and Four contain the court's disposition to the writ applications.

Volumes Five and Six contain copies of five writ applications filed by Bradley in the Louisiana Supreme Court, which includes Writ No. 03-K-2745, Writ No. 08-KH-1951, Writ No. 17-KH-1187, Writ No. 21-KP-1409, and Writ No. 23-KP-1339. Additionally, these volumes contain the court's disposition to the writ applications.

**STATEMENT OF THE FACTS**

The following summary of events leading to the arrest and conviction of Bradley is taken from the published state court of appeal decision on direct appeal:

> On August 1, 1999, the body of Barton Sanford was found beneath a trailer located at 7501 ½ Fourth Street near the Happy Hour Saloon in Marrerro. The cause of death was a bullet wound to the chest. Detective Donald Meunier of the Jefferson Parish Sheriff's Office investigated and eventually developed Bradley as a possible suspect. On August 7, 1999, Detective Meunier interviewed Bradley and obtained several statements.
>
> In the statements, Bradley indicated that he had attended a party at the Happy Hour Saloon on Friday, July 30, 1999 but denied knowing the victim. However, when confronted with a surveillance video tape taken outside of the Happy Hour Saloon on July 30, 1999 showing him with the victim, Bradley recanted his prior statements. Bradley told Detective Meunier that the victim wanted to purchase crack cocaine and that he had arranged for the victim to make the purchase from an individual named Jason Rivet. However, before the drug deal was completed, Bradley stopped the drug transaction and pulled the victim away because "something looked like it was going down." Bradley subsequently returned to the bar where he remained for approximately one hour before going to the Budget Motel where he remained for the night.
>
> Detective Meunier also interviewed an eyewitness, Amy Larck, who identified Bradley as the shooter. At trial, Lark testified that at the time of the shooting she was a drug addict who supported her habit by prostitution. Larck knew both Bradley and Russell and had been at Russell's house on the evening of July 30, 1999. While there, she overheard Bradley ask Russell if he had a gun to which Russell responded, "I got

that for you."

Later that evening, Larck was outside the Happy Hour Saloon where she smoked crack for most of the night. Later that night, while inside the Happy Hour Saloon, Bradley informed Larck that he had a "trick" for her, whom Larck identified as the victim. Larck and Bradley left the bar and walked around the block to give the victim time to come outside. Larck then walked into an alley behind the Happy Hour Saloon where she met the victim. Larck agreed to perform oral sex upon the victim and the victim displayed approximately sixty dollars. At that moment, Bradley and Russell walked around the corner. Bradley had a gun and was screaming at the victim. Larck began backing out of the alley and heard a gunshot. She then ran from the scene and ended up at the Budget Motel with Bradley. After five to ten minutes, Larck left the motel and received a ride to the levee from a stranger who later raped her. She later reported the rape to police but did not mention the murder at that time. Not until police picked her up in connection with the homicide investigation did she mention anything to police about the murder.

After Larck's testimony, the State rested and the defense called its first witness, Karen Breaux. Breaux testified that on July 30, 1999 she was at Russell's house until midnight and did not recall either Larck or Bradley being at the home that day or evening. At around midnight that evening, she went to the Happy Hour Saloon where she observed the victim and Bradley engaged in an argument outside. The victim was accusing Bradley of having ripped him off which Bradley denied. After a brief moment, Breaux left the area fearing police would arrive shortly.

The defense also called Tammy Disher who testified that, on the evening of July 30, 1999, she saw the victim fighting with an individual named Jason Rivet, who was carrying a gun. She did not see an argument between Bradley and the victim. However, Disher testified that while she was incarcerated with Larck prior to trial, Lark had told her that she was involved in the killing of the victim. Larck told her that she was supposed to "trick" the victim.

*State v. Bradley*, 03-384 (La. App. 5 Cir. 9/16/03), 858 So.2d 80, 83-84.

## STATEMENT OF THE ISSUES

Bradley raises four claims.[11] Bradley alleges that:

1. The State committed a *Brady* violation and allowed a fraud upon the court when the State failed to disclose the sole eyewitness's true criminal history and allowed the witness to testify falsely, thereby violating Mr. Bradley's right to a fair trial.

2. Bradley's right to a fair trial was violated when his attorney was ineffective and the state committed a fraud upon the court. The state court's procedural bars on these claims failed to recognize Bradley's gateway claim of innocence.

3. Bradley is actually innocent and his continued incarceration violates the 8th and 14th Amendments.

4. This Court should hold a hearing to address the veracity of Mr. Bradley's claims as the lower court failed to afford Mr. Bradley a full and fair hearing.

## STANDARD OF REVIEW

This case is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub.L. 104-132, 110 Stat. 1214. The standard of review is governed by 28 U.S.C.§ 2254(d)(e). The AEDPA mandates that claims adjudicated on the merits in state court proceedings are subject to the following standards of review:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as

[11] In an attempt at clarifying the arguments made by Bradley, the State will track the arguments and "Points" set forth in Bradley's memorandum in support of petition for writ of habeas corpus. The State respectfully reserves the right to amend its response with regards to claims made in Bradley's petition for habeas corpus if such are deemed to be different than those provided in Bradley's memorandum.

> determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

As recognized by the Supreme Court in *Williams v. Taylor*, 529 U.S. 362, 120 S.Ct. 1495, 1523, 146 L.Ed.2d 389 (2000), "§ 2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court." The Supreme Court has recognized that "[t]he Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), 28 U.S.C. § 2254, 'imposes a highly deferential standard for evaluating state-court rulings and demands that state-court decisions be given the benefit of the doubt.'" *Hardy v. Cross*, 565 U.S. 65, 132 S.Ct. 490, 491, 181 L.Ed.2d 468 (2011), *citing, Felkner v. Jackson*, 562 U.S. 594, 598, 131 S.Ct. 1305, 1307, 179 L.Ed.2d 374 (2011) (per curiam) (internal quotation marks omitted). The Supreme Court has also held "that its standard of contrary to, or involv[ing] an unreasonable application of, clearly established Federal law is difficult to meet, because the purpose of AEDPA is to ensure that federal habeas relief functions as a guard against extreme malfunctions in the state criminal justice systems, and not as a means of error correction." *Greene v. Fisher*, 565 U.S. 34, 38, 132 S.Ct. 38, 43, 181 L.Ed.2d 336 (2011), *citing*, *Harrington v. Richter*, 562 U.S. 82, 102-103, 131 S.Ct. 770, 786, 178 L.Ed.2d 624 (2011) (internal quotations omitted).

Under § 2254(d)(1), a federal habeas court may not grant a state prisoner's application for a writ of habeas corpus with respect to any claims adjudicated on the merits in state court unless the state court adjudication resulted in a decision that was (1) contrary to, or involved an application of,

clearly established federal law as determined by the Supreme Court; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. *See*, 28 U.S.C. § 2254(d). The Supreme Court has clarified that a decision is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law, or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 120 S.Ct. at 1523.

With regard to the "unreasonable application" clause, the Court has held that a federal habeas court may grant the writ only if the state court unreasonably applies the correct governing legal principle to the facts of the prisoner's case. *Williams v. Taylor*, 120 S.Ct. at 1523. "A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Williams v. Taylor*, 120 S.Ct. at 1521. As noted by the United States Fifth Circuit, because the standard of review is one of objective reasonableness, "mere disagreement" with the state court is not enough to warrant relief. *Orman v. Cain*, 228 F.3d 616, 619 (5th Cir. 2000). Under 28 U.S.C. § 2254(e)(1), the state court's findings of fact are entitled to a presumption of correctness. Most importantly, pursuant to 28 U.S.C. § 2254(e)(1), the petitioner bears the burden of rebutting this presumption of correctness by clear and convincing evidence.

## PROCEDURAL OBJECTIONS

## TIMELINESS

Respondent submits that Bradley's petition should be denied because it is time barred by 28 U.S.C. § 2244(d)(1). The pertinent provisions are contained in the Antiterrorism and Effective

Death Penalty Act of 1996 which was enacted April 24, 1996, and imposes a one-year period of limitations on petitions for a writ of habeas corpus filed by persons in custody pursuant to a judgment in state court. The threshold question on habeas review under the statute is whether the petition is timely and whether the claim raised by the petitioner was adjudicated on the merits in state court, i.e., the petitioner must have exhausted state court remedies and must not be in "procedural default" on a claim. *Nobles v. Johnson*, 127 F.3d 409, 419-20 (5th Cir. 1997) (citing 28 U.S.C. § 2254). The AEDPA applies to Bradley's petition, which is deemed filed in this Court on November 14, 2024.

This Court has directed respondent to "set forth...whether the one-year period of limitations for filing this petition has expired." (Fed. Rec. November 20, 2024 Order, *Bradley v. Hooper*, No. 24-2678). Respondent submits the one-year period of limitations has expired, and these claims are therefore untimely brought before this Court according to 28 U.S.C. § 2244(d)(1).

As relevant here, the applicable period of limitations is as follows:

> (d)(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of -
>
> > (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> ***
>
> (2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244; *See generally Flanagan v. Johnson*, 154 F.3d 196, 198 (5th Cir. 1998).

The AEDPA provides a one year grace period from the date a conviction became final for

timely filing a habeas corpus petition.[12] *See*, 28 U.S.C. § 2244(d)(1)(A), *as amended by*, P.L. 104-132, 110 Stat. 1220. The AEDPA's one year limitation period runs from the date upon which the judgment becomes final through conclusion of direct review or through expiration of the time for seeking such review. 28 U.S.C. § 2244(d)(1)(a). As provided by this statute, the time during which a properly filed application for state post-conviction or other collateral review is pending with respect to the pertinent judgment or claim is tolled and shall not be counted toward any other part of the one-year limitations period. 28 U.S.C. § 2244(d)(2). *See also, Flanagan v. Johnson*, 154 F.3d

---

[12] The statute of limitations of the AEDPA provides other trigger dates which do not apply here. Specifically, 28 U.S.C. § 2244(d) provides as follows:

> (1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of–
>
> > (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
> > (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
> > (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
> > (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
>
> (2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

196, 198 (5th Cir. 1998). Bradley's petition is addressed under 28 U.S.C. 2244 (d)(1)(A), in such that the one-year period of limitations starts at finality of conviction.

*Statutory Tolling*

Section 2244(d)(2) provides for "statutory tolling" stating, "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection."

In order for a state post-conviction application to be considered "properly filed" within the meaning of § 2244(d)(2), the applicant must have complied with all of the State's procedural requirements, such as timeliness and place of filing. *Pace v. DiGuglielmo*, 544 U.S. 408, 413-414 (2005) (*citing Artuz v. Bennett*, 531 U.S., 4, 8, 121 S.Ct. 361, 364 (2000)). "These rules usually prescribe, for example, the form of the document, the time limits upon its delivery, the court and office in which it must be lodged, and the requisite filing fee." *Artuz*, 531 U.S. at 8 (footnote omitted). A post-conviction motion that is untimely under state law has no statutory tolling effect because it is not considered properly filed for §2244(d)(2) purposes. *See Pace*, 544 U.S. at 414. The United States Supreme Court has held that "time limits, no matter their form, are 'filing' conditions"; when the state courts have rejected a state application as untimely, it cannot be considered "properly filed" so as to entitle the petition to statutory tolling. *Id*. at 417. Accordingly, "[w]hen a postconviction petition is untimely under state law, 'that [is] the end of the matter' for purposes of §2244(d)(2)." *Id*. at 414.

A matter is "pending" for §2244(d)(2) purposes "as long as the ordinary state collateral review process is 'in continuance.'" *Carey v. Saffold*, 536 U.S. 214, 219-20, 122 S.Ct. 2134, 153 L.Ed. 2d 260 (2002); *Williams*, 217 F.3d at 310 (quoting *Bennett v. Artuz,* 199 F.3d 116, 120 (2d 1999) (finding that a matter is "pending" for Section 2244(d)(2) purposes until further appellate

review is unavailable under Louisiana's procedures)); *see also Melancon v. Kaylo*, 259 F.3d 401, 405 (5th Cir. 2001). Thus, a properly filed post-conviction remains "pending" for purposes of § 2244(d)(2) for the duration of the post-conviction proceedings, so long as a petitioner continues to seek review at the higher levels of the state court system in a timely manner. *Grillette v. Warden, Winn Correctional Center*, 372 F.3d 765, 769 -71 (5th Cir. 2004). In particular, the Fifth Circuit has held, "a state post-conviction application remains pending-thus tolling the one-year period- during the interval between a state trial court's disposition of the habeas application and the applicant's timely filing of a notice of appeal (or petition for review) in the next court." *Id*. at 770 (quoting *Carey v. Saffold*, 536 U.S. at 219, 122 S.Ct. 2134 (internal quotations omitted).

A "pertinent judgment or claim" requires that the state filings for which tolling is sought must have challenged the same conviction being challenged in the federal habeas corpus petition and must have addressed the same substantive claims now being raised in the federal habeas corpus petition. *Godfrey v. Dretke*, 396 F.3d 681, 687-88 (5th Cir. 2005).

The phrase "other collateral review" in the statute refers to state court proceedings challenging the pertinent judgment subsequently challenged in the federal habeas petition. *Dillworth v. Johnson*, 215 F.3d 497, 501 (5th Cir. 2000) (finding that a state habeas petition challenging a prior conviction in one county was collateral review even though filed as a challenge to a second conviction in a different county); *Nara v. Frank*, 264 F.3d 310, 316 (3d Cir. 2000), overruled on other grounds by *Carey v. Saffold*, 536 U.S. at 214 (finding that a motion to withdraw a guilty plea is "other collateral review").

Determining when direct review concludes for AEDPA purposes is a matter of federal law. *See Clay v. United States*, 537 U.S. 522, 531, 123 S.Ct. 1072, 155 L.Ed.2d 88 (2003) ("The words 'by the conclusion of direct review or the expiration of the time for seeking such review' make it clear that finality for the purpose of § 2244(d)(1)(A) is to be determined by reference to a uniform

federal rule."). Finality assessments should not "be made by reference to state-law rules that may differ from the general federal rule and vary from State to State." *Id*. at 530-31, 123 S.Ct. 1072. At the same time, this federal question "is heavily informed by looking to state law to determine when direct review in state court has ended." *McMonagle v. Meyer*, 802 F.3d 1093, 1097 (9th Cir. 2015). In this context, the judgment becomes final at the expiration of the time for seeking such review - when the time for pursuant direct review in the Supreme Court, or in State court, expires. *Gonzales v. Thaler*, 132 S.Ct. 641, 181 L.Ed.2d 619 (2012).

Although federal, not state, law determines when a judgment is final for federal habeas purposes, a necessary part of the finality inquiry is determining whether the petitioner is still able to seek further direct review. *See Foreman v. Dretke*, 383 F.3d 336, 338–39. When a habeas petitioner has pursued relief on direct appeal through his state's highest court, his conviction becomes final ninety days after the highest court's judgment is entered, upon the expiration of time for filing an application for writ of certiorari with the United States Supreme Court. *Roberts v. Cockrell*, 319 F.3d 690, 693 (5th Cir.2003). Once the "expiration of the time for seeking" review of a state conviction has occurred, Section 2244(d)(1)(A) starts the one-year period for filing for a federal writ of habeas corpus. *Butler v. Cain*, 533 F.3d 314, 317 (5th Cir.).

Bradley admits his federal habeas petition is untimely "with the ADEPA's one year deadline." A review of the procedural history confirms that Bradley's habeas petition it is indeed untimely.

Bradley was convicted and subsequently sentenced by the state district court on July 18, 2002. (SCR, Vol. 1, p. 194). Bradley had a direct appeal before the Louisiana Fifth Circuit Court of Appeal, which affirmed Bradley's conviction and sentence on September 16, 2003. *State v.*

*Bradley*, 08-384 (La. App. 5 Cir. 9/16/03), 858 So.2d 80. Pursuant to Louisiana Supreme Court Rule X, § 5, the petitioner had 30 days from the date of the court of appeal's ruling in which to timely file a writ application in the Louisiana Supreme Court.[13]

The record provides Bradley filed a timely writ application with the Louisiana Supreme Court on September 29, 2003. On February 13, 2004, the Louisiana Supreme Court denied relief. *State v. Bradley*, 03-2745 (La. 2/13/04), 867 So.2d 688. (SCR, Vol. 5, p. 6558). The record affirmatively reflects that Bradley did not seek review of the Louisiana Supreme Court's decision by filing an application for writ of certiorari with the United States Supreme Court.[14]

> The statute of limitations for bringing a federal habeas petition challenging a state conviction begins to run on "the date on which the [state] judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A). When a habeas petitioner has pursued relief on direct appeal through his state's highest court, his conviction becomes final ninety days after the highest court's judgment is entered, upon the expiration of time for filing an application for writ of certiorari with the United States Supreme Court. *Roberts v. Cockrell*, 319 F.3d 690, 693 (5th Cir.2003).

