UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

-----------------------------------------------------------

EARL BRADLEY,

Petitioner,

-against-

TIM HOOPER, WARDEN,
LOUISIANA STATE PENITENTIARY,

Respondent.

-----------------------------------------------------------

PETITION
Docket # 2:24-cv-02678-DJP-MBN

**<u>REPLY TO THE RESPONDENTS' OPPOSITION</u>**

**MAY IT PLEASE THE COURT:**

**NOW INTO COURT**, comes Petitioner, Earl Bradley, through undersigned counsel, who respectfully submits this reply memorandum to the Respondents' opposition in support of his Petition for Writ of Habeas Corpus, and requests that the law and arguments contained herein be considered in this matter. The Respondents' opposition is a throw "paint at the wall" attempt to refute Mr. Bradley's pointed arguments about his case. In fact, most of the arguments by the State don't address the substance of Earl Bradley's position: that Amy Larck was the only piece of evidence that convicted him and there was substantial evidence that the jury never heard, either by the State failing to turn it over or because of counsel's ineffectiveness, proving that she was nothing more than a career criminal and a liar, demonstrably testifying falsely about material facts in the case at bar. This Court should grant habeas relief or schedule a hearing to address the veracity of Bradley's arguments because the state court unreasonably applied Supreme Court precedent, specifically with regard to *Brady*[1] and *Napue*[2] violations.

The State must concede that Amy Larck was the sole witness for the State that testified that

---

[1] *Brady v. Maryland*, 373 U.S. 83 (1963)
[2] *Napue v. Illinois*, 360 U.S. 264 (1959)

Earl Bradley was the perpetrator in the case at bar. The State must concede that Mr. Bradley did not receive the criminal history of Amy Larck from North Carolina and Florida until December of 2022, right before he filed his motion to vacate. There is no question that Mr. Bradley was entitled to this material under *Brady* and its progeny. In fact, the Louisiana 5th Circuit Court of Appeal overruled the procedural bar by the District Court in Louisiana and ruled on the merits, finding that, while there was a discovery violation, that violation did not rise to the level of *Brady* because it was cumulative. *See* SCR 5, pp. 428-442.[3] This court should find the same, as a habeas petition is timely if it is filed within one year of "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence." 28 USCS § 2244(d)(1)(D). Because the factual predicate was found in December of 2022 and Mr. Bradley has been litigating his state court claims until May of 2024, his November 2024 habeas petition was timely filed. 28 U.S. Code § 2244(d)(1)(D) & (d)(2).

Furthermore, the State must concede that Mr. Bradley was not advised that Amy Larck was on probation and had absconded from probation in the State of Florida. Significantly, the 5th Circuit of Louisiana did not address Mr. Bradley's arguments with regard to that aspect of Larck's criminal history and the ramifications of her absconding from probation and violating that probation due to her several arrests in Louisiana. The State must concede that Larck and the State omitted her Florida probation status from Larck's trial testimony. The State must concede that the prosecutor allowed Amy Larck to testify falsely when she stated that her first conviction was on stemmed from her arrest on July 6, 1999, in Louisiana. *See* Respondents' brief page 42-43, SCR, Vol. 1, pp. 528. The State, by the time of trial, at which point Larck would have been incarcerated for almost 3 years, would most certainly had access to Larck's out-of-state criminal history, especially as it related to her

[3] It seems as though the one thing that the State and I can agree on is that this Court should review the Louisiana 5th Circuit Court of Appeals' decision as the controlling state court decision in the case at bar (even though the State hedges on this).

status as an absconder of her Florida probation.

The State was essentially able to paint a picture that Larck came upon hard times only after she arrived in Louisiana. Larck's testimony was that she was a telemarketer in Illinois who was abused by her stepfather and wanted a change from her environment. *See* SCR 1, pp. 482-485. The fact is the LEXIS background check that the undersigned was able to conduct depicts almost no connection to Illinois other than Larck receiving a social security number from the state in 1978. *See* SCR 4, pp. 524-609. However, the criminal history of Larck shows that she had several convictions for felony child abuse and prostitution in the states of North Carolina and Florida beginning in 1996 when she was 20, until right up before she came to Louisiana in July of 1999. *Id.*