*Butler v. Cain*, 533 F.3d 314, 317 (5th Cir. 2008).

The ninety days commenced with the Louisiana Supreme Court's denial of certiorari on February 13, 2004 and ended on May 13, 2004, with the expiration of the deadline for filing a

---

[13] Louisiana Supreme Court Rule X, § 5 reads, as follows:

**Section 5. Writ Applications; Time for Filing.**

(a) An application seeking to review a judgment of the court of appeal either after an appeal to that court, or after that court has granted relief on application for supervisory writs (but not when the court has merely granted an application for further consideration), or after a denial of an application, shall be made within thirty days of the mailing of the notice of the original judgment of the court of appeal; however, if a timely application for rehearing has been filed in the court of appeal in those instances where a rehearing is allowed, the application shall be made within thirty days of the mailing of the notice of the denial of rehearing or the judgment on rehearing. No extension of time therefor will be granted.

[14] *See* Sup.Ct. R. 13(1).

request for writ of certiorari with the U.S. Supreme Court. Accordingly, for purposes of determining the finality of state court convictions in the federal habeas context, Bradley's conviction became final ninety days after the Louisiana Supreme Court denied his writ and Bradley failed to seek further review from the United States Supreme Court, or on May 13, 2004. Thus, the AEDPA's one year filing period began to run on May 14, 2004. Under the plain reading of the statute, Bradley had one year within which to file his federal habeas petition, or a deadline of May 13, 2005. Bradley did not file his federal habeas petition with this Court until November 14, 2024. As such, Bradley's petition for federal habeas must be dismissed as untimely unless the one-year statute of limitations period was interrupted as set forth in 28 U.S.C. §2244(d)(2).

The one-year statute of limitations began to run uninterrupted from May 14, 2004 until Bradley filed his first *Uniform Application for Post-Conviction Relief* in the 24th Judicial District Court on January 10, 2005.[15] During this interval, 241 days of the limitation period's 365 days expired. *See Flanagan v. Johnson*, 154 F.3d 196, 199 n.1 (5th Cir. 1998). ("Under the plain language of the statute, any time that passed between the time that [petitioner's] conviction became final and the time that his state application for habeas corpus was properly filed must be counted against the one year period of limitation.").

Pursuant to §2244(d)(2), the limitation period was tolled during the pendency of Bradley's post-conviction relief application in state court. The trial court denied Bradley's application for post-conviction relief on February 1, 2005. Bradley did not seek review of this ruling in either the Louisiana Fifth Circuit Court of Appeal or in the Louisiana Supreme Court. In *Melancon v. Kaylo*,

[15] For purposes of the AEDPA, a timeliness calculation in Louisiana requires the application of the prison mailbox rule to state court proceedings. *Causey v. Cain*, 450 F.3d 601, 604-05 (5th Cir. 2006).

259 F.3d 401 (5th Cir. 2001), the United States Fifth Circuit held that an application for post-conviction relief ceases to be "pending" after the statutory period to appeal or seek review has expired. *Id*., at 406-407. *See, Grillette v. Warden, Winn Correctional Center*, 372 F.3d 765, 769-71 (5th Cir. 2004) (a state application ceases to be pending when the time for supervisory review expires). In this instance, Bradley had 30 days after the district court's February 1, 2005 ruling to seek review in the Louisiana Fifth Circuit Court of Appeal. *See*, Rule 4-3, Louisiana Uniform Rules Courts of Appeal. This period expired on March 3, 2005.

For purposes of 2244(d)(2), an application for State post-conviction is pending "as long as the ordinary state collateral review process is in continuance - i.e., until the completion of that process. In other words, until the application has achieved final resolution through the State's post-conviction procedures. *Carey v. Safford*, 536 U.S. 214, 219-220, 122 S.Ct. 2134, 153 L.Ed. 2d 260 (2002)(internal quotations omitted). Hence, during the period between January 10, 2005 and March 3, 2005, is in continuance and not counted towards the one-year time limitation applicable to Bradley's habeas petition.

Bradley's state post-conviction application was completed and therefore, no longer pending on March 3, 2005. Accordingly, the statute of limitations then began to run from March 3, 2005. Because Bradley had previously permitted 241 days of the AEDPA's statute of limitations to expire prior to filing his first application for post-conviction relief in the 24th Judicial District Court, Bradley only had 124 days in which to timely file his federal habeas petition or to properly file another form of state collateral review to toll the statute of limitations.

Bradley filed a second *Uniform Application for Post-Conviction Relief* in the 24th Judicial District Court on May 8, 2008. The statute of limitations ran uninterrupted until Bradley filed his

second application for post-conviction relief on May 8, 2008. During this interval, 1162 days of the limitation period's 365 days expired. *See Flanagan v. Johnson*, 154 F.3d 196, 199 n.1 (5th Cir. 1998). Respondent argues that more than one year elapsed (1162 days) between the completion of the first application for post-conviction relief on March 3, 2005, and the filing of the second application for post-conviction relief on May 8, 2008. However, any tolling of the statute of limitations in filing the second application for post-conviction relief had no affect as Bradley's petition of habeas corpus is untimely under 28 U.S.C. §2254 when considering more than 365 days elapsed. It is well settled that state court collateral applications and motions which are filed after the expiration of the federal statute of limitations have no bearing on §2244(d)(2) tolling determinations. *See Scott v. Johnson*, 227 F.3d 260, 263 (5th Cir. 2000); *Britton v. Cain*, Civ. Action No. 14-1291, 2015 WL 4755102, at *5 (E.D. La. Aug. 10, 2015); *Magee v. Cain*, Civ. Action No. 99-3867, 2000 WL 10023423, at *4, *aff'd*, 253 F.3d 702 (5th Cir. 2001); *Williams v. Cain*, Civ. Action No. 00–536, 2000 WL 863132, at *2 (E.D. La. June 27, 2000). As the United States Fifth Circuit Court of Appeals has stated, once the federal limitations period has expired, "[t]here [i]s nothing to toll." *Butler v. Cain*, 533 F.3d 314, 318 (5th Cir. 2008).

Additionally, respondent asserts that Bradley did not comply with the state procedural requirements in filing his second *Uniform Application for Post-Conviction Relief* and thus, receives no tolling credit for this filing period. Bradley's second application for post-conviction relief was denied on May 20, 2008 due to Bradley's failure to comply with La. Code Crim. P. art. 926(D). (SCR, Vol. 1, p. 1008). As such, Bradley's second application for post-conviction relief was not properly filed. In order for a state post-conviction application to be considered "properly filed" within the meaning of § 2244(d)(2), the applicant must have complied with all of the State's

procedural requirements, such as timeliness and place of filing. *Pace v. DiGuglielmo*, 544 U.S. 408, 413-414 (2005) (*citing Artuz v. Bennett*, 531 U.S., 4, 8, 121 S.Ct. 361, 364 (2000)). "These rules usually prescribe, for example, the form of the document, the time limits upon its delivery, the court and office in which it must be lodged, and the requisite filing fee." *Artuz*, 531 U.S. at 8 (footnote omitted). The state trial court noted that Bradley did not comply with La. C.Cr.P. art. 926(D) in that he failed to use the mandatory uniform application for post-conviction relief approved by the Supreme Court of Louisiana. Bradley should receive no tolling credit for the time the second application for post-conviction relief was pending, as it was not properly filed.

Bradley filed a third, fourth, and fifth application for post-conviction relief in the state district court. Bradley's third, fourth, and fifth state court applications were filed after the expiration of the AEDPA one-year filing period and therefore, provided no tolling benefit or restart of the AEDPA limitations clock. A filing made after the expiration of the AEDPA one-year filing period does not review or extend the AEDPA fling period or provide petitioner any tolling benefits. *See Scott v. Johnson*, 227 F.3d 260, 263 (5th Cir. 2000).[16] As the United States Fifth Circuit Court of Appeals has stated, once the federal limitations period has expired, "[t]here [i]s nothing to toll." *Butler v. Cain*, 533 F.3d 314, 318 (5th Cir. 2008). Bradley's federal habeas is untimely and should be denied on this jurisdictional ground.

*Equitable Tolling*

---

[16] It is well settled that any such application filed after the expiration of the federal statute of limitations has no bearing on §2244(d)(2) tolling determinations. *See , Scott v. Johnson*, 227 F.3d 260, 263 (5th Cir. 2000); *Britton v. Cain*, Civ. Action No. 14-1291, 2015 WL 4755102, at *5 (E.D. La. Aug. 10, 2015); *Magee v. Cain*, Civ. Action No. 99-3867, 2000 WL 10023423, at *4, *aff'd*, 253 F.3d 702 (5th Cir. 2001); *Williams v. Cain*, Civ. Action No. 00–536, 2000 WL 863132, at *2 (E.D. La. June 27, 2000).

Bradley contends that he is entitled to equitable tolling in this matter. Bradley maintains his petition is timely in that he only found out about Amy Larck's criminal history in December 2022, and has thereafter been litigating his *Brady* and fraud claims since the discovery. Under §2244(d)(1)(D), the AEDPA limitations period commences upon the discovery of a factual predicate of the claim when the factual predicate could not have been discovered earlier through the exercise of due diligence. Bradley has not met his burden of establishing he is entitled to equitable tolling in this matter.

Respondent maintains that Bradley has neither alleged nor demonstrated that he is entitled to tolling as a matter of equity, which is available only in rare and exceptional circumstances when an extraordinary factor beyond the petitioner's control prevents him from filing in a timely manner. *See Davis v. Johnson*, 158 F.3d 806, 811 (5th Cir. 1998). Equitable tolling is available to petitioners in cases in which rare or extraordinary circumstances prevented timely filing of a federal habeas corpus petition. *Pace*, 544 U.S. at 419; *Fisher v. Johnson*, 174 F.3d 710, 713 (5th Cir. 1999), *cert. denied*, 531 U.S. 1164 (2001); *Cantu-Tzin v. Johnson*, 162 F.3d 295, 299 (5th Cir. 1998); *Davis v. Johnson*, 158 F.3d 806, 810–11 (5th Cir. 1998), *cert. denied*, 526 U.S. 1074 (1999). "Generally, a litigant seeking equitable tolling bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005). Bradley has established neither.

Equitable tolling is usually only afforded in situations where the petitioner was actively misled or prevented in a way outside of his control from timely asserting his rights. *Pace*, 544 U.S. at 418–19. "A garden variety claim of excusable neglect does not support equitable tolling." *Fisher v. Johnson*, 174 F.3d at 715. For example, in *Hardy v. Quarterman*, the Fifth Circuit held equitable

tolling was warranted because the petitioner suffered a significant state-created delay when, for nearly one year, the state appeals court failed in its duty under Texas law to inform petitioner that his state habeas petition had been denied, petitioner diligently pursued federal habeas relief, and petitioner persistently inquired to the court. 577 F.3d 596, 599-600 (5th Cir. 2009). In *United States v. Wynn*, the Fifth Circuit held equitable tolling was warranted because the petitioner was deceived by his attorney into believing that a timely motion to vacate was filed. 292 F.3d 226, 230 (5th Cir. 2002). On the other hand, in *Fisher v. Johnson*, the Fifth Circuit held equitable tolling was not justified during petitioner's seventeen-day stay in a psychiatric ward, during which he was confined, medicated, separated from his glasses and thus rendered legally blind, and denied meaningful access to the courts. 174 F.3d 710 (5th Cir. 1999).

In his petition, Bradley avers he is entitled to equitable tolling based upon his assertion that he was recently made aware of Amy Larck's criminal background in North Carolina and Florida and because of that evidence, maintains the State allowed a fraud upon the court when Amy Larck testified. Bradley has made arguments regarding Amy Larck's credibility and criminal history since trial on this matter. Bradley alleged Amy Larck was not a credible witness on his direct appeal that was filed on April 15, 2003. (SCR, Vol. 1, pp. 740-769). The Fifth Circuit Court of Appeal, in affirming Bradley's conviction and sentence, thoroughly discussed Bradley's claims that Amy Larck's testimony was not credible due to inducements made for it by the State and several discrepancies in her testimony.

> Bradley also cites numerous handwritten letters sent by Larck to various prosecutors that had worked on the case at one time or another. In some of the letters, Larck claimed that her memory of events surrounding the murder was getting "fuzzy" and that unless she was released from prison she would not testify at trial. Those letters were followed by letters apologizing for previous letters and indicating her willingness to testify, as well as additional requests that she be released from prison.

> Bradley contends that the letters show that Larck would have said or done anything to get out of prison thereby lessening the credibility of her testimony.
>
> Bradley also cites numerous handwritten letters sent by Larck to various prosecutors that had worked on the case at one time or another. In some of the letters, Larck claimed that her memory of events surrounding the murder was getting "fuzzy" and that unless she was released from prison she would not testify at trial. Those letters were followed by letters apologizing for previous letters and indicating her willingness to testify, as well as additional requests that she be released from prison. Bradley contends that the letters show that Larck would have said or done anything to get out of prison thereby lessening the credibility of her testimony.

*State v. Bradley*, 858 So.2d at 85.

Bradley also argued that Ms. Larck's criminal history impacted her credibility. In its opinion, the Louisiana Fifth Circuit provided:

> Bradley notes that Larck had previously pled guilty to several felonies for which she received concurrent five-year sentences on each of the charges and was not billed as a habitual offender. However, Larck denied the existence of any plea agreement and further testified that she had been sentenced prior to testifying.
>
> Even if a deal had been made, a conviction may be based on testimony of someone making a plea bargain with the government, provided that the testimony is not incredible or otherwise insubstantial on its face. *United States v. Osum*, 943 F.2d 1394, 1405 (5th Cir.1991); *State v. Neal*, 00–674 (La.6/29/01), 796 So.2d 649, 659, *cert. denied*, 535 U.S. 940, 122 S.Ct. 1323, 152 L.Ed. 231 (2002). In the instant case, Larck's testimony was not incredible or insubstantial and, therefore, the existence of a deal or a lighter sentence than she would have received had she been billed as multiple offender did not undermine the reliability of her testimony.

*State v. Bradley*, 858 So.2d at 85.

Nothing in the record suggests that Bradley was actively misled by the State about filing deadlines or prevented in some extraordinary way from asserting his rights. The record reveals Bradley has filed a direct appeal and sought state collateral review on several occasions. Moreover, there is no evidence Bradley diligently pursued §2254 relief. *See Melancon v. Kaylo*, 259 F.3d 401, 408 (5th Cir. 2001); *Coleman v. Johnson*, 184 F.3d 398, 403 (5th Cir. 1999). A habeas petitioner

bears the burden of proof to establish entitlement to equitable tolling. *Alexander v. Cockrell*, 294 F.3d 626, 629 (5th Cir. 2002). Bradley has not presented, and the record does not demonstrate, any basis for extending the extraordinary remedy of equitable tolling.

Moreover, Bradley has not proven he diligently pursued relief under §2254. Bradley waited more than eighteen years from the May 13, 2004 start of the AEDPA's one-year statute of limitations and the filing of his petition for habeas corpus on November 14, 2024. There is no evidence that Bradley diligently pursued §2254 relief. Furthermore, Bradley has failed to establish some extraordinary circumstance prevented him from filing a timely petition for federal habeas corpus.