Bradley's case has stark comparisons to Richard Glossip's case, which was recently reversed by the United States Supreme Court based upon a *Napue* violation with regard to a collateral matter (the lone witness's psychiatric medication history) that was not new, but the Supreme Court deemed material. *Glossip v. Oklahoma*, 221 L. Ed. 2d 90, 96, 107-108 (2025) (In Glossip's case, the State of Oklahoma had Reed Smith investigate Mr. Glossip's conviction. "Reed Smith reported "grave doubt" about Glossip's conviction, citing factors such as the prosecution's deliberate destruction of key evidence and the false portrayal of Justin Sneed [, the lone witness against Glossip,] as a non-violent "puppet."" Ultimately the Supreme Court reversed Glossip's conviction finding that there was a *Napue* violation when the state allowed its main witness to testify falsely about taking psychotropic drugs). Like in *Glossip*, defense counsel could have used this extensive criminal history to investigate and cross-examine further, providing deeper impeachment of Larck, not just with regard to her criminal history, but substantive facts regarding her life. *Johnson v. Folino*, 705 F.3d 117, 130 (3d Cir. 2013) ("[T]he inquiry is whether the undisclosed evidence is admissible itself *or* could have led to the discovery of admissible evidence that could have made a difference in the outcome of the trial sufficient to establish a "reasonable probability" of a different result."); *see also Felder v.*

*Johnson*, 180 F.3d 206 (5th Cir. 1999). In any event, the criminal history only recently discovered by Bradley refuted much of Larck's testimony regarding who she was and when she began to live a criminal lifestyle. Had defense counsel had this material, he would have been able to further impugn the credibility of Larck in a number of ways that a reasonable decision maker should find material. *Glossip v. Oklahoma*, 221 L. Ed. 2d at 108; *Wearry* v. *Cain*, 577 U. S. 385, 393-394 (2016) (*per curiam*) (rejecting argument that evidence was immaterial because witness's credibility was "already impugned"); cf. *Strickland* v. *Washington*, 466 U. S. 668, 695 (1984). As such, this Court should vacate Mr. Bradley's conviction based upon the state court's unreasonable application of Supreme Court precedent regarding *Brady* and *Napue* and their progeny with respect to the failure to turn over Larck's North Caroline and Florida criminal history and the false testimony of Larck.

Additionally, this Court should find, because of the old and new evidence submitted in this petition, that Mr. Bradley meets the gateway standard of innocence allowing this Court to reach the merits of Bradley's claim that his trial attorney was ineffective for failing to call Mae Rivet Smith and use the video, the sheriff's supplemental report and the medical examiner's testimony to completely destroy the trial testimony of Amy Larck. *Floyd v. Vannoy*, 894 F.3d 143 (5th Cir. 2018). Likewise, because Mr. Bradley has met the gateway standard of innocence, this Court should find that the video, the sheriff's supplemental report and the medical examiner's testimony effectively prove that Larck testified falsely that Bradley went into the back alley and killed Barton Sanford. The affidavits of Albert Russell and Terri-lee Isaacs[4] are newly discovered evidence and support Mr. Bradley's claims of innocence and the fact that Larck lied on the stand.

As the State must concede, the Louisiana 5th Circuit Court of Appeal held that, while Larck provided many inconsistent statements, those statements were with regard to activities before and after the murder, but her statements with regard to the location of the murder and who committed

[4] Issacs' affidavit provides ample rebuttal evidence to Larck's testimony. *United States v. Brock*, 833 F.2d 519, 522 (5th Cir. 1987)

the murder remained consistent. *See State v. Bradley*, 858 So.2d 80, 86 (La. App. 5 Cir. 09/16/03). The fact is that Amy Larck testified that she followed the victim into the back alley. She testified that Bradley and Russell came soon afterward, leading to Bradley shooting Sanford in the back alley.

The truth is, the video does not depict anyone walking Barton Sanford into the back alley, let alone Larck. *See* Exhibit B of APCR (file labeled VTS_01_0), approximately 1:25AM. The video never depicts anyone matching the description of Bradley walking into that alley at all until Sanford was found. *See Id.* In fact, the sheriff's investigation confirmed that the only person to enter that alleyway, other than Mr. Sanford, between 1:25AM and when Sanford was found at approximately 4PM on August 1, 1999, was Mae Rivet Smith. *See* SCR 4, pp. 71.