Bradley has the burden of providing a basis for equitable tolling. Bradley has not met his burden, as there is no showing made that Bradley has been "pursuing his rights diligently, and that some extraordinary circumstance stood in his way." *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005). Equitable tolling is usually only afforded in situations where the petitioner was actively misled or prevented in a way outside of his control from timely asserting his rights. *Pace*, 544 U.S. at 418–19. The record indicates Bradley has not been impeded in pursuing his rights. In fact, the record shows Bradley has been afforded the opportunity to set forth these claims in both direct appeal and on collateral review. Bradley is not entitled to equitable tolling. Accordingly, respondent maintains the instant petition for habeas corpus review is untimely.

**LAW AND ARGUMENT**

Claim One - *Brady* and *Napue* Violations [17]

Bradley claims the state court determination relating to his *Brady* and *Napue* claims violated

[17] Respondent maintains that Claim One of petitioner's habeas corpus is untimely based upon the aforementioned argument. It is in an abundance of caution and without waiving the timeliness defense that respondent addresses the merits of Claim One.

his right to a fair trial. Respondent disputes this assertion. Because Bradley filed his habeas petition after April 24, 1996, it is therefore subject to AEDPA. *See Lindh v. Murphy*, 521 U.S. 320, 336, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997). Under AEDPA, habeas corpus "shall not be granted" unless the state court's merits ruling "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1); *see generally Brumfield v. Cain*, 744 F.3d 918, 923 (5th Cir. 2014) (discussing AEDPA standards). Bradley has failed to demonstrate a basis for federal habeas relief as to these claims.

A state court decides "contrary to" clearly established federal law by reaching a conclusion "opposite to...[the Supreme Court] on a question of law," or by reaching a result opposite to the Supreme Court on "facts that are materially indistinguishable." *Williams v. Taylor*, 529 U.S. at 405. A state court "unreasonably applies" clearly established federal law when it "identifies the correct governing legal rule from [the Supreme Court's] cases but unreasonably applies it to the facts of the particular state prisoner's case," or when it "extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Id*. at 407. Under AEDPA, "'an *unreasonable* application of federal law is different from an *incorrect* application of federal law.'" *Clark v. Thaler* , 673 F.3d 410, 418 (5th Cir. 2012) (quoting *Harrington v. Richter*, 131 S.Ct. 770, 785 (2011)). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington*, 131 S.Ct. at 786 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). "[T]his standard is difficult to meet...because it was meant to be." *Harrington*, 131 S.Ct. at 786.

Bradley alleges in federal Claim One that the State failed to correct testimony it knew or should have known was false relative to State witness Amy Larck in violation of *Napue v. Illinois*, and that the State withheld favorable and material evidence in violation of *Brady v. Maryland* and its progeny. Respondent maintains Bradley has failed establish any basis to support his argument that the state court merits ruling concerning *Brady* and *Napue* violations "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1); *see generally Brumfield v. Cain*, 744 F.3d 918, 923 (5th Cir. 2014).

1. Bradley's Claim of a *Brady* Violation [18]

Bradley argues the State withheld favorable and material evidence in violation of *Brady v. Maryland* and its progeny and seeks review from this Court under federal habeas relief. In *Brady v. Maryland*, 373 U.S. 83, 87, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), the United States Supreme Court held that the suppression by the prosecution of evidence favorable to the accused, when requested, violates the defendant's due process rights, if the evidence is material either to guilt or punishment, without regard to the good or bad faith of the prosecution. The *Brady* rule encompasses evidence which impeaches the testimony of a witness when the reliability or credibility of that witness may be determinative of guilt or innocence. *United States v. Bagley*, 473 U.S. 667, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985); *Giglio v. United States*, 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972). To establish a *Brady* claim, a petitioner must demonstrate that: (1) the prosecution suppressed evidence; (2) the evidence was favorable to the defendant because it was either

[18] Respondent will address Bradley's claims of *Brady* and *Napue* violations set forth in Claim One separately.

exculpatory or impeaching; and (3) the evidence was material. *United States v. Edwards*, 442 F.3d 258, 264 (5th Cir. 2006).

Evidence is considered material if "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. *United States v. Bagley,* 473 U.S. 667, 682, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985). The Supreme Court has defined a "reasonable probability" as one "sufficient to undermine confidence in the outcome." *Bagley*, 473 U.S. at 682. Notably, "a reasonable probability does not mean that the defendant 'would more likely than not have received a different verdict with the evidence,' only that the likelihood of a different result is great enough to 'undermine[] confidence in the outcome of the trial.'" *Smith v. Cain*, 565 U.S.73, 75, 132 S.Ct. 627, 630, 181 L.Ed.2d 571 (2012), quoting *Kyles v. Whitley*, 514 U.S. 419, 434, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995); *see also Wearry v. Cain*, 577 U.S. 385, 136 S.Ct. 1002, 1006, 194 L.Ed.2d 78 (2016).

Of significance, it is not enough that the evidence might have been helpful to the defendant. *See*, *e.g*., *Kyles v. Whitley*, 514 U.S. 419, 436-437, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995)("[T]he Constitution is not violated every time the government fails or chooses not to disclose evidence that might prove helpful to the defense."). A reviewing court must determine whether the allegedly suppressed evidence, considered collectively and in light of all of the evidence at trial, could reasonably be taken to put the entire case in a different light so as to "undermine[] confidence in the outcome of the trial." *United States v. Edwards*, 442 F.3d at 267 (5th Cir.2006), quoting *Kyles*, 514 U.S. at 434, 115 S.Ct. 1555 (internal quotations omitted). A reversal of a criminal conviction "is required upon a 'showing that the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict.'" *Youngblood v. West*

*Virginia*, 547 U.S. 867, 870, 126 S.Ct. 2188, 2190, 165 L.Ed.2d 269 (2006), quoting *Kyles*, 514 U.S., at 435, 115 S.Ct. 1555; *see also United States v. Agurs*, 427 U.S. 97, 109-110, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976)("The mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial, does not establish 'materiality' in the constitutional sense."). Furthermore, as recognized by the United States Fifth Circuit Court of Appeals:

> When evidence is equally available to both the defense and the prosecution, the defendant must bear the responsibility of failing to conduct a diligent investigation. *Herrera v. Collins*, 954 F.2d 1029, 1032 (5th Cir.1992), *aff'd*, 506 U.S. 390, 113 S.Ct. 853, 122 L.Ed.2d 203 (1993). In this sense, *Brady* applies only to "the discovery, after trial[,] of information which had been known to the prosecution but unknown to the defense." *United States v. Agurs*, 427 U.S. 97, 103, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976).

*Kutzner v. Cockrell*, 303 F.3d 333, 336 (5th Cir. 2002).

On federal habeas review, "[t]he AEDPA places severe limitations on [a habeas court's] review of the state court's decision rejecting a petitioner's *Brady* claim." *Johnson v. Cain*, Civ.A. No. 13-469, 2015 WL 10123653, at *7 (E.D. La. Dec. 4, 2015). As recognized by the United States Fifth Circuit Court of Appeals:

> Under AEDPA, we do not decide *de novo* whether a state prisoner has sufficiently proven a *Brady* violation. *See Yarborough v. Alvarado*, 541 U.S. 652, 665, 124 S.Ct. 2140, 158 L.Ed.2d 938 (2004) ("We cannot grant relief under AEDPA by conducting our own independent inquiry into whether the state court was correct as a de novo matter."); *Neal v. Puckett*, 286 F.3d 230, 236 (5th Cir.2002) (en banc ) ("We have no authority to grant habeas corpus relief simply because we conclude, in our independent judgment, that a state supreme court's application of [federal law] is erroneous or incorrect."). Rather, we decide whether the state court's *Brady* determination resulted in a decision that is contrary to, or involved an unreasonable application of, clearly established federal law. *Busby v. Dretke*, 359 F.3d 708, 717 (5th Cir.2004).[4]
>
>> Fn.4 – "The statute compels federal courts to review for reasonableness the state court's ultimate decision, not every jot of its

> reasoning." *Santellan v. Cockrell*, 271 F.3d 190, 193 (5th Cir.2001); *see Neal*, 286 F.3d at 246 (holding that a federal court's "focus on the 'unreasonable application' test under section 2254(d) should be on the ultimate legal conclusion that the state court reached and not on whether the state court considered and discussed every angle of evidence").

*Dickson v. Quarterman*, 462 F.3d 470, 477-478 (5th Cir. 2006).

In Bradley's fifth *Uniform Application for Post-Conviction Relief*, Bradley alleged the state violated *Brady* in withholding evidence concerning Amy Larck's criminal history in North Carolina and Florida. (SCR, Vol. 2, pp. 2087-2704). The state district court determined Bradley's alleged *Brady* violation was procedurally barred pursuant to La. C.Cr.P. art. 930.4 (D) and/or (E) as successive and untimely under La. C.Cr.P. art. 930.8. *See State v. Bradley*, 99-5825 (May 31, 23), 24th Judicial District Court, Division "O."

Bradley sought writs to the Louisiana Fifth Circuit, Writ No. 23-KH-377. (SCR, Vol. 3, p. 5634). The Louisiana Fifth Circuit considered the merits of Bradley's claim of a violation of *Brady v. Maryland* and subsequently denied relief. *State v. Bradley*, 23-377 (La. App. 5 Cir. 9/6/23) (unpublished order). (SCR, Vol. 4, pp. 6444-6459).[19]

Bradley thereafter filed a writ with the Louisiana Supreme Court, Writ No. 23-KP-1339. (SCR, Vol. 5, pp. 6952-7774). The Louisiana Supreme Court denied Bradley's application for supervisory writs without providing reasons. *State v. Bradley*, 23-1339 (La. 5/7/24), 384 So.3d 348. (SCR, Vol. 6, p. 7896).

Before applying AEDPA's standards, the federal court must identify the state court decision that is appropriate for review. Under AEDPA, "we review the last reasoned state court decision."

---

[19] Despite the Louisiana Fifth Circuit Court of Appeal ruling, respondent contends this is not newly discovered evidence and should not form the basis of an exception to a procedural bar.

*Woodfox v. Cain*, 772 F.3d 358, 369 (5th Cir. 2014); *Batchelor v. Cain*, 682 F.3d 400, 405 (5th Cir.2012) (*quoting Wood v. Quarterman*, 491 F.3d 196, 202 (5th Cir.2007)) (internal quotation marks omitted). In reviewing a state court's summary denial of a habeas petition, the federal court must "look through" the summary disposition to the last reasoned decision. *Ylst v. Nunnemaker*, 501 U.S. 797, 803, 111 S. Ct. 2590, 115 L.Ed 2d 706 (1991). Using the "look through" doctrine, the court will "ignore—and hence, look through—an unexplained state court denial and evaluate the last reasoned state court decision." *Bledsue v. Johnson*, 188 F.3d 250, 256 (5th Cir.1999). The Louisiana Fifth Circuit Court of Appeal provided the last reasoned state court decision in *State v. Bradley*, 23-377 (La. App. 5th Cir. 9/6/23) (unpublished order). (SCR, Vol. 4, pp. 6444-6459). Therefore, this Court must presume the unexplained decision of the Louisiana Supreme Court adopted the same reasoning provided in the Louisiana Fifth Circuit's writ denial issued on September 6, 2023.

*Ylst* made clear that if the later state court decides the question differently than the original state court, then the later judgment has controlling effect. *Ylst v. Nunnemaker*, 501 U.S. at 801, 111 S.Ct. 2590. ("State procedural bars are not immortal, however; they may expire because of later actions by state courts. If the last state court to be presented with a particular federal claim reaches the merits, it removes any bar to federal-court review that might otherwise have been available."). The state district court denied Bradley's *Brady* claim based upon a state procedural bar. Upon review, the Louisiana Fifth Circuit Court of Appeal addressed the merits of the *Brady* claim. The Louisiana Fifth Circuit's judgment has controlling effect pursuant to *Ylst v. Nunnemaker*, 501 U.S. at 801, 111 S.Ct. 2590 and respondent will address the merits decision accordingly.

In its decision denying Bradley's writ application, the Louisiana Fifth Circuit Court of Appeal stated the following on Bradley's claim of an alleged *Brady* violation:

Relator's current *Brady* claim asserts newly discovered evidence under La. C.Cr.P. art. 930.8(A)(1), which allows a defendant to file an APCR more than two years after his conviction and sentence become final, if "[t]he application alleges, and the petitioner proves or the state admits, that the facts upon which the claim is predicated were not known to the petitioner or his prior attorneys." Here, relator maintains that he recently discovered a prior conviction for simple assault in North Carolina, prior convictions for prostitution and child abuse in Florida, and evidence that Larck was on probation for the child abuse conviction at the time of her testimony. Thus, to the extent that relator's prior claims regarding Larck's criminal record rested on different grounds that the arguments raised here, La. C.Cr.P. art. 930.4(A) and (D)'s procedural bar arguable does not apply.

In *Brady*, 373 U.S. at 87, 83 S.Ct. at 1196-97, the United States Supreme Court held that the suppression by the State of evidence favorable to the accused after it receives a request for it violates a defendant's due process rights where the evidence is material to either guilt or punishment, without regard to the good or bad faith of the prosecutors. *See also State v. Bright*, 02-2893 (La. 5/25/04), 875 So.2d 37, 41-42. The duty to disclose is applicable even where there has been no request by the accused. *United States v. Agurs*, 427 U.S. 97, 107, 96 S.Ct. 2392, 2399, 49 L.Ed.2d 342 (1976). The State's due process duty to disclose applies to both exculpatory and impeachment evidence. *Untied States v. Bagley*, 473 U.S. 667, 676, 105 S.Ct. 3375, 3380, 87 L.Ed.2d 481 (9185); *State v. Kemp*, 00-2228 (La. 10/15/02), 828 So.2d 540, 545. *Brady* also requires the disclosure of evidence concerning a promise of leniency or immunity to a material witness in exchange for his testimony at trial. *Giglio v. United States*, 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972). *See also State ex rel. Guise v. State*, 00-2185 (La. 10/15/02), 828 So.2d 557, 558.

Evidence is "material" under *Brady* only if there is a reasonable probability that the result of the proceeding would have been different if the evidence had been disclosed to the defense. A reasonable probability is one that is sufficient to undermine confidence in the outcome. *Bagley*, 473 U.S. at 682, 105 S.Ct. at 3383. A reviewing court determining materiality must ascertain "not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence." *Kyles v. Whitley*, 514 U.S. 419, 434, 115 S.Ct. 1555, 1566, 131 L.Ed.2d 490 (1995).

Discovery violations are not grounds for reversal unless they have actually prejudiced the defendant. *State v. Garrick*, 03-137 (La. 4/14/04), 870 So.2d 990, 993 (*per curium*); *State v. Strickland*, 398 So.2d 1062, 1067 (La. 1981). Even a discovery violation involving the State's failure to disclose exculpatory evidence does not require reversal under the Due Process Clause "unless the nondisclosure was so serious that there is a reasonable probability that the suppressed evidence would have produced a different verdict." *Strickler v. Greene*, 527 U.S. 263, 281, 119 S.Ct. 1936,

> 1948, 144 L.Ed.2d 286 (1999).
>
> During her direct examination, Larck admitted that she frequented the area around the Happy Hour Saloon to engage in prostitution and smoke crack. She further admitted that she was incarcerated for skimming poker machines when she gave her statement to the police. Larck also wore prison garb when testifying at trial, explaining that she was currently incarcerated for three convictions: (1) possession of cocaine with the intent to distribute; (2) crime against nature; and (3) theft of goods in excess of $300. Larck denied that the State offered any deal or favorable treatment in exchange for her testimony. According to Larck, she received a five-year term for her convictions. Defense counsel thoroughly cross-examined Larck, drawing attention to her prior convictions and suggesting that Larck received a deal given that she faced a possible prison term of 144 years. Counsel also questioned Larck about her crack addition and how she engaged in prostitution to pay for drugs.
>
> Given these facts, we find that relator's *Brady* claim, alleging that the State failed to disclose Larck's multiple convictions, arises from evidence that would have been cumulative of the evidence already presented at trial. "[W]hen the undisclosed evidence is merely cumulative of other evidence, no *Brady* violation occurs." *Spence v. Johnson*, 80 F.3d 989, 995 (5th Cir. 1996), *cert. denied*, 519 U.S. 1012, 117 S.Ct. 519, 136 L.Ed.2d 407 (1996). *See also United States v. Quintanilla*, 25 F.3d 694, 699 (8th Cir. 1994), *cert. denied sub nom. Torres Valesquez v. United States*, 513 U.S. 978, 115 S.Ct. 457, 130 L.Ed.2d 365 (1994) (no *Brady* violation when the prosecution does not disclose some cumulative evidence, but "substantial" other evidence on the same point does reach the jury). As such, we find no reasonable probability that the evidentiary suppression of Larck's out-of-state convictions served to undermine confidence in the outcome of the trial.'