Investigators placed the time of the murder around 1:25-1:30AM. This appears to be based upon the surveillance video, which shows Sanford going into the alley alone, and, inexplicably, Amy Larck's statement and eventual testimony.[5] *See* SCR 4, pp. 64; *see also* 6/12/1999 TT: 84, 88-100, 129-133. It is undisputed by all parties that Barton Sanford was found in the alley behind the Happy Hour Bar with one gunshot wound to the chest. Larck was the only alleged "eyewitness". It is now undisputed that the video discredits Larck entirely about how the shooting happened and who was with Sanford when he walked into the alley. Further discrediting Larck, the medical examiner in this case, Dr. Susan Garcia, testified that Sanford was dead 24-36 hours from when Mr. Sanford was brought to the medical examiner's office at approximately 6:30PM on August 1, 1999. *See* SCR 4, pp. 90-103. Twenty-four hours would have placed Sanford's death at 6:30PM on July 31, 1999. As was stated in Mr. Bradley's opening brief, he had been incarcerated for almost 12 hours at that point. If Sanford died thirty-six hours prior to his movement to the medical examiner's office, his time of death was at 6:30AM on July 31, 1999. No evidence at trial indicated that Earl Bradley was at the

[5] However, as seen below, the investigator's estimation of the time of death is disputed by the medical examiner who testified.

Happy Hour Bar at 6:30AM, let alone entering the alley at that time.[6]

The truth of the matter is that the prosecutor (and the investigators) knew that Larck's version of the events was blatantly false. Yet the State allowed her to falsely maintain her statement in the face of both surveillance footage[7] that cannot be refuted and medical evidence that completely eviscerates her version of the events surrounding the death of Sanford. Plainly put, Larck's testimony is demonstrably false and the State knew it, which is a violation of *Napue*. The affidavits of Smith, Russell and Isaacs further support Bradley's position here.

The State's opposition fails to take into account[8] that Larck accounted for almost all of the evidence against Bradley and that the entirety of her testimony is refuted by the evidence submitted in this petition.[9] Like in the *Glossip* case, because Larck's "testimony was the only direct evidence of [Bradley's] guilt", the jury's "assessment of [Larck]'s credibility was material and necessarily determinative. Correcting [Larck]'s lie would have undermined [her] credibility and revealed [her] willingness to lie under oath." *Glossip v. Oklahoma*, 221 L. Ed. 2d at 96. The false testimony also bore on Bradley's guilt because the fact that Larck faced a probation violation in the state of Florida was an additional motivating factor for her cooperation in the case at bar. Additionally, the surveillance video, sheriff's report, and medical evidence further provided significant damaging material that, while counsel failed to use, proves that Larck's testimony was false. Just throw the affidavits of Smith, Russell, and Isaacs on the pile and there is overwhelming evidence of Bradley's innocence and that Larck testified falsely.

---

[6] The surveillance video also proves that Bradley never entered the alley at that timeframe (or any time for that matter).

[7] Unless the State has some belief that Bradley has some sort of ability to render himself invisible.

[8] The State steers clear of the misrepresentations of Larck and seems to say that her continual lies throughout trial should just be treated cumulatively and that the jury heard the overwhelming impeachment material that was lobbed at Larck. This is a self-defeating position. "If the evidence impeaching [Larck]'s credibility was already overwhelming, then no reasonable jury could have convicted [Bradley] in the first place, given that the prosecution's case rested centrally on [Larck]'s credibility." *Glossip v. Oklahoma*, 221 L. Ed. 2d at 108

[9] While Bradley made a statement that he later retracted when confronted by the same video that refuted Amy Larck, Bradley never confessed to killing Barton Sanford. He has always maintained his innocence.

Hence, with the evidence in this petition, "there is a reasonable likelihood that correcting [Larck]'s testimony would have affected the judgment of the jury. *Id.* (*citing Napue*, 360 U. S. at 271. Therefore, "the state court's application of clearly established [*Brady*] law was objectively unreasonable". *Floyd v. Vannoy*, 894 F.3d at 167 (*citing Williams v. Taylor*, 529 U.S. 362, 409 (2000)).

## CONCLUSION

**WHEREFORE**, in light of the foregoing, this Court should either order a new trial or remand this matter for a hearing or grant such other and further relief to petitioner as it may deem just and proper.

**Dated: April 2, 2025**
**Forest Hills, NY**

RESPECTFULLY YOURS,

Justin Bonus

**JUSTIN C. BONUS, ESQ.**
**(Pro Hac Vice)**
118-35 Queens Blvd, Suite 400
Forest Hills, NY 11375
(347)920-0160
justin.bonus@gmail.com

MANARD LAW OFFICES

P. Walker Lasiter, Bar Roll # 38102
4412 Trenton Street
Metairie, LA 70006

Attorneys for Petitioner,
Earl Bradley