*State v. Brady*, 23-377 (La. App. 5 Cir. 9/6/23) (unpublished order) (SCR, Vol. 4, pp. 6444-6459).

Respondent denies any *Brady* violation occurred in this matter. Moreover, any alleged *Brady* violation concerning Amy Larck's criminal background arose from evidence that would have been cumulative of the evidence already presented at trial. ("[W]hen the undisclosed evidence is merely cumulative of other evidence, no *Brady* violation occurs." *Spence v. Johnson*, 80 F.3d 989, 995 (5th Cir. 1996), *cert. denied*, 519 U.S. 1012, 117 S.Ct. 519, 136 L.Ed.2d 407 (1996)). Respondent disputes Bradley's argument that evidence of Amy Larck's criminal history from North Carolina and Florida would have resulted in a reasonable probability of a different verdict. Additionally, there is

no evidence that any alleged failure to disclose evidence of Amy Larck's criminal history from North Carolina and Florida served to undermine confidence in the outcome of the trial. The trial court record is replete with evidence regarding Amy Larck's criminal background and convictions. There is nothing to suggest the state court's detailed and thorough ruling on the merits is contrary to established federal law.

Bradley asserts that the evidence of Amy Larck's criminal history would have impacted Amy Larck's credibility. Respondent disputes this unfounded argument. At trial, Ms. Larck's criminal history was exhaustively addressed by the State during her testimony. Ms. Larck testified as follows on direct examination:

> Q: Now Mr. [sic] Larck, are you from Louisiana?
>
> A: No, sir.
>
> Q: Where are you from?
>
> A: I was born in Illinois, raised in Virginia; and my Mother lives in North Carolina.
>
> Q: Now, that Fourth Street area, roughly the Happy Hour Bar; do you know that area?
>
> A: Yes, sir.
>
> Q: How do you know that area?
>
> A: I started hanging out after I came down here.
>
> Q: "Hanging out"; you don't mean like - I understood like on a street corner. What type of hanging out did you do?
>
> A: Prostitution, drugs.
>
> Q: Okay. How long had you been hanging out at the Happy Hour Bar area? When did you get there?

A: I got in Louisiana on July 4th of 1999.

Q: Okay. How did you get here?

A: I drove.

Q: From where?

A: Illinois.

Q: Down from Illinois.

A: Yes.

Q: Okay. What was the reason why you came here?

A: A change, something different.

Q: What were you doing in Illinois.

A: I was- I had my own apartment and things. I have sort of like step-family up there. And my Step-Father hit me and I called the Police. And his mother didn't want me to stay there.

Q: What type of job did you have in Illinois?

A: I was working in a telemarketing place.

Q: You're one of those people that use to bother us late at night, right?

A: Yes, sir.

Q: Now, what I want to do Ms. Larck, I want to take you back to July 30th, 31st, into the early morning hours. Were you at The Happy Hour Saloon or Lounge at that time?

A: Yes, sir.

Q: How long had you been there? When did you get there? Lets say it was July 30th, before it went to the early morning hours. What time did you get there on July 30th?

A: Maybe around eight, eight-thirty.

***

Q: Okay. Where had you been prior to that time?

A: During the daytime?

Q: Yes.

A: Everywhere; anywhere I could get crack.

***

Q: How did you accommodate yourself?

A: Prostitution.

Q: Is this the only place that you perform prostitution?

A: No.

Q: Where else?

A: All up and down Fourth Street. At the Budget Motels.

***

Q: How much money can you make in a night?

A: Anywhere from $300 to $500 a night.

Q: And what type of things are you doing for this money?

A: Sex, oral sex.

Q: You said that you smoked crack cocaine. How would you buy the crack cocaine? How did it come; large amounts, small amounts?

A: In a rock form, little rocks.

Q: How big were the rocks?

A: Twenty-dollar pieces.

***

Q: How would you smoke it?

A: In a pipe.

(SCR, Vol. 1, pp. 482-485).

Ms. Larck acknowledged at trial that she was testifying in "prison garb" and was incarcerated at the time in St. Gabriel prison. Ms. Larck further acknowledged her lengthy arrests and criminal convictions.

> Q: Well, you're in prison garb right now. Where are you from? What prison are you in?
>
> A: St. Gabriel.
>
> Q: For what?
>
> A: Possession with intent to distribute, crimes against nature, possession and theft.
>
> ***
>
> Q: You're the same Amy Larck that pled guilty in Case Number 00-4857, to thefts of goods, three-hundred plus, and crime against nature?
>
> A: Yes, sir.
>
> Q: Crime against nature being what you were going to do with Mr. Whatever his name is? I apologize, Your Honor. Mr. Sanford.
>
> A: Yes, sir.
>
> Q: Case Number 99-4831; theft of goods?
>
> A: Yes, sir.
>
> Q: That's like a shoplifting?
>
> A: Yes, sir.
>
> Q: Case Number 00-5303. It says here that you knowingly and intentionally distributed cocaine on the 21st of March, 2000?
>
> A: Yes, sir.
>
> Q: And it says here that you distributed cocaine on the 11th of April of 2000.

> A: Yes, sir.
>
> Q: Who were you distributing cocaine to?
>
> A: It was an undercover.
>
> Q: Why were you doing that?
>
> A: Because when you run - I was basically a runner. When you run for somebody, somebody else's drugs, you can break off somebody else's rock so you can get loaded too.
>
> Q: The same person that pled guilty in 00-4737 to possession of cocaine?
>
> A: Yes, sir.

(SCR, Vol. 1, pp. 505-507).

On cross-examination, Ms. Larck was asked about her prior criminal convictions. Again, Ms. Larck went on to testify about her numerous convictions and the sentences concerning those convictions. Ms. Larck testified she was serving five years pursuant to a guilty plea.

> Q: Ms. Larck, you had indicated on Direct Examination that you had several prior convictions.
>
> A: Yes, sir.
>
> Q: And Mr. Rowan went through each one with you. Lets make this a little more clear. You had indicated - you testified on Direct Examination that you had previously pled guilty to theft of goods, a shoplifting.
>
> A: Yes, sir.
>
> Q: Number 99-4931; for an incident that occurred on or about July 6th, 1999; correct?
>
> A: Yes, sir.
>
> Q: Was that your first conviction?

A: It was, I believe it was running concurrent with a theft by fraud, or skimming poker machines, whatever you want to call it.

Q: Pled guilty in December, 1999; correct?

A: Yes, sir.

Q: Guilty; December, '99. Division "H"; correct?

A: Yes, sir.

Q: Judge Hand?

A: Yes, sir.

Q: So you have a possession of cocaine conviction; correct?

A: Yes, sir.

Q: That's in docket number 00-4737?

A: Yes, sir.

Q: That's for an incident that occurred on August 3, 2000; right?

A: Yes, sir.

Q: You pled guilty in that case as well?

A: Yes, sir.

Q: That was also in front of Judge Hand?

A: Yes, sir.

***

Q: You also had another prior shoplifting charge; right?

A: Yes, sir.

Q: That occurred April 8th, 2000; right?

A: Yes, sir.

Q: Plead guilty in May, 2001?

A: Yes, sir.

Q: That's the same day you pled guilty to this possession of cocaine charge?

A: Yes, sir.

Q: That same charge you pled guilty to Crime Against Nature; right?

A: What do you mean, the same charge?

Q: I'm sorry. The same case. Another charge of Crime Against Nature?

A: I have a charge of Crime Against Nature, yes.

Q: That occurred April 18th, 2002.

A: Sir; I was incarcerated in 2002.

Q: I apologize. April 18th, 2000.

A: Yes, sir.

***

Q: Those charges on matter number 00-4857. Also, Division "H"?

A: Yes, sir.

***

Q: ...You also have another conviction, right?

A: Right.

Q: And that's for two counts of distribution of cocaine?

A: Right.

Q: Which occurred March 21st, 2000; right?

A: That's correct.

Q: You pled guilty to that also in May, 2001; right?

A: Yes, sir.

Q: There's another count where you pled guilty to; right?

A: Yes, sir.

Q: April 11th, 2000.

A: Yes, sir.

Q: Another distribution of drugs; right?

A: Yes, sir.

Q: That was also cocaine. You pled guilty the same day; May, 2001. That's matter number 00-5303; also in Division "H". You didn't get Multiple Billed on this case, did you?

A: No, Sir.

Q: You know you could have gotten up to sixty years on each charge?

A: (no response)

Q: You know that?

A: That's what I heard.

Q: Twenty years, twenty years oral sex. Four years for shoplifting. On this one you could have gotten ten years. On your last three convictions you could have gotten 144 years; right?

A: If that's what you say; yes, sir.

Q: You got five years.

A: Yes, sir.

(SCR, Vol. 1, pp. 528-533).

The record reveals that Amy Larck testified at trial and acknowledged that she was a prostitute and used the money she made from prostitution to purchase crack cocaine that she smoked in a pipe. Ms. Larck testified in "prison garb," which respondent addressed on direct examination. Ms. Larck testified that she was currently incarcerated in prison at St. Gabriel. Ms. Larck then went

on to testify about her several criminal convictions in Louisiana, including possession with intent to distribute, crimes against nature, possession, and theft, for which she was serving five (5) years pursuant to a guilty plea. Clearly, any undisclosed evidence concerning Ms. Larck's criminal history from North Carolina and Florida was cumulative of the evidence of Ms. Larck's arrest, conviction, and incarceration in Louisiana.

Respondent notes Bradley has repeatedly addressed Amy Larck's prior criminal history and credibility. In Bradley's direct appeal, the Louisiana Fifth Circuit held:

> ...Bradley contends Larck's testimony was further discredited by the deal she received in exchange for her testimony. Bradley notes that Larck had previously pled guilty to several felonies for which she received concurrent five-year sentences on each of the charges and was not billed as a habitual offender. However, Larck denied the existence of any plea agreement and further testified that she had been sentenced prior to testifying.
>
> ***
>
> However, as referenced above, Larck had been sentenced and had begun serving her sentence prior to trial. There was no evidence that the State promised Larck anything for her testimony...
>
> ***
>
> While there were numerous inconsistencies in Larck's testimony, the inconsistencies concerned Larck's activities prior to and after the shooting. These were not determinative of any element of the offense. Larck's testimony was not internally inconsistent with any other evidence. Although she gave conflicting statements at times, she consistently testified as to the location of the murder and that Bradley shot the victim. The jury in the instant case heard Larck's testimony and her reasons for initially lying to investigating officers. The jury chose to accept her testimony in light of circumstantial evidence that Bradley initially lied to police about knowing the victim and that he had been engaged in an argument with the victim on the night of the murder.

*State v. Bradley,* 858 So.2d at 85-86.

Amy Larck's past criminal history was discussed in Bradley's first *Uniform Application for Post-Conviction Relief* filed January 10, 2005, wherein Bradley stated:

> Amy has a procuress lifestyle. Along with no known friends or family, she

> comes from out of town to Louisiana. With a extensive criminal background she lives on the Westbank from one Motel to another...But her lifestyle as a thief, as a prostitute is to satisfy her compelling need and desire to get high. In the morning, afternoon and all hours of the night. Anything it takes, sex, stealing or dealing. What about lying? In the six to eight months, she spent in Louisiana her criminal spree covered:
>
> > six felony charges. Theft of goods over $300.00 99-483, shoplifting and crime against nature 00-4857 2 counts of distribution 00-5303 and simple possession 00-4737.

(SCR, Vol. 1, p.921).

Bradley again addressed Ms. Larck's prior criminal history in his first *Uniform Application for Post-Conviction Relief* , wherein he stated:

> Amy Larck was arrested on a charge in August bearing the docket number 99-4831. (Theft of goods over $300.00). Facing criminal charges and Incarceration, she made undisclosed deal with the district attorney, in exchange for information she knew about the murder of Barton Sanford.
>
> From that point until May 2001, Amy Larck was charged with (7) unrelated charges, that could have gotten her 140 years at hard labor. See Exhibit 1. Beyond her pass [sic] criminal history and new charges, Amy Larck was sentence[d] to 5 years, she was repeatedly bond out of jail as a material witness and placed in Bridge house drug rehab."

(SCR, Vol. 1, p. 931).

Respondent maintains the trial record affirmatively demonstrates that Amy Larck's criminal history has been known since the June 2001 trial of Bradley. Both the State and defense counsel questioned Ms. Larck about her criminal history at trial. Bradley repeatedly challenged Amy Larck's credibility based upon her criminal history in both his direct appeal and state collateral review. Bradley argues had he been given information concerning Amy Larck's criminal history from North Carolina and Florida that no reasonable juror would have convicted Bradley. Bradley's contention is merely a conclusory and unpersuasive argument.

Bradley has failed to refute the state court determination finding... "[g]iven these facts, we

find that realtor's Brady claim, alleging that the State failed to disclose Larck's multiple convictions, arises from evidence that would have been cumulative of the evidence already presented at trial." *State v. Bradley*, 23-377 (La. App. 5 Cir. 9/6/23) (unpublished order)(SCR, Vol. 4, pp. 6444-6459). Bradley has not rebutted by clear and convincing evidence the presumption of correctness accorded to the state court factual findings. Bradley has also failed to establish that the state court decision was incorrect or erroneous, much less has he met the more demanding habeas standard of proving that the decision was objectively unreasonable as required by AEDPA. (Rather, we decide whether the state court's *Brady* determination resulted in a decision that is contrary to, or involved an unreasonable application of, clearly established federal law. *See Busby v. Dretke*, 359 F.3d at 717). Accordingly, Bradley is not entitled to federal habeas relief based upon the state court finding concerning his *Brady* claim.

2. Bradley's Claim of a *Napue* Violation

Bradley avers the State failed to correct testimony that it knew or should have known was false relative to State's witness Amy Larck in violation of *Napue*. In *Napue v. Illinois*, 360 U.S. 264, 79 S.Ct. 1173, 3 L.Ed.2d 1217 (1959), the Supreme Court held that a prosecutor's knowing use of, or deliberate failure to correct, perjured testimony violates a defendant's Fourteenth Amendment rights. In order to obtain federal habeas relief, a petitioner must demonstrate that: 1) the testimony was actually false, 2) the state knew it was false, and 3) the testimony was material. *Canales v. Stephens*, 765 F.3d 551, 573 (5th Cir.2014). Significantly, "[d]ue process is not implicated by the prosecution's introduction or allowance of false or perjured testimony unless the prosecution actually knows or believes the testimony to be false or perjured; it is not enough that the testimony is challenged by another witness or is inconsistent with prior statements." *Kutzner*, 303 F.3d at 337.

In his fifth *Uniform Application for Post-Conviction Relief*, Bradley argued the State committed fraud upon the court by allowing Amy Larck to testify falsely at trial. The state trial court determined Bradley's claim of a *Napue* violation was procedurally barred as successive under La. C.Cr.P. art. 930.4 and untimely pursuant to La. C.Cr.P. art. 930.8. *See State v. Bradley*, 99-5825 (May 31, 2023), 24th Judicial District Court, Division "O." (SCR, Vol. 2, pp. 2823-2825).

Bradley subsequently sought writs to the Louisiana Fifth Circuit, Writ No. 23-KH-377. The Louisiana Fifth Circuit denied Bradley's writ application after considering the merits of Bradley's claim of a violation of *Napue v. Illinois*. *State v. Bradley*, 23-377 (La. App. 5 Cir. 9/6/23) (unpublished order). (SCR, Vol. 4, pp. 6444-6459). [20]

Bradley then filed a writ with the Louisiana Supreme Court, Writ No. 23-KP-1339 (SCR, Vol. 5, pp. 6952-7774). The Louisiana Supreme Court denied Bradley's application for supervisory writs without providing reasons. *State v. Bradley*, 23-1339 (La. 5/7/24), 384 So.3d 348. (SCR, Vol. 6, p. 7896).

Before applying AEDPA's standards, the federal court must identify the state court decision that is appropriate for review. Under AEDPA, "we review the last reasoned state court decision." *Woodfox v. Cain*, 772 F.3d 358, 369 (5th Cir. 2014); *Batchelor v. Cain*, 682 F.3d 400, 405 (5th Cir.2012) (*quoting Wood v. Quarterman*, 491 F.3d 196, 202 (5th Cir.2007)) (internal quotation marks omitted). A summary state court decision - that is, one unaccompanied by an explanation - is presumed to have been on the merits, *Harrington v. Richter*, 562 U.S. 86, 131 S.Ct. 770, 178 L.Ed.2d 624 (2011); in such cases, this Court must "'look through' the unexplained decision to the

---

[20] Despite the Louisiana Fifth Circuit Court of Appeal ruling, respondent contends this is not newly discovered evidence and should not form the basis of an exception to a procedural bar.

latest related state-court decision that does provide a relevant rationale" and must then "presume that the unexplained decision adopted the same reasoning." *Wilson v. Sellers*, 584 U.S. 122, 125, 138 S.Ct. 1188, 1192, 200 L.Ed.2d 530 (2018). As such, respondent argues this Court must presume the unexplained decision of the Louisiana Supreme Court adopted the same reasoning provided in the Louisiana Fifth Circuit's writ denial issued on September 6, 2023.

Moreover, *Ylst* made clear that if the later state court decides the question differently than the original state court, then the later judgment has controlling effect. *Ylst v. Nunnemaker*, 501 U.S. at 801, 111 S.Ct. 2590. ("State procedural bars are not immortal, however; they may expire because of later actions by state courts. If the last state court to be presented with a particular federal claim reaches the merits, it removes any bar to federal-court review that might otherwise have been available."). The state trial court denied Bradley's *Napue* claim based upon a state procedural bar. Upon review, the Louisiana Fifth Circuit addressed the merits of Bradley's *Napue* claim. The Louisiana Fifth Circuit's judgment has controlling effect pursuant to *Ylst v. Nunnemaker*, 501 U.S. at 801, 111 S.Ct. 2590 and respondent will address the merit decision accordingly.

On review of Bradley's *Napue* allegations at the state court level, the Louisiana Fifth Circuit determined in relevant part as follows:

> Relator further contends that the State elicited false testimony from Larck in violation of *Napue*, because the State "should have known that Larck, even in her early 20s, was a career criminal, not just in Louisiana but in other states." Relator also points out that when Larck was asked about her "first conviction," she failed to mention her prior convictions in Florida or North Carolina.
>
> To prove a *Napue* claim, a defendant must show that the prosecutor acted in collusion with the witness to facilitate false testimony. *State v. Broadway*, 96-2659 (La. 10/19/99), 753 So.2d 801, 814, *cert. denied,* 529 U.S. 1056, 120 S.Ct. 1562, 146 L.Ed.2d 466 (2000). Fundamental fairness, *i.e.*, due process, is offended "when the State, although not soliciting false evidence, allows it to go uncorrected when it appears." *Napue*, 360 U.S. at 269, 79 S.Ct. at 1177.

> The State denies a defendant due process when it knowingly uses perjured testimony at trial or allows untrue testimony to go uncorrected. *See Giglio, supra, Napue, supra*. The defendant must show that: (1) the testimony was false, (2) the State knew it was false, and (3) the testimony was material. *Kirkpatrick v. Whitley*, 992 F.2d 491, 497 (5th Cir. 1993). To find a violation of due process, however, the perjury must have been material to relator's conviction. "The mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial, does not establish 'materiality' in the constitutional sense." *Agurs*, 427 U.S. at 109-10, 96 S.Ct. at 2400. Perjury is material, and a new trial is required, if "'there is any reasonable likelihood that the false testimony could have affected the judgment of the jury.'" *Kirkpatrick*, 992 F.2d at 497 (citing *Agurs*, 427 U.S. at 103, 96 S.Ct. at 2397 (footnote omitted)); *Giglio,* 405 U.S. at 154, 92 S.Ct. at 766.
>
> As discussed above, because relator's newly discovered evidence of Larck's prior out-of-state convictions is cumulative of Larck's Louisiana convictions to which she admitted at trial while wearing prison garb, it is not likely that evidence of Larck's Florida or North Carolina convictions would have affected the judgment of the jury. Thus, we find realtor's *Napue* claim fails.

*State v. Bradley,* 23-377 (La. App. 5 Cir. 9/6/23) (unpublished order)(SCR, Vol. 4, pp. 6444-6459).

The elements of *Napue* are: (1) that the statements at issue must be shown to be actually false; (2) the prosecution must have known that they were false, and (3) the statements must be material. *United States v. O'Keefe*, 128 F.3d 885, 893 (5th Cir 1997). Bradley maintains this court should vacate Bradley's conviction "based on the fact that the State allowed Ms. Larck to testify falsely about her criminal history and the potential jail exposure that she was facing which went directly to her character and credibility as a witness." (P. 26 of Bradley's Memorandum). Bradley's claim of *Napue* violation was found to be without merit. The Louisiana Fifth Circuit reasoned to that find a violation of due process under *Napue* that Amy Larck's perjury must have been material to Bradley's conviction. *State v. Bradley,* 23-377 (La. App. 5 Cir. 9/6/23) (unpublished order)(SCR, Vol. 4, pp. 6444-6459). The Louisiana Fifth Circuit concluded the alleged perjury was cumulative of testimony presented at trial of Amy Larck's criminal history.

The "mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial, does not establish 'materiality' in the constitutional sense." *Agurs*, 427 U.S. at 109-10, 96 S.Ct. at 2400. There is nothing to suggest that the state court's merits ruling resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law. To the contrary, the state court's merit decision reasonably and diligently applied clearly established federal law to the facts of this case.

In summary, the state court properly found that Bradley had not established a *Napue* violation. Bradley's conclusory claim is predicated upon nothing more than Bradley's attempt to revisit his previous unsuccessful efforts to attack Amy Larck's testimony and challenge the rational credibility determinations made by the fact-finder at trial. The state court denial of relief was neither contrary to nor an unreasonable application of clearly established federal law as determined by the Supreme Court. As Bradley has failed to demonstrate that Amy Larck testified falsely, that the prosecutor acted in collusion with the witness to facilitate false testimony, and that the testimony was material, respondent respectfully submits that Bradley's claim of a *Napue* violation should be denied.

<u>Claims Two and Three are Barred Pursuant to the Procedural Default Doctrine</u> [21]

Respondent asserts that the merits of federal Claims Two (ineffective assistance of counsel) and Three (factual innocence) are procedurally barred from federal habeas review pursuant to the Procedural Default Doctrine. Federal Claims Two and Three were initially raised in Bradley's fifth *Uniform Application for Post-Conviction Relief*, which was filed in the 24th J.D.C. on December 28,

---

[21] Respondent maintains that Claims Two and Three of petitioner's habeas corpus are untimely based upon the aforementioned argument. It is in an abundance of caution and without waiving the timeliness defense that respondent addresses the procedural bar to Claims Two and Three.

2022. (SCR, Vol. 2, pp. 2087-2704). On May 31, 2023, the state district court denied the application on state procedural grounds, holding that this fifth application for post-conviction review was procedurally barred from collateral review pursuant to La. C.Cr.P. art. 930.4 and 930.8, as the application was untimely and successive. *State v. Bradley*, 99-5825 (May 31, 2023), 24th Judicial District Court, Division "O" (SCR, Vol. 2, p. 2823-2825).

Bradley sought review of this decision by filing a writ application in the Louisiana Fifth Circuit Court of Appeal, Writ No. 23-KH-377 (SCR, Vol. 3, p. 5634). The Louisiana Fifth Circuit denied relief on September 6, 2023, upholding the procedural bar of untimeliness under La. C.Cr.P. art. 930.8(A)(1) as to Bradley's claim of factual innocence and ineffective assistance of counsel. The Louisiana Fifth Circuit also determined Bradley's claim of ineffective assistance of counsel was repetitive as well, pursuant to La. C.Cr.P. art. 930.4(D). *See State v. Bradley,* 23-377 (La. App. 5 Cir. 9/6/23) (unpublished order) (SCR, Vol. 4, pp. 6444-6459). Subsequently, Bradley sought review of this decision by filing a writ application in the Louisiana Supreme Court on October 6, 2023. (SCR, Vol. 5, pp. 6952-7774). The Louisiana Supreme Court denied relief on May 7, 2024, Writ No. 23-KP-1339. *State v. Bradley*, 23-1339 (La. 5/7/24), 384 So.3d 348. (SCR, Vol. 6, p. 7896).

Generally, a federal court will not review a question of federal law decided by a state court if the decision of the state court rests on a state ground that is both independent of the federal claim and adequate to support that judgment. *Coleman v. Thompson*, 501 U.S. 722, 731-732, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991); *Glover v. Cain*, 128 F.3d 900, 902 (5th Cir. 1997); *Amos v. Scott*, 61 F.3d 333, 338 (5th Cir. 1995) *cert. denied*, 516 U.S. 1005, 116 S.Ct. 557, 133 L.Ed.2d 458 (1995) (*citing Harris v. Reed*, 489 U.S. 255, 260, 109 S.Ct. 1038, 103 L.Ed.2d. 308 (1989)). This "independent and adequate state law" doctrine applies to both substantive and procedural grounds

and affects federal review of claims that are raised on either direct or habeas review. *Amos v. Scott*, 61 F.3d at 338.

The *Coleman* Court explained:

> In the context of direct review of a state court judgment, the independent and adequate state ground doctrine is jurisdictional. Because this Court has no power to review a state law determination that is sufficient to support the judgment, resolution of any independent federal ground for the decision could not affect the judgment and would therefore be advisory. *See Herb v. Pitcairn*, 324 U.S. 117, 125–126, 65 S.Ct. 459, 462–464, 89 L.Ed. 789 (1945) ("We are not permitted to render an advisory opinion, and if the same judgment would be rendered by the state court after we corrected its views of federal laws, our review could amount to nothing more than an advisory opinion").

Furthermore, the *Coleman* Court recognized that this rule is based upon comity:

> In the habeas context, the application of the independent and adequate state ground doctrine is grounded in concerns of comity and federalism. Without the rule, a federal district court would be able to do in habeas what this Court could not do on direct review; habeas would offer state prisoners whose custody was supported by independent and adequate state grounds an end run around the limits of this Court's jurisdiction and a means to undermine the State's interest in enforcing its laws.

*Coleman v. Thompson*, 501 U.S. 722, 730-731, 111 S.Ct. 2546, 2554, 115 L.Ed.2d 640 (1991).

In order to fulfill the independence requirement, the last state court rendering a judgment in the case must "clearly and expressly" indicate that its judgment is independent of federal law and rests on a state procedural bar. *Amos v. Scott*, 61 F.3d at 338, *Harris v. Reed*, 489 U.S. at 263. Respondent maintains that when a state-law default prevents the state court from reaching the merits of a federal claim, that claim can ordinarily not be reviewed in federal court. *Ylst v. Nunnemaker*, 501 U.S. at 801, 111 S.Ct. at 2593. This ruling applies whether the state law ground is procedural or substantive. *Coleman v. Thompson*, 501 U.S. 722, 729, 111 S.Ct. 2546, 2554, 115 L.Ed.2d 640 (1991).

The Procedural Default Doctrine provides that when a prisoner has defaulted a claim by

violating a state procedural rule which would constitute adequate or independent grounds, he may not raise the claim in a federal habeas, absent a showing of cause and prejudice, or actual innocence. *Coleman v. Thompson*, 501 U.S. at 729-730, 111 S.Ct. at 2546. As noted above, Claims Two and Three raised in the instant federal petition for habeas corpus relief were rejected by the state district court and court of appeal as procedurally barred pursuant to La. C.Cr.P. art. 930.4(D) and La. C.Cr.P. art. 930.8(A). Bradley's claims of ineffective assistance of counsel and actual innocence set forth in his fifth *Uniform Application for Post-Conviction Relief* were found repetitive and untimely.

Claim Two - Ineffective Assistance of Counsel[22]

Respondent contends the ineffective assistance counsel claims set forth in federal Claim Two are procedurally barred from federal habeas review pursuant to the Procedural Default Doctrine.[23]

---

[22] Respondent notes that Bradley's federal Claim Two is as follows:

> Bradley's right to a fair trial was violated when his attorney was ineffective and the state committed a fraud upon the court. The state court's procedural bars on these claims failed to recognize Bradley's gateway claim of innocence.

In an attempt to clarify Claim Two, which respondent interprets as overlapping several claims, respondent is addressing Claim Two as Bradley's denial of his claims of ineffective assistance of counsel. Bradley's claims of ineffective assistance of counsel were procedurally barred as untimely under La. C.Cr.P. art. 930.8 and repetitive under La. C.Cr.P. art. 930.4.

Bradley's claim of actual innocence under La. C.Cr.P. art. 926.2 was determined to be procedurally barred pursuant to the determination that Bradley's evidence did not comply with the mandatory requirements set forth in La. C.Cr.P. art. 926.2. Respondent will address Bradley's claims of actual innocence in its discussion under Claim Three.

Furthermore, Bradley's *Napue*/fraud claim was determined by the Louisiana Fifth Circuit to be without merit and addressed by respondent in Claim One. The Louisiana Fifth Circuit did not conclude Bradley's claim of *Napue*/fraud was procedurally barred.

Finally, Bradley sets forth in Claim Two "the state court's procedural bars on these claims [ineffective assistance and fraud] failed to recognized Bradley's gateway claim innocence." Respondent will address Bradley's claim of actual innocence in Claim Three.

[23] Respondent maintains that Claim Two of petitioner's habeas corpus is untimely based upon the aforementioned argument. It is in an abundance of caution and without waiving the timeliness defense that respondent addresses the procedural bar to Claim Two.

Claims of ineffective assistance of counsel were raised in Bradley's fifth *Uniform Application for Post-Conviction Relief*, which was filed in the 24th J.D.C. on December 28, 2022. (SCR, Vol. 2, pp. 2087-2704). On May 31, 2023, the district court issued an Order denying Bradley's fifth *Uniform Application for Post-Conviction Relief*. (SCR, Vol. 2, pp. 2823-2825). As to the claim of ineffective assistance of counsel, the district court ruled that Bradley's claim of ineffective assistance of counsel was untimely pursuant to La. C.Cr.P. art. 930.8(A). ("No application for post-conviction relief... shall be considered if it is filed more than two years after the judgment of conviction and sentence has become final..."). *State v. Bradley*, 99-5825 (May 31, 2023), 24th Judicial District Court, Division "O" (SCR, Vol. 2, p. 2823-2825).

Bradley filed an Application for Supervisory Writs with the Louisiana Fifth Circuit that was denied on September 6, 2023. *State v. Bradley*, 23-377 (La. App. 5 Cir. 9/6/23) (unpublished order) (SCR, Vol. 4, pp. 6444-6459). Consequently, the Louisiana Fifth Circuit determined Bradley's claim of ineffective assistance of counsel was untimely pursuant to La. C.Cr.P. art. 930.8(A) and repetitive pursuant to La. C.Cr.P. art. 930.4(D). The Louisiana Fifth Circuit held:

> This claim is time-barred by La. C.Cr.P. art. 930.8, because La. C.Cr.P. art. 930.8(A)(1), which provides for an exception to the time-bar only where [t]he application alleges, and the petitioner proves or the state admits, that the facts upon which the claim is predicated were not known to the petitioner or his prior attorneys," is inapplicable. Defense counsel attempted to call Smith as a witness at trial but was unable to secure her presence. Furthermore, the claim is repetitive, as relator has previously raised it in his 2005 APCR. See La. C.Cr.P. art. 930.4(D).

*State v. Bradley*, 23-377 (La. App. 5 Cir. 9/6/23) (unpublished order) (SCR, Vol. 4, pp. 6444-6459).

Bradley's Application for Supervisory Writ with the Louisiana Supreme Court was denied on May 7, 2024. *State v. Bradley*, 23-1339 (La. 5/7/24), 384 So.3d 348. (SCR, Vol. 6, p. 7896). The Louisiana Supreme Court did not provide reasons for the denial of Bradley's writ application.

As addressed above, Bradley's claim of ineffective assistance of counsel raised in the instant federal petition for habeas corpus relief was rejected by the state district court as procedurally barred pursuant to La. C.Cr.P. art. 930.8(A), on the basis that Bradley's fifth application for post-conviction relief was untimely.[24] The Louisiana Fifth Circuit considered the writ application and denied Bradley's claim of ineffective assistance of counsel as procedurally barred as untimely under La. C.Cr.P. art. 930.8 and repetitive under La. C.Cr.P. art. 930.4 (D).[25]

---

[24] That codal article reads, in pertinent part, as follows:
**La. C.Cr.P. art. 930.8 Time limitations; exceptions; prejudicial delay**

A. No application for post conviction relief, including applications which seek an out-of-time appeal, shall be considered if it is filed more than two years after the judgment of conviction and sentence has become final under the provisions of Article 914 or 922, unless any of the following apply:

(1) The application alleges, and the petitioner proves or the state admits, that the facts upon which the claim is predicated were not known to the petitioner or his prior attorneys. Further, the petitioner shall prove that he exercised diligence in attempting to discover any post conviction claims that may exist. "Diligence" for the purposes of this Article is a subjective inquiry that shall take into account the circumstances of the petitioner. Those circumstances shall include but are not limited to the educational background of the petitioner, the petitioner's access to formally trained inmate counsel, the financial resources of the petitioner, the age of the petitioner, the mental abilities of the petitioner, or whether the interests of justice will be served by the consideration of new evidence. New facts discovered pursuant to this exception shall be submitted to the court within two years of discovery. If the petitioner pled guilty or nolo contendere to the offense of conviction and is seeking relief pursuant to Article 926.2 and five years or more have elapsed since the petitioner pled guilty or nolo contendere to the offense of conviction, the petitioner shall not be eligible for the exception provided for by this Subparagraph.

***

(6) The petitioner qualifies for the exception to timeliness in Article 926.2.

[25] That codal article reads, in pertinent part, as follows:
**La. C.Cr.P. art. 930.4 Repetitive applications**

A. Unless required in the interest of justice, any claim for relief which was fully litigated in an appeal from the proceedings leading to the judgment of conviction

Bradley's claim of ineffective assistance of counsel was procedurally barred by the Louisiana Fifth Circuit on the grounds that it was repetitive (La. C.Cr.P. art. 930.4(D)) and untimely (La. C.Cr.P. art. 930.8). *State v. Bradley*, 23-377 (La. App. 5 Cir. 9/6/23) (unpublished order) (SCR, Vol. 4, pp. 6444-6459). Procedural default does not bar federal court review of a federal claim raised in a habeas petition unless the last state court rending a judgment in the case has "clearly and expressly" indicated that its judgment is independent of federal law, e.g., rests on a state procedural bar. *Amos v. Scott*, 61 F.3d at 338 (citations and quotations omitted). Here, the Louisiana Fifth Circuit Court of Appeal's writ denial regarding Bradley's claim of ineffective assistance of counsel "clearly and expressly" indicated its judgment is independent of federal law. *See State v. Bradley*, 23-377 (La. App. 5 Cir. 9/6/23) (unpublished order) (SCR, Vol. 4, pp. 6444-6459).

Federal courts have held that the procedural bar imposed under La. C.Cr.P. art. 930.4 is both independent and adequate to preclude federal review of a claim barred by the state courts. *Ardison v. Cain*, 264 F.3d 1140 ; 2001 WL 822445, at *3-5 (5th Cir. 2001). *See also*, *Lewis v. Cain*, No. 09-3240, 2010 WL 4363546, at 9* (E.D.La., Aug. 19, 2010)(Report and Recommendation) (Chasez, M.J.), adopted by, *Lewis v. Cain*, No. 09-3240, 2010 WL 4340795 (E.D.La. Oct 21, 2010) (Feldman, J.). *See also*, *Hymes v. Cain*, No. 07-502, at *8, 2010 WL 924288 (E.D.La., March 9, 2010) (Report

---

and sentence shall not be considered.
B. If the application alleges a claim of which the petitioner had knowledge and inexcusably failed to raise in the proceedings leading to conviction, the court shall deny relief.
C. If the application alleges a claim which the petitioner raised in the trial court and inexcusably failed to pursue on appeal, the court shall deny relief.
D. A successive application shall be dismissed if it fails to raise a new or different claim.
E. A successive application shall be dismissed if it raises a new or different claim that was inexcusably omitted from a prior application.
***

and Recommendation) (Chasez, M.J.), adopted by, *Hymes v. Cain*, No. 07-502, 2010 WL 924288 (E.D.La., March 9, 2010) (Vance, J.); *Young v. Travis*, No. 07-3542, 2011 WL 494811, at *8 (E.D.La., Jan. 13, 2011 )(Report and Recommendation)(Roby, M.J.), adopted by, *Young v. Travis*, No. 07-3542, 2011 WL 494802 (E.D.La. Feb 04, 2011)(Lemelle, J.); *Simmons v. Cain*, No. 06-2130, 2008 WL 2185422, at *6 (E.D.La. May 20, 2008)(Berrigan, J.); *Monroe v. Cain, No.* 05-0929, 2006 WL 5507856, at *8 (E.D.La. Oct. 17, 2006)(Report and Recommendation)(Roby, M.J.), adopted as modified on other grounds, *Monroe v. Cain*, No. 05-0929, 2008 WL 818968, at *1 (E.D.La. Mar. 24, 2008)(Berrigan, J.). Moreover, there is no suggestion that La. C.Cr.P. art. 930.8 has been applied selectively or irregularly. "Because Louisiana courts have regularly invoked the statute to bar untimely claims, we find nothing to trump the presumption of adequacy." *Glover v. Cain*, 128 F.3d 900, 902 (5th Cir. 1997). A state procedural rule enjoys a presumption of adequacy when the state court expressly relies upon it in deciding not to review a claim for collateral relief. *Glover v. Cain*, 128 F.3d 900 (5th Cir. 1997)*, citing Lott v. Hargett*, 80 F.3d 161, 165 (5th Cir. 1996).

A state procedural rule enjoys a presumption of adequacy when the state court expressly relies upon it in deciding not to review a claim for collateral review. *Glove v. Cain*, 128 F.3d 900 (5th Cir. 1997), *citing Lott v. Hargett*, 80 F.3d 161, 165 (5th Cir. 1996). The state court decision relied upon adequate state procedural rules which barred Bradley's untimely and repetitive claim of ineffective assistance of counsel pursuant to La. C.Cr.P. art 930.8 and La. C.Cr.P. art. 930.4(D). There is no suggestion that the procedural bars have not been evenhandedly applied. Respondent urges this Court to find that the procedural bars utilized by Louisiana courts are adequate to bar federal review of Bradley's defaulted claim.

Because the procedural default doctrine presumes that a state procedural ground is "adequate

and independent," the burden is on the habeas petitioner to demonstrate otherwise. *Hughes v. Johnson*, 191 F.3d 607, 614 (5th Cir. 1999). A judgment resting on an independent and adequate state rule of procedural default precludes federal habeas review of a claim if the habeas petitioner cannot show "cause" for the default and "prejudice attributed thereto," or demonstrate that the federal court's failure to review the defaulted claim will result in a "fundamental miscarriage of justice." *Coleman v. Thompson*, 111 S.Ct. 2546, 2553-54 (1991); *Amos v. Scott*, 61 F.3d at 338-39; *Wainwright v. Skyes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977); *Harris v. Reed*, 489 U.S. at 262, *Engle v. Isaac*, 456 U.S. 107, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982). To demonstrate cause, Bradley must prove that some condition external to the defense impeded his efforts to comply with the procedural rules, that the factual or legal basis of a claim was not available to counsel, or that governmental interference rendered procedural compliance impractical. *Murray v. Carriere*, 477 U.S. 478, 488, 106 S.Ct. 2639, 2645, 91 L.Ed.2d 397 (1986). In that case, the United States Supreme Court held that "the mere fact that counsel failed to recognize the factual or legal basis for a claim, or failed to raise the claim despite recognizing it, does not constitute cause for procedural default." *Murray v. Carriere*, 477 U.S. at 486, 106 S.Ct. at 2644.

Bradley has failed to meet his burden in this matter. Bradley has not shown "cause" for his procedural default. Bradley has put forth no evidence of any condition external to his defense which impeded his efforts to comply with the procedural default rules. Bradley offers no evidence in which there was no governmental interference which prevented him from raising this claim in his first application for post-conviction relief, which Bradley did and was a basis for the Louisiana Fifth Circuit's determination that Bradley's claim of ineffective assistance of counsel was repetitive under La. C.Cr.P. art. 930.4(D).

Additionally, Bradley cannot show "actual prejudice," nor does the record reflect such. Regarding the "fundamental miscarriage of justice" element, it would exist only in extraordinary circumstances where the constitutional violation has possibly resulted in the conviction of an individual who is actually innocent. *Murray v. Carriere*, 106 S.Ct. at 2645. In this instance, Bradley fails to, and indeed cannot, show cause, prejudice, or a fundamental miscarriage of justice. This Court is precluded from reviewing the merits of the claim of ineffective assistance of counsel raised in the instant petition for federal habeas corpus relief.

Claim Three -Actual Innocence[26]

Bradley seeks federal habeas review of his factual innocence claim in federal Claim Three. Respondent maintains Bradley's claim of actual innocence is procedurally barred from federal review based upon the Procedural Default Doctrine. Bradley sought relief under La. C.Cr.P. art. 926.2[27] factual innocence in his fifth application for post-conviction relief. On May 31, 2023, the district court issued an order denying Bradley's fifth *Uniform Application for Post-Conviction Relief*. (SCR, Vol. 2, pp. 2823-2825). The state district court found Bradley's claims of factual innocence under La. C.Cr.P. art. 926.2 to be untimely pursuant to La. C.Cr.P. art. 930.8(A).

> Petitioner fails to present any evidence in support of his claim which meets the necessary criteria of the above statute. The newly enacted statute requires, "new, reliable, and noncumulative evidence that would be legally admissible at trial and that was not known or discoverable at or prior to trial." Id. The next crucial

---

[26] Respondent maintains that Claim Three of petitioner's habeas corpus is untimely based upon the aforementioned argument. It is in an abundance of caution and without waiving the timeliness defense that respondent addresses the procedural bar to Claim Three.

[27] In an abundance of caution and due to the recent enactment of La. C.Cr.P. art. 926.2, respondent maintains Claim Three is procedurally barred from federal review based upon the Procedural Default Doctrine. However, in the event this Court concludes Bradley's claim is a not subject to the procedural default doctrine, respondent will respond to the merits of Bradley's claim of actual innocence in the subparts below.

> requirement includes that new evidence be either (i) "Scientific, forensic, physical, or nontestimonial evidence," or (ii) "testimonial evidence that is corroborated by evidence of the type described in item (i) of this subparagraph." Id. The evidence presented in APCR and the affidavits provided are purely testimonial in nature are not corroborated by any new evidence that is scientific, forensic, physical, or nontestimonial documentary evidence as per La. C.Cr.P. art. 926.2(B)(1)(a)(ii). As such, the affidavits presented fail to meet the criteria statutorily mandated, and petitioner fails to meet the burden set forth by La. C.Cr.P. art. 926.2(B)(1)(a)(ii).

*State v. Bradley*, 99-5825 (May 31, 2023), 24th Judicial District Court, Division "O"

Failing to meet the mandatory requirements of La. C.Cr.P. art. 926.2, the state district court determined Bradley's claims of factual innocence to be procedurally barred as untimely pursuant to La. C.Cr.P. art. 930.8(A).

Bradley filed an Application for Supervisory Writs with the Louisiana Fifth Circuit that was denied on September 6, 2023. *State v. Bradley*, 23-377 (La. App. 5 Cir. 9/6/23) (unpublished order) (SCR, Vol. 4, pp. 6444-6459). In denying Bradley's writ application, the Louisiana Fifth Circuit stated:

> In short, realtor's factual innocence claim falls short of the requirements set forth in La. C.Cr.P. art. 926.2. Consequently, relator's claim, which lacks support as a claim of factual innocence, is untimely given that realtor's conviction and sentence became final in 2004. See La. C.Cr.P. art. 930.8(A) ("No application for post-conviction relief including applications which seek an out-of time appeal, shall be considered if it is filed more than two years after the judgment of conviction and sentence has become final.").

Bradley's Application for Supervisory Writ with the Louisiana Supreme Court was denied on May 7, 2024. *State v. Bradley*, 23-1339 (La. 5/7/24), 384 So.3d 348. (SCR, Vol. 6, p. 7896). The Louisiana Supreme Court did not provide reasons for the denial of Bradley's writ application

On habeas review, a federal court generally will not review a question of federal law if the decision of that state court rests upon a state court ground that is both independent of the merits of the federal claim and adequate to support that judgment. *Amos v. Scott*, 61 F.3d at 338., *citing Harris*

*v. Reed*, 489 U.S. at 262. This ruling meets the "independence" requirement. Additionally, the state procedural rule must also be "adequate." "An 'adequate' rule is one that state courts strictly or regularly follow, and one that is applied evenhandedly to the vast majority of similar claims." *Glover v. Cain*, 128 F.3d 900, 902 (5th Cir. 1997), *citing, Amos*, 61 F.3d at 339. A state procedural rule enjoys a presumption of adequacy when the state court expressly relies upon it in deciding not to review a claim for collateral relief. *Id., citing Lott v. Hargett*, 80 F.3d 161, 165 (5th Cir. 1996). Indeed, because the procedural default doctrine presumes that a state procedural ground is "adequate and independent," the burden is on the habeas petitioner to demonstrate otherwise. *Hughes v. Johnson*, 191 F.3d 607, 614 (5th Cir. 1999). Bradley has not met his burden in demonstrating the state procedural ground barring his claim of factual innocence was not adequate and independent.

There is no suggestion that La. C.Cr.P. art. 930.8 has been applied selectively or irregularly. A state procedural rule enjoys a presumption of adequacy when the state court expressly relies upon it in deciding not to review a claim for collateral relief. *Glover v. Cain*, 128 F.3d 900 (5th Cir. 1997), *citing Lott v. Hargett*, 80 F.3d 161, 165 (5th Cir. 1996). "Because Louisiana courts have regularly invoked the statute to bar untimely claims, we find nothing to trump the presumption of adequacy." *Glover v. Cain*, 128 F.3d at 902.

A judgment resting on an independent and adequate state rule of procedural default precludes federal habeas review of a claim if the habeas petitioner cannot show "cause" for the default and "prejudice attributed thereto," or demonstrate that the federal court's failure to review the defaulted claim will result in a "fundamental miscarriage of justice." *Coleman v. Thompson*, 111 S.Ct. 2546, 2553-54 (1991); *Amos v. Scott*, 61 F.3d at 338-39; *Wainwright v. Skyes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977); *Harris v. Reed*, 489 U.S. at 262, *Engle v. Isaac*, 456 U.S. 107, 102 S.Ct.

1558, 71 L.Ed.2d 783 (1982). To demonstrate cause, the petitioner must prove that some condition external to the defense impeded his efforts to comply with the procedural rules, that the factual or legal basis of a claim was not available to counsel, or that governmental interference rendered procedural compliance impractical. *Murray v. Carriere*, 477 U.S. 478, 488, 106 S.Ct. 2639, 2645, 91 L.Ed.2d 397 (1986). In this instance, Bradley cannot show any condition external to his defense which impeded his efforts to comply with the procedural default rules.

La. C.Cr.P. art. 926.2, which will be discussed further in depth in a subsection, allows for petitioners to pursue a claim of factual innocence provided the necessary evidentiary basis is met.[28]

---

[28] **La. C.Cr.P. art. 926.2 Factual Innocence** provides, in pertinent part:

A. A petitioner who has been convicted of an offense may seek post conviction relief on the grounds that he is factually innocent of the offense for which he was convicted. A petitioner's first claim of factual innocence pursuant to this Article that would otherwise be barred from review on the merits by the time limitation provided in Article 930.8 or the procedural objections provided in Article 930.4 shall not be barred if the claim is contained in an application for post conviction relief filed on or before December 31, 2022, and if the petitioner was convicted after a trial completed to verdict. This exception to Articles 930.4 and 930.8 shall apply only to the claim of factual innocence brought under this Article and shall not apply to any other claims raised by the petitioner. An application for post conviction relief filed pursuant to this Article by a petitioner who pled guilty or nolo contendere to the offense of conviction or filed by any petitioner after December 31, 2022, shall be subject to Articles 930.4 and 930.8.

B. (1)(a) To assert a claim of factual innocence under this Article, a petitioner shall present new, reliable, and noncumulative evidence that would be legally admissible at trial and that was not known or discoverable at or prior to trial that is either:

(i) Scientific, forensic, physical, or nontestimonial documentary evidence.

(ii) Testimonial evidence that is corroborated by evidence of the type described in Item (i) of this Subsubparagraph.

(b) To prove entitlement to relief under this Article, the petitioner shall present

Article 926.2 provides a "grace period" for petitioners whose claim would otherwise be procedurally barred as untimely or procedurally. However, the "grace period" applies only to petitioners whose evidence meets the strict criteria provided in the Article. The Louisiana Fifth Circuit held Bradley's claim of actual innocence pursuant to La. C.Cr.P. art. 926.2 was untimely pursuant to La. C.Cr.P. art. 930.8 due to Bradley's lack of the mandatory requisite evidence,

Bradley has failed to show "cause" for his procedural default. In this instance, Bradley fails to, and indeed cannot, show cause, prejudice, or a fundamental miscarriage of justice. This Court is precluded from reviewing the merits of the claim of actual innocence under La. C.Cr.P. art. 926.2 raised in the instant petition for federal habeas corpus relief.

Bradley contends that his actual innocence serves as a gateway to pass through in order to have an otherwise barred claim considered on the merits. However, it is the state's argument that Bradley fails to meet his burden of showing the actual innocence gateway. Respondent will address the merits of this argument despite the claim being procedurally barred. Respondent maintains that Bradley's actual innocence claim should be denied because such a freestanding claim of actual innocence fails to state a claim cognizable on federal habeas review.

---

> evidence that satisfies all of the criteria in Subsubparagraph (a) of this Subparagraph and that, when viewed in light of all of the relevant evidence, including the evidence that was admitted at trial and any evidence that may be introduced by the state in any response that it files or at any evidentiary hearing, proves by clear and convincing evidence that, had the new evidence been presented at trial, no rational juror would have found the petitioner guilty beyond a reasonable doubt of either the offense of conviction or of any felony offense that was a responsive verdict to the offense of conviction at the time of the conviction.
>
> (2) A recantation of prior sworn testimony may be considered if corroborated by the evidence required by Subsubparagraph (1)(a) of this Paragraph. However, a recantation of prior sworn testimony cannot form the sole basis for relief pursuant to this Article.

*1. Freestanding Actual Innocence Claim Not Cognizable on Federal Habeas Review*

Respondent contends that Bradley fails to state a ground cognizable on habeas corpus review. The United States Supreme Court has not recognized actual innocence as an independent ground for federal habeas corpus relief. *McQuiggin v. Perkins*, 569 U.S. 383, 392, 133 S.Ct. 1924, 1931,135 L.Ed2d 1019 (*citing Herrera v. Collins*, 506 U.S. 390, 400, 113 S.Ct. 853, 860, 122 L.Ed 203 (1993). *See Dowthitt v. Johnson*, 230 F.3d 733, 741 (5th Cir. 2000) (a claim of actual innocence is not a ground for federal habeas relief in the absence of an independent constitutional violation, but here a gateway through which the petitioner must pass in order to have an otherwise barred claim considered on the merits). *See also, Foster v. Quarterman*, 466 F.3d 359, 367 (5th Cir. 2006); *Graves v. Cockrell*, 351 F.3d 143, 151 (5th Cir. 2003).

In *McQuiggin v. Perkins*, 569 U.S. at 386, the United States Supreme Court held that "actual innocence, if proved, serves as a gateway through which a petitioner may pass...[to excuse] the expiration of the statute of limitations." The Supreme Court has cautioned, however, that "tenable actual-innocence gateway pleas are rare[.]" *Id*. To succeed on this claim, a petitioner must present a credible claim of actual innocence based on "new reliable evidence...that was not presented at trial," and he "must show that it is more likely than not that no reasonable juror would have found him guilty beyond a reasonable doubt" in light of that new evidence of his factual innocence. *Schlup v. Delo*, 513 U.S. 298, 327 (1995).

In federal habeas corpus proceedings, Bradley's innocence claim may serve only as a gateway through which a procedurally barred constitutional claim may be considered on the merits. In such cases, the Supreme Court has recognized that an actual innocence claim may be used to raise an otherwise procedurally-defaulted claim on habeas review: "[i]n other words, a credible showing of

actual innocence may allow a prisoner to pursue his constitutional claims, (here, ineffective assistance of counsel) on the merits notwithstanding the existence of a procedural bar to relief." *McQuiggin v. Perkins, supra*. And even then, the actual innocence gateway should open only to reach merits of procedurally barred claim only when a habeas petitioner presents "evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error." *McQuiggin v. Perkins*, 133 S.Ct. at 1936.

On June 13, 2002, a jury found Bradley guilty of the second degree murder of Barton Sanford, in violation of La. R.S. 14:30.1. (SCR Vol. 1, pp.191-192). Bradley maintains he has presented a freestanding claim of actual innocence. To the extent Bradley arguably makes such a claim, Bradley has failed to prove that the affidavits, video surveillance, sheriff's report, and medical examiners testimony tend to create an exception to the AEDPA's limitations provision. To the contrary, even if the affidavits could be believed, it purports to establish the existence of credibility concerns and conflicting evidence from witnesses, which is not a basis for a claim of actual innocence. *See Bosley v. Caine*, 409 F.3d 657, 665 (5th Cir. 2005). The affidavits and other evidence do not establish Bradley's actual innocence or that it is more likely than not that no reasonable juror would have convicted him in light of the "new evidence." *Schlup v. Delo*, 513 U.S. 298, 327, 115 S.Ct. 851,867 130 L.Ed.2d 808 (1995).

In the instant case, Bradley has not presented credible claims of actual innocence based on new reliable evidence that was not presented at trial. The evidence Bradley has set forth is not sufficient to show it is more likely than not that no reasonable juror would have found Bradley guilty beyond a reasonable doubt. Respondent avers that Bradley's actual innocence claim is a freestanding

claim of actual innocence; and, it should be denied because it fails to state a claim cognizable on federal habeas review.

*2. Bradley Fails to Meet Actual Innocence Standard*

Bradley is attempting to use actual innocence as a gateway method of raising an otherwise procedurally barred claim on federal habeas review. However, Bradley fails to meet the actual innocence standard. The United States Supreme Court has not yet recognized actual innocence as a freestanding claim, but the Eighth Circuit has observed regarding such a hypothetical claim that "[t]he threshold, if it exists, would require more convincing proof' than the "gateway" standard…[t]hus, on a freestanding claim of actual innocence, it is not sufficient that a petitioner shows even that it is 'more likely than not' that no reasonable juror would have found petitioner guilty beyond a reasonable doubt…[t]he 'extraordinarily high' threshold, if recognized, would be even higher." *Dansby v. Hobbs,* 766 F.3d 809, 816-817 (8th Cir. 2014). This standard requires that a petitioner seeking to surmount a procedural default through a showing of actual innocence must establish it is more likely than not that, in the light of the new evidence, no juror, acting reasonably, would have voted to find the petitioner guilty beyond a reasonable doubt. *Schlup v. Delo*, 513 U.S. 298, 327, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995). Bradley has failed to provide evidence of his innocence so strong that no juror acting reasonable would have voted to find Bradley guilty beyond a reasonable doubt.

*3. Bradley's Factual Innocence Claim Challenges a State Court's Application of its Own Law*

To the extent Bradley challenges the state court's application and analysis of Louisiana law, he has not stated a cognizable federal claim. A federal habeas court does not sit to correct errors made by state courts in interpreting and applying state law. *Swarthout v. Cooke*, 562 U.S. 216, 219

(2011); *Narvaiz v. Johnson*, 134 F.3d 688, 695 (5th Cir. 1998)(citing *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990); and *West v. Johnson*, 92 F.3d 1385, 1404 (5th Cir. 1996). "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." *Estelle,* 502 U.S. at 67-68; *see also Molo v. Johnson*, 207 F.3d 773, 776 n.9 (5th Cir. 2000) ("Federal habeas review does not extend to state court conclusions of state law."); *Hogue v. Johnson*, 131 F.3d 466, 506 (1997) (a disagreement as to state law is not cognizable on federal habeas review). Instead, federal habeas courts sit only to address violations of constitutional magnitude, including due process violations that render the criminal court proceedings fundamentally unfair. *Lisenba v. People of the St. of Cal.*, 314 U.S. 219, 236-237 (1941); *Peters v. Whitley*, 942 F.2d 937, 940 (5th Cir. 1991) (Habeas corpus review is proper only to determine whether a state trial judge's error is so extreme as "to render the trial fundamentally unfair or violate an explicit constitutional right."). Thus, allegations about the state court's interpretation and application of Louisiana law on factual innocence, even if erroneous, cannot establish grounds for federal habeas corpus relief.

La. C.Cr.P. art. 926.2, governing claims of factual innocence, was enacted in Act 104 of 2021, with an effective date of August 1, 2021. La. C.Cr.P. art. 926.2. provides for a free-standing claim of factual innocence not based on DNA evidence. It is the provisions of La. C.Cr.P. art. 926.2 which govern claims of factual innocence and provide, in pertinent part:

> A. A petitioner who has been convicted of an offense may seek post conviction relief on the grounds that he is factually innocent of the offense for which he was convicted. A petitioner's first claim of factual innocence pursuant to this Article that would otherwise be barred from review on the merits by the time limitation provided in Article 930.8 or the procedural objections provided in Article 930.4 shall not be barred if the claim is contained in an application for post conviction relief filed on or before December 31, 2022, and if the petitioner was convicted after a trial completed to verdict. This exception to Articles 930.4 and 930.8 shall apply only to

> the claim of factual innocence brought under this Article and shall not apply to any other claims raised by the petitioner. An application for post conviction relief filed pursuant to this Article by a petitioner who pled guilty or nolo contendere to the offense of conviction or filed by any petitioner after December 31, 2022, shall be subject to Articles 930.4 and 930.8.
>
> B. (1)(a) To assert a claim of factual innocence under this Article, a petitioner shall present new, reliable, and noncumulative evidence that would be legally admissible at trial and that was not known or discoverable at or prior to trial that is either:
>
> (i) Scientific, forensic, physical, or nontestimonial documentary evidence.
>
> (ii) Testimonial evidence that is corroborated by evidence of the type described in Item (i) of this Subsubparagraph.
>
> (b) To prove entitlement to relief under this Article, the petitioner shall present evidence that satisfies all of the criteria in Subsubparagraph (a) of this Subparagraph and that, when viewed in light of all of the relevant evidence, including the evidence that was admitted at trial and any evidence that may be introduced by the state in any response that it files or at any evidentiary hearing, proves by clear and convincing evidence that, had the new evidence been presented at trial, no rational juror would have found the petitioner guilty beyond a reasonable doubt of either the offense of conviction or of any felony offense that was a responsive verdict to the offense of conviction at the time of the conviction.
>
> (2) A recantation of prior sworn testimony may be considered if corroborated by the evidence required by Subsubparagraph (1)(a) of this Paragraph. However, a recantation of prior sworn testimony cannot form the sole basis for relief pursuant to this Article.

Factual innocence under La. C.Cr.P. art. 926.2 allows for a "grace period" from the procedural bars of La. C.Cr.P. arts. 930.4 and 930.8 when a petitioner convicted after trial completed to verdict files an application for post-conviction relief that invokes La. C.Cr.P. art. 926.2 on or before December 31, 2022. Respondent notes that the "grace period" only applies to the claim of factual innocence under La. C.Cr.P. art. 926.2 ("[t]his exception to Articles 930.4 and 930.8 shall apply only to the claim of factual innocence brought under this Article and shall not apply to any other claims raised by the petitioner.").

Factual innocence under La. C.Cr.P. art. 926.2 sets forth specific evidence that must be provided to assert such a claim. Per the Article, the petitioner must present new, reliable, and noncumulative evidence that would be legally admissible at trial and was not known or discoverable at or prior to trial. The new, reliable, and noncumulative evidence must be either scientific, forensic, physical, or nontestimonial documentary evidence or testimonial evidence that is corroborated by evidence of the type which is scientific, forensic, physical, or nontestimonial documentary evidence.

Bradley is a petitioner convicted after trial completed to verdict who "would otherwise be barred from review on the merits by the time limitation provided in Article 930.8 or the procedural objections provided in Article 930.4." *See* La. C.Cr.P. art. 926.2(A). The state district court reviewed Bradley's claim of factual innocence under La. C.Cr.P. art. 926.2 which was raised in his fifth *Uniform Application for Post-Conviction Relief* filed on December 28, 2022. (SCR, Vol.2, pp. 2087-2704). The district court issued an order on May 31, 2023, denying Bradley's request for relief on his factual innocence claim stating:

> Petitioner fails to present any evidence in support of his claims which meets the necessary criterial of the above statute. The newly enacted statute requires, "new, reliable, and noncumulative evidence that would be legally admissible at trial and that was not known of discoverable at or prior to trial." Id. The next crucial requirement includes that new evidence be either (i) "Scientific, forensic, physical or nontestimonial evidence," or (ii) "testimonial evidence that is corroborated by any new evidence that is scientific, forensic, physical, or nontestimonial documentary evidence as per La. C.Cr.P. art. 926.2(B(1)(a)(ii). As such, the affidavits presented fail to meet the criterial statutorily mandated, and petitioner fails to meet the burden set forth by La. C.Cr.P. art. 926.2(B)(1)(a)(ii).

*State v. Bradley*, 99-5825, (May 31, 2023), 24th Judicial District Court, Division "O" (SCR, Vol. 2, p. 2823-2825).

Bradley then filed an application for supervisory review of the trial court's decision with the Louisiana Fifth Circuit. The Louisiana Fifth Circuit denied the writ, concluding Bradley's factual

innocence claim fell short of the requirements set forth in La. C.Cr.P. art. 926.2. The Louisiana Fifth Circuit noted that the affidavits of Terri Lee Isaacs, Mae Rivet Smith, and Albert Russell were "testimonial evidence," and as testimonial evidence the affidavits must be corroborated by scientific, forensic, physical, or nontestimonial documentary evidence that is new, reliable, and noncumulative and was not known or discoverable at or prior to trial. La. C.Cr.P. art. 926.2(B)(1)(a)(i) and (ii).

> Relator's claims of factual innocence are based on three affidavits that he contends are corroborated by physical and medical evidence. According to Terri Lee Isaac's December 22, 2022 affidavit, in 2005, she was "introduced" to relator, who showed her letters that realtor had received from Amy Larck in which Larck expressed "remorse for lying on the stand at his trial." Isaac stated that in September of 2013, she exchanged Facebook messages with Larck, who indicated that she wanted to held relator "to be released from prison," but Isaac's correspondence ended when Larck requested monetary compensation.
>
> Next, Mae Rivet Smith's June 10, 2022 affidavit indicated that she had known relator for more than 24 years and that she was a frequent patron of the Happy Hour Saloon. Smith stated that on the night of July 30, 1999, she was standing at the door of the bar when she saw relator in the alleyway and was waving to him as shots "rang out" from a side street. According to Smith, relator did not have a gun in his hand. Smith also stated that she did not see the victim's body behind the Happy Hour Saloon until the afternoon of August 1, 1999. Smith further claimed that neither Larck nor Albert Russell were at the Happy Hour Saloon that weekend. Third, in a February 28, 2023 affidavit from co-defendant Albert Russell, he now denies being at the Happy Hour Saloon "at the time the murder happened."

In its writ denial, the Louisiana Fifth Circuit determined Bradley's affidavit evidence failed to meet the requirements of La. C.Cr.P. art. 926.2(B).

> Isaac's affidavit does not withstand scrutiny under La. C.Cr.P. art. 926.2's requirement that such evidence be corroborated by "scientific, forensic, physical, or non-testimonial documentary evidence," given relator's reliance on Larck's alleged recantation (made in Facebook messages) and Larck's handwritten letters to relator as corroborating evidence. Relator also offered no proof of authenticity as to the Facebook messages or letters that he submitted, such as an affidavit from Larck herself confirming the statements made in them. *See* La. C.Cr.P. art. 930.2. A recantation also does not qualify as corroborating evidence under La. C.Cr.P. art. 926.2(B)(1)(a), as it is testimonial. (Footnotes omitted)

Mae Rivet Smith's affidavit also falls short. Smith stated that she was homeless at the time of the incident and that she had been at the Happy Hour Saloon for almost the entire weekend, but that she frequently went to the alley. She stated that she did not see the victim in the alleyway behind the Happy Hour at the time of the shooting, but she saw relator enter the alleyway and that they waved to one another. While waving at each other, they heard shots ring out somewhere beyond the alley, possibly on a side street. Smith's affidavit states that she had known the victim, knew Amy Larck, and knew Albert Russell, and that neither Larck nor Russell was at the Happy Hour Saloon that weekend. Smith also contends that she had "always been willing to testify" but that "no one had ever asked [her] to testify."

The defense did in fact attempt to call Smith as a witness at trial, but efforts to subpoena her were unsuccessful. Additionally, relator submitted two letters from Smith as part of his ineffective assistance of counsel claim in his 2015 APCR. In the letters, Smith explained that she never received notice to appear at his trial because his attorney was not given her correct name. Smith also stated that she knew relator "didn't do it." Smith's 2022 affidavit, like the other testimonial evidence, does not satisfy the criteria of La. C.Cr.P. art. 926.2(B)(1)(a), as it provides no new evidence and was known/discoverable prior to trial. (Footnote omitted)

Even if Smith's affidavit provided "new" evidence, however, La. C.Cr.P. art. 926.2(B)(1)(a)(ii) requires that the testimonial evidence relied upon in support of a factual innocence claim must be corroborated by "scientific, forensic, physical, or nontestimonial documentary evidence" under La. C.Cr.P. art. 926.2(B)(1)(a)(I). Here, the corroborating evidence submitted by relator includes surveillance-video footage, testimony from the forensic pathologist as to the time of death, the supplemental police report, and evidence of Detective Thurman's history of suppressing exculpatory evidence, none of which constitute sufficient corroborating evidence.

The supplemental police report indicates that the surveillance video "revealed the victim's contact with a black male patron, identified as Earl Bradley, in the front area of the Happy Hour Saloon shortly after his arrival." The supplemental police report further contains a summary of relator's statement, as follows: "[A]fter viewing relevant segments of the vide surveillance tapes, Bradley conceded having known the victim and having contact with the victim on that night. Additionally, Bradley acknowledged there [sic] contact might have been construed by others as confrontation, which was substantiated." Smith's 2022 affidavit contradicts her statements to police as described in the supplemental police report, which do not mention gunshots or relator's presence at the Happy Hour Saloon. The forensic pathologist's testimony as to the time of the victim's death, which relator contends conflicts with Larck's testimony, also fails to constitute corroborative evidence for Smith's affidavit under La. C.Cr.P. art. 926.2(B)(1)(a)(ii).

> Relator's inclusion of an unrelated 2012 civil rights action that was not filed by relator, but which contains allegations of police misconduct committed by Detective Thurman, among others, also has no bearing on relator's case where relator presents no evidence of such misconduct during the instant investigation. *See* La. C.Cr.P. art. 930.2.
>
> Finally, relator has not shown how Albert Russell's affidavit, which denies any involvement in the instant offense, supports relator's claim of factual innocence, as there is no mention of realtor in the affidavit. See La. C.Cr.P. art. 930.2. In short, relator's factual innocence claim falls short of the requirements set forth in La. C.Cr.P. art. 926.2. Consequently, relator's claim, which lacks support as a claim of factual innocence, is untimely given that realtor's conviction and sentence became final in 2004. See La. C.Cr.P. art. 930.8(A) ("No application for post-conviction relief including applications which seek an out-of-time appeal, shall be considered if it is filed more than two years after the judgment of conviction and sentence has become final.") (Footnote omitted).

*State v. Bradley*, 23-377 (La. App. 5 Cir. 9/16/23) (SCR, Vol. 4, pp. 6444-6459).[29]

Federal habeas review does not extend to state court conclusions of state law. "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." *Estelle,* 502 U.S. at 67-68; *see also Molo v. Johnson*, 207 F.3d 773, 776 n.9 (5th Cir. 2000). Bradley has failed to make a showing under federal habeas review to set forth such a claim for review.

Claim Four - Evidentiary Hearing

Bradley claims he is entitled to an evidentiary hearing to address the veracity of his claims. The AEDPA's statutory scheme "is designated to strongly discourage" state prisoners from submitted new evidence in federal court. *Cullen v. Pinholster*, 563 U.S. 170, 131 S.Ct. 1388, 1401, 179 L.Ed.2d 557 (2011). In this instance, Bradley is not entitled to an evidentiary hearing.

As the United States Supreme Court recently explained:

AEDPA ... restricts the ability of a federal habeas court to develop and consider new

[29] The Louisiana Supreme Court thereafter denied writs on this issue. State v. Bradley, 23-1339 (La. 5/7/24), 384 So.3d 348 (SCR, Vol. 6, p. 7896).

> evidence. Review of factual determinations under [28 U.S.C.] § 2254(d)(2) is expressly limited to "the evidence presented in the State court proceeding." And in *Cullen v. Pinholster*, 563 U.S. 170, 131 S.Ct. 1388, 179 L.Ed.2d 557 (2011), we explained that review of legal claims under [28 U.S.C.] § 2254(d)(1) is also "limited to the record that was before the state court." *Id.*, at 181, 131 S.Ct. 1388. This ensures that the "state trial on the merits" is the "main event, so to speak, rather than a tryout on the road for what will later be the determinative federal habeas hearing." *Wainwright v. Sykes*, 433 U.S. 72, 90, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977) (internal quotation marks omitted).

If a prisoner "failed to develop the factual basis of a claim in State court proceedings," a federal court may admit new evidence, but only in two quite limited situations. [28 U.S.C.] § 2254(e)(2). Either the claim must rely on a "new" and "previously unavailable" "rule of constitutional law" made retroactively applicable by this Court, or it must rely on "a factual predicate that could not have been previously discovered through the exercise of due diligence." § 2254(e)(2)(A). And even if a prisoner can satisfy one of those two exceptions, he must also show that the desired evidence would demonstrate, "by clear and convincing evidence," that "no reasonable factfinder" would have convicted him of the charged crime. § 2254(e)(2)(B). Thus, although state prisoners may occasionally submit new evidence in federal court, "AEDPA's statutory scheme is designed to strongly discourage them from doing so." *Pinholster*, 563 U.S. at 186, 131 S.Ct. 1388; *see also* [*Williams v. Taylor*, 529 U.S. 420, 437, 120 S.Ct. 1479, 146 L.Ed.2d 435 (2000) (*Michael Williams*)] ("Federal courts sitting in habeas are not an alternative forum for trying facts and issues which a prisoner made insufficient effort to pursue in state proceedings.").

A federal court, in deciding whether to grant an evidentiary hearing or "otherwise consider new evidence" under § 2254(e)(2), must first take into account these restrictions. *Shinn v. Martinez Ramirez*, 596 U. S. 366, 389-390, 142 S.Ct. 1718, 1739, 212 L.Ed.2d 713 (2022); *see also [Schriro v. Landrigan*, 550 U.S. 465, 474, 127 S.Ct. 1933, 167 L.Ed.2d 836 (2007)]. The reasons for this are

familiar. A federal court "may never needlessly prolong a habeas case, particularly given the essential need to promote the finality of state convictions," so a court must, before facilitating the development of new evidence, determine that it could be legally considered in the prisoner's case. *Shinn*, 596 U. S. at 390, 142 S.Ct. at 1739 (internal quotation marks and citation omitted); *see also Bracy v. Gramley*, 520 U.S. 899, 904, 117 S.Ct. 1793, 138 L.Ed.2d 97 (1997) ("A habeas petitioner, unlike the usual civil litigant in federal court, is not entitled to discovery as a matter of ordinary course.").

If § 2254(e)(2) applies and the prisoner cannot satisfy its "stringent requirements," *Michael Williams*, 529 U.S. at 433, 120 S.Ct. 1479, holding an evidentiary hearing or otherwise expanding the state-court record would "prolong federal habeas proceedings with no purpose," *Shinn*, 596 U. S. at 390, 142 S.Ct. at 1739 (internal quotation marks omitted). And that would in turn disturb the "State's significant interest in repose for concluded litigation." [*Harrington v. Richter*, 562 U.S. 86, 103, 131 S.Ct. 770, 178 L.Ed.2d 624 (2011).] A court therefore must, consistent with AEDPA, determine at the outset whether the new evidence sought could be lawfully considered. *Shoop v. Twyford*, 596 U.S. 811, 142 S. Ct. 2037, 2043-44, 213 L.Ed.2d 318 (2022).

Therefore, this Court must review petitioner's *Brady* and *Napue* claims, ineffective assistance of counsel, and actual innocence using the standards set forth in § 2254(d)(1), which, as already noted *supra*, is limited to the record that was before the state courts. As the United States Supreme Court has explained:

> [R]eview under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits. Section 2254(d)(1) refers, in the past tense, to a state-court adjudication that "resulted in" a decision that was contrary to, or "involved" an unreasonable application of, established law. This backward-looking language requires an examination of the state-court decision at the time it was made. It follows that the record under review is limited to the record in existence at that

> same time i.e., the record before the state court.
>
> ... The federal habeas scheme leaves primary responsibility with the state courts. Section 2254(b) requires that prisoners must ordinarily exhaust state remedies before filing for federal habeas relief. It would be contrary to that purpose to allow a petitioner to overcome an adverse state-court decision with new evidence introduced in a federal habeas court and reviewed by that court in the first instance effectively de novo.
>
> ... Our cases emphasize that review under § 2254(d)(1) focuses on what a state court knew and did. State-court decisions are measured against this Court's precedents as of the time the state court renders its decision. To determine whether a particular decision is "contrary to" then-established law, a federal court must consider whether the decision applies a rule that contradicts such law and how the decision confronts the set of facts that were before the state court. If the state-court decision identifies the correct governing legal principle in existence at the time, a federal court must assess whether the decision unreasonably applies that principle to the facts of the prisoner's case. It would be strange to ask federal courts to analyze whether a state court's adjudication resulted in a decision that unreasonably applied federal law to facts not before the state court.

*Cullen v. Pinholster*, 563 U.S. 170, 181-83, 131 S.Ct. 1388, 179 L.Ed.2d 557 (2011) (footnote, citations, quotation marks, ellipsis, and brackets omitted); *accord Blue v. Thaler*, 665 F.3d 647, 656 (5th Cir. 2011) ("*Pinholster* prohibits a federal court from using evidence that is introduced for the first time at a federal-court evidentiary hearing as the basis for concluding that a state court's adjudication is not entitled to deference under § 2254(d).").

Bradley does not even argue, much less establish, that he can overcome the restrictions of 28 U.S.C. § 2254(e)(2), and so he has not established the requirements for the Court to hold an evidentiary hearing. Bradley fails to show a necessity for a federal articulate what evidence he seeks to introduce at a federal evidentiary hearing. However, to the extent Bradley is attempting to introduce new evidence that was not presented to the state courts, the reasoning of *Cullen v. Pinholster* should preclude an evidentiary hearing as this Court is limited to the record as it was developed before the state courts.

Alternatively and in the event Bradley is alleging he was entitled to a state court evidentiary hearing regarding his claims of *Brady* and *Napue* violations, ineffective assistance of counsel, and actual innocence, respondent maintains that an evidentiary hearing was not warranted in the state court. The law regarding evidentiary hearings is clear; and, an evidentiary hearing is not required for the district court to resolve the factual and legal issues in an Application for Post-Conviction Relief . An evidentiary hearing for the taking of testimony or other evidence shall *only* be ordered when there are questions of fact which cannot properly be resolved pursuant to La. C.Cr.P. arts. 928 and 929. *See,* La. C.Cr.P. art. 930(A). A hearing should only be held if the district court cannot dismiss the petition upon the pleadings or in a summary disposition. The Louisiana Code of Criminal Procedure clearly and explicitly states that if the court determines that the factual and legal issues can be resolved based upon the application, answer, and the record, the court may render a decision without an evidentiary hearing. La. C.Cr.P. art. 929. The legislative intent of La. C.Cr.P. arts. 928-930, clearly was to allow post-convictions to be dismissed in a summary fashion without evidentiary hearings. Indeed, the Official Comment to La. C.Cr.P. art. 929 recognizes that evidentiary hearings are not necessary in most cases:

> There is no reason to require a full evidentiary hearing in all cases. In some cases, the record will clearly refute or sustain the petitioner's allegations. If so, relief may be granted or denied. In other cases, although some expansion of the record may be necessary, the case may nevertheless be decided without a full evidentiary hearing......

OFFICIAL REVISION COMMENT--1980, La. C.Cr.P. art. 929.

In this instance, the issues raised by Bradley were clearly legal issues presented to the state district court. There were no factual disputes raised in his application; and, the claims were resolvable by a review of the state court record. Any evidence which the petitioner wished to

procure from an evidentiary hearing would have been irrelevant to the disposition of the claims. Therefore, the petitioner was not entitled to an evidentiary hearing; and the state district court properly determined that a hearing was unnecessary.

Finally, respondent contends that the question of whether the petitioner was entitled to an evidentiary hearing on state post-conviction relief is purely a matter of state law. This Court may intervene only to correct wrongs of federal constitutional dimension. *Lavernia v. Lynaugh*, 845 F.2d 493, 496 (5th Cir. 1988). This claim is not cognizable on federal habeas review.

**RESERVATION OF RIGHTS**

Respondent asserts that the petition of Bradley should be dismissed based upon the procedural objections previously set forth. Respondent further asserts that Bradley's petition should be dismissed due to the failure to state a claim on the merits. However, respondent does not expressly waive any procedural objections or defenses and would respectfully reserve the right to submit additional documentation, procedural objections, defenses, and/or argument on the merits should this Court order additional briefing. Additionally, respondent would respectfully request the Court to raise *sua sponte* any and all applicable limitations defenses, lack of exhaustion as to claims/arguments, and/or procedural defaults. *See Day v. McDonough*, 547 U.S. 198, 209, 126 S.Ct. 1675, 1684, 164 L.Ed.2d 376 (2006) (holding that a district court is permitted to consider *sua sponte* the issue of the timeliness of a state prisoner's habeas petition); *see also Tigner v. Cockrell*, 264 F.3d 521, 526 (5th Cir. 2001) (finding that a reviewing court "may raise a petitioner's failure to exhaust *sua sponte*"); *Magouirk v. Phillips*, 144 F.3d 348, 360 (5th Cir. 1998) (concluding that a "federal district court may, in the exercise of its judicial discretion, raise procedural default *sua sponte*").

**CONCLUSION**

Respondent respectfully submits that the petition is procedurally barred from review as it is untimely pursuant to the AEDPA's statute of limitations. The application should, therefore, be dismissed.

Respectfully Submitted,

/s/ Monique D. Nolan

MONIQUE D. NOLAN
BAR ROLL NO. 27431
ASSISTANT DISTRICT ATTORNEY
DISTRICT ATTORNEY'S OFFICE
PARISH OF JEFFERSON
200 DERBIGNY STREET
GRETNA, LOUISIANA 70053
(504) 368-1020
mnolan@jpda.us

**CERTIFICATE OF SERVICE**

I do hereby certify that on March 12, 2025, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to counsel for Petitioner: Mr. P. Walker Lasiter and, Mr. Justin C. Bonus.

/s/ Monique D. Nolan
MONIQUE D. NOLAN
BAR ROLL NO. 27431
ASSISTANT DISTRICT ATTORNEY
DISTRICT ATTORNEY'S OFFICE
PARISH OF JEFFERSON
200 DERBIGNY STREET
GRETNA, LOUISIANA 70053
(504) 368-1020
mnolan@jpda.us