**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **EARL BRADLEY** | **CIVIL ACTION** |
| **VERSUS** | **NO. 24-2678** |
| **TIM HOOPER, WARDEN** | **SECTION "P"(5)** |

**REPORT AND RECOMMENDATION**

This matter was referred to the undersigned United States Magistrate Judge to conduct a hearing, including an evidentiary hearing, if necessary, and to submit proposed findings and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and (C), and as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases in the United States District Courts. Upon review of the entire record, the Court has determined that this matter can be disposed of without an evidentiary hearing. For the following reasons, **IT IS RECOMMENDED** that the petition for habeas corpus relief be **DISMISSED WITH PREJUDICE**.

**Procedural History**

Petitioner, Earl Bradley, is a convicted inmate housed at the Louisiana State Penitentiary in Angola, Louisiana. In October 1999, he was charged by grand jury indictment with second-degree murder.[1] His first trial ended in a hung jury and a mistrial

[1] ECF No. 21-1 at 37, Grand Jury Indictment, 24th JDC for the Parish of Jefferson. Bradley was indicted along with a co-defendant, Albert T. Russell. *See also* ECF No. 21-1 at 5, Minute Entry, 10/28/1999. The defendants were severed for trial. ECF No. 21-1 at 18, Minute Entry, 8/20/2001. On August 26, 2002, Russell entered an *Alford* plea to an amended charge of accessory after the fact to second-degree murder. ECF No. 21-3 at 1185. He was sentenced to time served and released. ECF No. 21-3 at 1188, Minute Entry,

was declared on August 23, 2001.[2] He was subsequently retried and found guilty as charged on June 13, 2002.[3] He filed no post-trial motions. On July 18, 2002, he was sentenced to life imprisonment at hard labor without the benefit of parole, probation, or suspension of sentence.[4]

On direct appeal, Bradley raised two counseled assignments of error. He argued that there was insufficient evidence to support the verdict because (1) the entire case was based on a single unbelievable eyewitness, Amy Larck, a confessed pathological liar, who lied at trial to get a reduced sentence, and (2) that his own statements should have been suppressed because they were not legally obtained. On September 16, 2003, the Louisiana Fifth Circuit Court of Appeal affirmed his conviction and sentence.[5] On February 13, 2004, the Louisiana Supreme Court denied his counseled application for a writ of certiorari.[6]

On or about January 10, 2005, Bradley submitted an application for post-conviction relief to the state district court and raised two grounds for relief. First, he requested DNA

---

8/26/2002.

[2] ECF No. 21-1 at 18-24, Minute Entries, 8/20/2001 through 8/23/2001.

[3] ECF No. 21-1 at 32-36, Minute Entries, 6/11/2002 through 6/13/2002. He was represented at both trials by IDB Attorney Paul C. Fleming, Jr.

[4] ECF No. 21-1 at 194, Sentencing Minute Entry, 7/18/2002.

[5] *State v. Bradley*, 2003-KA-384 (La. App. 5 Cir. 9/16/03), 858 So.2d 80 (ECF No. 21-2 at 1814).

[6] *State v. Bradley*, 2003-K-2745 (La. 2004), 867 So.2d 688 (ECF No. 21-1 at 914). *See also* ECF No. 21-4 at 828, La. S.Ct. writ application.

testing of the swabs from the victim's hands and four drops of blood from the crime scene. Second, he argued that counsel rendered ineffective assistance because he failed to (a) file a motion to quash the indictment; (b) file a bill of particulars; (c) produce evidence of Amy Larck's deal with the State; (d) review the surveillance video or object to the State introducing it at trial; (e) call alibi witnesses; (f) object to hearsay; (g) investigate Amy Larck's mental capacity; and (h) advise of the rights he was waiving by not testifying.[7] On February 1, 2005, the state district court denied post-conviction relief on the merits.[8] Bradley did not file any supervisory writ applications challenging this ruling.

On or about May 8, 2008, Bradley submitted a second application for post-conviction

---

[7] ECF No. 21-1 at 907, Uniform Application for Post-Conviction Relief and Memorandum in Support. Federal habeas courts apply Louisiana's "mailbox rule" when determining the filing date of a Louisiana state court filing by a *pro se* prisoner, and therefore such a document is considered "filed" on the date the prisoner "places the filing in the prison mail system." *Causey v. Cain*, 450 F.3d 601, 607 (5th Cir. 2006). When that date cannot be gleaned from the state court record, the Court will use the signature date of the application as the filing date, in that the application was obviously placed in the mail no earlier than the date it was signed. *See Estes v. Boutté*, Civ. Action No. 19-2289, 2020 WL 1990823, at *2 (E.D. La. Mar. 6, 2020), *adopted*, 2020 WL 1984331 (E.D. La. Apr. 27, 2020) (citing *United States v. Minor*, 582 F. App'x 315, 316 (5th Cir. 2014); *Crochet v. Goodwin*, Civ. Action No. 13-3106, 2014 WL 5093995, at *2 n. 10 (E.D. La. Oct. 8, 2014); *Thornton v. Terrell*, Civ. Action No. 09-1632, 2009 WL 4855743, at *1 n. 1 (E.D. La. Dec. 4, 2009)). Here, counsel for petitioner uses January 20, 2005, the file-stamped date (ECF No. 1 at 2, Petition). The State notes that the affidavit submitted with the PCR application is dated January 6, 2005, but uses January 10, 2005, the date he signed the memorandum in support of PCR (ECF No. 21-1 at 913, 918, 937). Of note, on his application, Bradley used the incorrect year, which is not uncommon in January of a new year. However, the year 2004 is obviously incorrect, as it would predate the Louisiana Supreme Court ruling on direct appeal and matches none of the other dates on the application or memorandum in support. Because the PCR application and memorandum in support were submitted together (*see* ECF No. 21-1 at 911), the undersigned will use the date the memorandum was signed by petitioner.

[8] ECF No. 21-1 at 902, District Court PCR Order, 2/1/2005.

relief to the state district court essentially reasserting his earlier request for DNA testing and including a similar argument regarding ineffective assistance of counsel.[9] On May 20, 2008, the state district court denied the post-conviction application for DNA testing solely on procedural grounds under Louisiana Code of Criminal Procedure article 926 subsections (D) and (E) because Bradley had failed to use the form application and his inexcusable failure to comply with the statutory provisions of article 926 served as grounds for dismissal.[10] Bradley did not file any supervisory writ applications challenging this ruling.

On or about June 27, 2008, Bradley submitted a third application for post-conviction relief to the state district court. In that application, he asserted that (1) he was denied his right to be informed of the nature and cause of the accusation against him by the indictment; (2) the trial court exceeded its jurisdiction by allowing the insufficient accusation; and (3) he was subjected to double jeopardy.[11] On July 11, 2008, the state district court denied relief solely on procedural grounds as untimely under Louisiana Code of Criminal Procedure article 930.8, and repetitive and successive under Louisiana Code of Criminal Procedure article 930.4.[12] He did not challenge this ruling in the courts of appeal.

Meanwhile, on June 29, 2008, Bradley filed an application for supervisory and/or

---

[9] Application for Post-Conviction Relief [#2] (ECF 21-1 at 972-1006), stamped as filed on May 14, 2008, but signed and dated May 8, 2008 (ECF No. 21-1 at 983).

[10] ECF No. 21-1 at 1008, State District Court Order denying PCR [#2], 5/20/2008.

[11] ECF No. 21-1 at 1012, Uniform Application for Post-Conviction Relief [#3] with an affidavit dated June 27, 2008 (p. 1017) and file stamp of July 2, 2008.

[12] ECF No. 21-1 at 1034, State District Court Order denying PCR [#3], 7/11/2008.

remedial writs with the Louisiana Supreme Court seeking review under *State v. Cordero*, asserting that the Louisiana Fifth Circuit Court of Appeal did not provide adequate review of his writ applications.[13] On January 30, 2009, the Louisiana Supreme Court denied relief finding that Petitioner failed to show that he filed an application for post-conviction relief that was denied in an order that did not conform to the requirements of La. Const. art. V section 8(b).[14] La. C.Cr.P. art. 930.2; *State v. Cordero*, 08-1717 (La. 10/3/08), 993 So.2d 203.

On or about September 29, 2010, Bradley filed a motion for an evidentiary hearing to present new evidence (*i.e.*, a letter to him from Amy Larck).[15] On October 13, 2010, the state district court denied the motion because he provided no substantial proof or documentation to support his claim that she only testified against him because of intimidation, threats and misconduct.[16]

On or about April 10, 2017, Bradley filed a Motion to Preserve all Evidence and

---

[13] ECF No. 21-5 at 2, La. S.Ct. letter acknowledging receipt of Writ No. 2008-KH-1951 (received and filed on August 11, 2008, and metered on July 28, 2008). Under the mailbox rule, the earliest date he could have delivered his petition to prison officials was the day it was signed, June 29, 2008. ECF No. 21-5 at 5. In *State v. Cordero*, 08-1717 (La. 2008), 993 So.2d 203, the Louisiana Supreme Court addressed accusations that, between 1994 and 2007, the Louisiana Fifth Circuit issued summary dismissals without judicial review of *pro se* post-conviction writ applications.

[14] *State v. Earl Bradley*, 2008-KH-1951 (La. 2009), 999 So.2d 750; ECF No. 21-5 at 77.

[15] ECF No. 21-1 at 1045, Motion for an Evidentiary Hearing. The motion is undated but stamped as filed by the court on September 29, 2010.

[16] ECF No. 21-1 at 1047, State District Court Order denying Motion for Evidentiary Hearing, 10/13/2010.

Records.[17] On April 19, 2017, the state district court denied the motion, noting his last three post-conviction applications had all been denied and stating that the "petitioner has nothing pending in this court at this time and his case has long been final."[18] He filed a notice of intent to seek supervisory writs from the ruling denying his motion to preserve evidence. He then filed an application for supervisory writ of review with the appellate court.[19] On June 2, 2017, the Louisiana Fifth Circuit Court of Appeal denied his writ application.[20] On June 14, 2017, he filed an application for supervisory writ of review with the Louisiana Supreme Court.[21] On October 15, 2018, the Louisiana Supreme Court denied his application for supervisory writs.[22]

On April 12, 2021, Bradley filed a fourth uniform application for post-conviction relief through counsel of record challenging his unconstitutional conviction based on a non-unanimous jury verdict and requested a stay of proceedings.[23] On May 18, 2021, the state

---

[17] ECF No. 21-1 at 1053, "Motion to Preserve All Evidence and Records and Formal Legal Notice to Preserve all Records and Evidence." The motion is dated April 10, 2017, and file-stamped by the court on April 17, 2017.

[18] ECF No. 21-1 at 1061, State District Court Order denying Motion to Preserve all Evidence and Records, 4/19/2017.

[19] ECF No. 21-5 at 100.

[20] ECF No. 21-1 at 1077, *State v. Bradley*, 17-KH-263 (La. App. 5 Cir. June 2, 2017).

[21] ECF No. 21-5 at 78. The application is stamped as scanned and emailed by LSP and received by the Louisiana Supreme Court on June 14, 2017.

[22] *State ex rel. Earl Bradley v. State*, 2017-KH-1187 (La. 2018), 253 So.3d 1305, ECF No. 21-1 at 1079.

[23] ECF No. 21-1 at 1101, Second or Subsequent Uniform Application for Post-

district court denied the motion to stay and found his application untimely under Louisiana Code of Criminal Procedure article 930.8.[24] He filed a notice of intent to seek supervisory writs from the court of appeal, and was given until July 30, 2021, to file his writ application.[25] On July 28, 2021, he filed a counseled supervisory writ application with the Louisiana Fifth Circuit.[26] On August 9, 2021, the court of appeal denied his application for supervisory writs.[27] The court of appeal found no error in the district court denying relief because *Ramos* did not apply retroactively on collateral review and he failed to allege a valid claim under La. C.Cr.P. art. 930.3 or 930.4. On September 23, 2021, Bradley filed a related counseled writ application with the Louisiana Supreme Court.[28] On April 18, 2023, the Louisiana Supreme Court denied relief.[29]

On December 28, 2022, Bradley filed a fifth application for post-conviction relief

---

Conviction Relief filed on Bradley's behalf by Jamila Johnson, Hardell Ward, Claude-Michael Comeau (Promise of Justice Initiative). Because the application was filed by counsel on his behalf, the mailbox rule does not apply.

[24] ECF No. 21-1 at 1481, State District Court Order, 5/18/2021.

[25] ECF No. 21-1 at 1493, Notice of Intent. *See also*, ECF No. 1498, State District Court Order, 6/10/2021.

[26] ECF No. 21-3 at 1341, 5th Cir. Writ App. No. 21-KH-534.

[27] ECF No. 21-2 at 265, *State ex rel. Bradley v. Vannoy*, 21-KH-534 (La. App. 5 Cir. Aug. 9, 2021).

[28] ECF No. 21-2 at 268, La. S.Ct. Writ Application No. 21-KP-1409.

[29] *State ex rel. Bradley v. Vannoy*, 2021-KP-01409 (La. 2023), 359 So.3d 509; ECF No. 21-2 at 1282.

through counsel of record in the state district court.[30] In that application, he raised the following claims for relief: (1) he is actually innocent and newly discovered evidence undermines the verdict; (2) the prosecutor presented perjured testimony; (3) the State withheld material exculpatory evidence; and (4) he was denied the effective assistance of counsel. Citing Louisiana Code of Criminal Procedure article 926.2 (actual innocence), he argued that the application was permissible, even though filed well beyond the state limitations period and after numerous other petitions for relief had already been denied by the state courts. He also asked the court to stay the proceedings so that he could conduct additional investigation and supplement the claims. A stay was denied, but the court granted him extra time to supplement the petition.[31] The State filed its procedural objections alleging that the application for post-conviction relief was untimely and successive.[32] The State subsequently supplemented its objection to attach omitted referenced exhibits.[33] Bradley filed a supplemental memorandum in support of post-conviction relief with an affidavit from co-defendant, Albert Russell, and he filed an opposition to the State's procedural objections.[34] The State filed a response reiterating that

---

[30] ECF No. 21-2 at 588, Application for Post-Conviction Relief (filed on Bradley's behalf by Manard Law Offices, P. Walker Lassiter, and Justin C. Bonus).

[31] ECF No. 21-2 at 1209, State District Court Order, 2/1/2023. See also ECF No. 21-2 at 1228, "Re-issued Order" (fixing typographical errors), 3/7/2023.

[32] ECF No. 21-2 at 1217.

[33] ECF No. 21-2 at 1241.

[34] ECF No. 21-2 at 1269, 1274.

the petition was untimely and successive because the evidence did not satisfy the evidentiary burden under La. C.Cr.P. art. 926.2.[35] Bradley filed a reply memorandum.[36]

On May 31, 2023, the state district court issued an order with reasons denying his application for post-conviction relief on procedural grounds. The district court found that Bradley had failed to present evidence satisfying the criteria set forth in La. C.Cr.P. art. 926.2; his claims alleging ineffective assistance, *Brady* violation and *Napue* violation were untimely under La. C.Cr.P. art. 930.8; and the *Brady* and *Napue* claims were additionally procedurally barred as successive under La. C.Cr.P. arts. 930.4(D) and/or (E).[37] On June 14, 2023, he filed a motion to reconsider the order denying post-conviction relief. That motion was denied on June 21, 2023.[38] Bradley filed a notice of intent to apply for supervisory writ of review and was given until July 20, 2023, to file his application with the appellate court.[39] The district court subsequently allowed him an extension of the return date until August 10, 2023.[40] On August 3, 2023, he filed his counseled supervisory writ application with the court of appeal.[41] On September 6, 2023, the Louisiana Fifth Circuit Court of Appeal denied

---

[35] ECF No. 21-2 at 1301.

[36] ECF No. 21-2 at 1307.

[37] ECF No. 21-2 at 1324, State District Court Order denying PCR, 5/31/2023.

[38] ECF No. 21-2 at 1341, Motion to Reconsider and ECF No. 21-2 at 1388, Order denying Motion to Reconsider.

[39] ECF No. 21-2 at 1381.

[40] ECF No. 21-2 at 1404.

[41] ECF No. 21-4 at 1.

his related supervisory writ application.[42] The court of appeal found that the actual-innocence claim did not meet the necessary criteria under La. C.Cr.P. art. 926.2, and therefore, the claim was untimely. Similarly, it rejected the ineffective-assistance claims as untimely and repetitive. The court denied the *Brady* and *Napue* claims on the merits to the extent they were predicated on newly discovered evidence (*i.e.*, Larck's out-of-state criminal record) under Louisiana Code of Criminal Procedure article 930.8(A)(1). In doing so, the appellate court offered a very limited merits analysis, explaining "to the extent that relator's prior claims regarding Larck's criminal record rested on different grounds than the arguments raised here, La. C.Cr.P. art. 930.4(A) and (D)'s procedural bar arguably does not apply." On October 6, 2023, Bradley filed a counseled application for supervisory writ with the Louisiana Supreme Court.[43] On May 7, 2024, the Louisiana Supreme Court denied his application for supervisory writ without additional stated reasons.[44]

On November 14, 2024, Bradley filed a counseled federal petition for habeas corpus relief.[45] In that application, he asserts the same claims for relief raised in his fifth and most

---

[42] ECF No. 21-2 at 1457, *State v. Bradley*, 23-KH-377 (La. App. 5 Cir. Sept. 6, 2023).

[43] ECF No. 21-5 at 395, La. S.Ct. Writ No. 2023-KP-01339.

[44] *State v. Bradley*, 2023-KP-01339 (La. 2024), 384 So.3d 348, ECF No. 21-2 at 1477.

[45] ECF Nos. 1, 2, Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus and Memorandum in Support. Although Bradley's habeas petition is captioned with a demand for a jury trial, counsel fails to address the matter in either the petition or memorandum of law in support. By law, "a court, justice or judge entertaining an application for a writ of habeas corpus… shall summarily hear and determine the facts and dispose of the matter as law and justice require." 28 U.S.C. § 2243. While the Rules Governing Section 2254 Cases in the United States District Courts provide for an evidentiary hearing in limited instances, there is no provision for a jury trial on any issue raised in this federal habeas proceeding.

recent state-court application for post-conviction relief:

1. The State committed a *Brady* violation and allowed a fraud upon the court in violation of *Napue* when the State failed to disclose the sole eyewitness's true criminal history and allowed Amy Larck to testify falsely, thereby violating his right to a fair trial.
2. Trial counsel rendered ineffective assistance because he did not investigate or call Mae Lucille Rivet Smith; use the surveillance footage that showed that Bradley was not in the alley when the victim was killed; use the medical examiner's time of death to show that, at the time the victim was killed, Bradley was in custody; or use the sheriff's supplemental report to prove Bradley's innocence.
3. Bradley is actually innocent and incarcerated in violation of the 8th and 14th Amendments, and the state courts failed to consider the gateway claim of actual innocence which would have lifted any procedural bars to the claims of ineffective assistance of counsel and fraud upon the court.[46]

Bradley claims that he is entitled to an evidentiary hearing to address the veracity of the

---

*See Guzman v. Ryan*, Civ. Action No. 07-0295, 2009 WL 1066239, at *8-9 (D. Ariz. Apr. 21, 2009) (denying petitioner's request for a jury trial in a habeas proceeding); *Bean v. Calderon*, 166 F.R.D. 452, 454 (E.D. Cal. 1996). Bradley points to no legal authority rendering a jury trial available to him on any claim alleged in these proceedings for federal habeas corpus relief.

[46] ECF No. 1 at 5, Petition - Points 1-4; ECF No. 2 at 2-3, Memorandum in Support - Grounds for Relief. *See also* ECF No. 22 at 13 & n. 11, State's Response - Statement of Issues.

claims because the state courts failed to afford him a full and fair hearing.[47] He argues that the Court should either order a new trial or remand the matter for a hearing.

The State contends that the petition in its entirety is time-barred and that the claims of ineffective assistance of counsel and the freestanding actual-innocence claim are procedurally defaulted. Alternatively, the State addresses the *Brady*, *Napue,* and freestanding actual-innocence claims in an abundance of caution and argues that they lack merit.[48] Bradley filed a reply to the State's response.[49] He argues that his petition is timely filed under 28 U.S.C. § 2244(d)(1)(D), which allows a later triggering event for limitations purposes. He also contends that his new evidence satisfies the actual-innocence gateway standard, thus allowing the Court to consider the merits of his otherwise barred claims.

As explained below, the Court finds that regardless whether Bradley's claims are cognizable or otherwise procedurally barred, the petition must be dismissed as untimely. The Court finds that an evidentiary hearing is not required to resolve the matter. *Shank v. Vannoy*, No. 16-30994, 2017 WL 6029846, at *2 (5th Cir. 2017).

**Analysis – One-Year Statute of Limitations**

The State argues that Bradley's federal application must be dismissed because it is untimely. The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA")

---

[47] ECF No. 2 at 34, Point IV.

[48] ECF No. 22, State's Response at 29 n. 17, at 55 n. 23 and at 61 n. 27.

[49] ECF No. 25, Reply.

established a one-year statute of limitations for the filing of federal habeas corpus applications. 28 U.S.C. § 2244(d)(1). The statute provides:

> (1) A 1–year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of—
>
> A. the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> B. the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> C. the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> D. the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1).

**A. Section 2244(d)(1)(A)**

The State argues that Subsection (1)(A) applies in this case. Under that subsection, petitioner must bring his Section 2254 claims within one year of the date on which his underlying criminal judgment becomes "final." Regarding finality, the United States Fifth Circuit Court of Appeals has explained:

> The statute of limitations for bringing a federal habeas petition challenging a state conviction begins to run on "the date on which the [state] judgment became final by the conclusion of direct review or the expiration of the time

> for seeking such review." 28 U.S.C. § 2244(d)(1)(A). When a habeas petitioner has pursued relief on direct appeal through his state's highest court, his conviction becomes final ninety days after the highest court's judgment is entered, upon the expiration of time for filing an application for writ of certiorari with the United States Supreme Court. *Roberts v. Cockrell*, 319 F.3d 690, 693 (5th Cir. 2003). *However, "[i]f the defendant stops the appeal process before that point," ... "the conviction becomes final when the time for seeking further direct review in the state court expires*." *Id*. at 694; *see also Foreman v. Dretke*, 383 F.3d 336, 338 (5th Cir. 2004) (Section 2244(d)(1)(A) gives alternative routes for finalizing a conviction: either direct review is completed or the time to pursue direct review expires).
>
> *Although federal, not state, law determines when a judgment is final for federal habeas purposes, a necessary part of the finality inquiry is determining whether the petitioner is still able to seek further direct review. See Foreman, 383 F.3d at 338–39. As a result, this court looks to state law in determining how long a prisoner has to file a direct appeal*. *See Causey v. Cain*, 450 F.3d 601, 606 (5th Cir. 2006); *Roberts*, 319 F.3d at 693.

*Butler v. Cain*, 533 F.3d 314, 317 (5th Cir. 2008) (emphasis added).

Bradley's state criminal judgment of conviction became final for AEDPA purposes on May 13, 2004, 90 days after the Louisiana Supreme Court denied his application for writ of certiorari on direct appeal (February 13, 2004), and the time expired for seeking review with the United States Supreme Court. *See Roberts v. Cockrell*, 319 F.3d 690, 693 (5th Cir. 2003). The AEDPA's one-year limitations period therefore commenced on that date and expired one year later, on May 13, 2005. Bradley's federal petition, then – filed on November 14, 2024 – is untimely unless the deadline was extended through tolling.

The Court first considers statutory tolling. The AEDPA expressly provides that "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection." 28 U.S.C. § 2244(d)(2).

Here, the one-year limitations period ran for 241 days until Bradley filed his first uniform application for post-conviction relief on January 10, 2005. That period was tolled while that application remained pending until the state district court denied relief on February 1, 2005. Bradley had 30 days, or until March 3, 2005, to file a supervisory writ application with the court of appeal, but he failed to do so. The remaining 124 days continued to run and expired on July 6, 2005. He did not submit his next application for post-conviction relief until May 8, 2008. However, that PCR application was filed about two years and 10 months after the one-year federal limitations period had already expired, and therefore could not possibly afford him any tolling benefit. *See Madden v. Thaler*, 521 F. Appx. 316, 320 (5th Cir. 2013); *Scott v. Johnson*, 227 F.3d 260, 263 (5th Cir. 2000); *Magee v. Cain*, Civ. Action No. 99–3867, 2000 WL 1023423, at *4, *aff'd*, 253 F.3d 702 (5th Cir. 2001) (citing *Williams v. Cain*, Civ. Action No. 00–536, 2000 WL 863132, at *2 (E.D. La. June 27, 2000)).

Simply put, once the federal limitations period expired, "[t]here was nothing to toll." *Butler*, 533 F.3d at 318. Giving Bradley the benefit of all statutory tolling to which he would be entitled, his federal application is still untimely. Furthermore, it appears that Bradley does not dispute that any claim governed by § 2244(d)(1)(A) falls outside of the one-year statutory limitations period.[50]

[50] ECF No. 2 at 19-20. In his original memorandum in support, Bradley admits that he failed to file a habeas petition within the AEDPA's one-year deadline. However, he argues for a later commencement date and equitable tolling for the *Brady* and *Napue* claims due to the discovery of Larck's out-of-state criminal history. He also asserts a gateway actual-innocence claim to avoid the time-bar. Bradley has neither suggested nor cited any controlling law for the proposition that his fifth application for post-conviction relief, filed under the newly enacted state-law provision La. C.Cr.P. art. 926.2, resurrected the federal one-year limitations period. *Lambert v. Hooper*, Civ. Action No. 6:24-CV-1206, 2025 WL

**B. Section 2244(d)(1)(D)**

In his reply memorandum, Bradley asserts that the newly discovered evidence underlying his *Brady* and *Napue* claims implicates § 2244(d)(1)(D), which provides a later commencement date for the one-year statute of limitations. Under Subsection D, the limitation period runs from the date on which the factual predicate of the claims presented could have been discovered through the exercise of due diligence.[51] Bradley contends that he did not become aware of Larck's full criminal history until his counsel of record ran a search on LexisNexis on December 25, 2022,[52] and he has diligently litigated and exhausted the *Brady* and *Napue* claims in the state courts based on that evidence since his discovery. The State contends that Bradley has not established entitlement to a later start date under

1765591, at *2 (W.D. La. May 9, 2025), *report and recommendation adopted*, 2025 WL 1762976 (W.D. La. June 25, 2025); *Cole v. Hooper*, Civ. Action No. 23-1089, 2023 WL 9328119, at *5 (E.D. La. Nov. 16, 2023*), report and recommendation adopted*, 2024 WL 231957 (E.D. La. Jan. 22, 2024).

[51] Neither Bradley nor the State address § 2244(d)(1)(B). Under Subsection B, the commencement of the federal limitations period is delayed if petitioner was "prevented" from filing a timely petition due to a state action which violated the Constitution or laws of the United States. Bradley does not argue that the State's failure to disclose evidence qualifies as an "impediment" within the meaning of § 2244(d)(1)(B). Because he was not prevented from filing numerous earlier federal petitions or obtaining the evidence at issue through independent means, and no such allegation was raised and no legal authority provided for applying that subsection in this instance, the Court will address the argument under Subsection D. *See Freeman v. Zavaras*, Civ. Action No. 11-1955, 2011 WL 5864094, at *5 (D. Colo. Nov. 22, 2011), *certificate of appealability denied*, 467 F. App'x 770 (10th Cir. 2012).

[52] ECF No. 21-2 at 1081, PCR application, Exhibit N. In his Reply to the State's Response, he supplemented his PCR with Larck's official criminal history from Florida. *Id.* at 1307, Exhibit A at 1313.

Subsection D, which applies only if the factual predicate could not have been discovered earlier through the exercise of due diligence.[53] The State argues that the defense was aware of Larck's credibility issues and her extensive criminal history since the time of trial and failed to exercise reasonable diligence.

Initially, the Court notes that if the one-year limitations period for the *Brady* and *Napue* claims began on December 25, 2022, then with the tolling attributed to his pending state-court post-conviction relief proceedings, Bradley's claims under *Brady* and *Napue* based solely on that discovery would be timely. However, even if those two claims fall within a different category under Section 2244(d)(1), so that an alternate commencement date may apply to make them timely, it would not resurrect his ineffective-assistance-of-counsel claims, freestanding actual-innocence claim, or any other claims that had become time-barred years earlier. *See In re Young*, 789 F.3d 518, 528 n. 3 (5th Cir. 2015) (noting that the Fifth Circuit has not decided whether the habeas statute of limitations "applies piecemeal to each claim or to the whole habeas application," but observing in dicta, that "it appears that applying the statute of limitations to each claim is consistent with AEDPA and the precedent of other circuits."); *see also Clemente v. Lee*, 72 F.4th 466, 472 (2d Cir. 2023); *Crockett v. Cain*, Civ. Action No. 15-319, 2016 WL 7717434, at *8 (E.D. La. Dec. 1, 2016), *adopted*, 2017 WL 111180 (E.D. La. Jan. 11, 2017) (rejecting distinct claim for improper grand jury selection as untimely, but finding unconstitutional sentencing claim under *Miller v. Alabama* timely and meritorious). Thus, for his remaining claims, Bradley would still

[53] ECF No. 22 at 26-29.

need to demonstrate that he is entitled to equitable tolling or that he has met the gateway "actual innocence" exception to overcome the time-bar.

The "factual predicate" set forth by Bradley to support application of Subsection D is Amy Larck's out-of-state criminal history.[54] Larck was the State's key witness, who testified that she was in the alleyway with Bradley and his co-defendant, Russell, when the victim was shot. Bradley points to a Lexis search his counsel conducted on December 25, 2022, which revealed that Larck had a criminal history in Florida (convictions for prostitution and child abuse) and North Carolina (simple assault) before she arrived in Louisiana. She was on probation in Florida and left the state at some point and committed crimes in Louisiana, thereby violating her probation. The State did not disclose this evidence to the defense despite requests for criminal records of the State's witnesses. It did not come out at trial during Larck's questioning by either the State or the defense. Bradley alleges that this impeachment evidence, which was found in December 2022, gave rise to his *Brady* and *Napue* claims.

For purposes of Subsection D, the Court must determine "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence." *Galbraith v. Hooper*, 151 F.4th 795, 804 (5th Cir. 2025). The

---

[54] Bradley offers no justification for last-minute discovery of affidavits, or any other new evidence set forth, and none exists. As discussed later in this report, the substance of Larck's recantation underlying Teri-Lee Isaac's affidavit was known to Bradley since the time Larck wrote to him in 2005. Similarly, the information underlying Mae Rivet Smith's affidavit has been available since 2005, as evidenced by letters she wrote to Bradley that he used in his first application for post-conviction relief. The information underlying co-defendant Russell's affidavit has been readily ascertainable since his guilty plea.

United States Fifth Circuit Court of Appeals has held "that this means the date a petitioner is on notice of the facts which would support a claim, not the date on which the petitioner has in his possession evidence to support his claim." *In re Young*, 789 F.3d at 528 (citing *Flanagan v. Johnson*, 154 F.3d 196, 199 (5th Cir. 1998)). Additionally, Bradley still must establish due diligence under Subsection D even though he alleges that the State violated *Brady* and *Napue* by suppressing the impeachment evidence and not correcting Larck's false testimony. *See In re Cantu*, 94 F.4th 462, 469-70 & 473 n. 3 (5th Cir. 2024) (rejecting the suggestion that a successive petitioner urging *Napue* and *Brady* violations need not make any further diligence showing under § 2244(b)(2)(B)(i), because a successive petitioner urging a *Brady* claim may not rely solely on the fact that evidence was suppressed at trial to demonstrate diligence under § 2244(b)(2)(B)(i)) (citing *Johnson v. Dretke*, 442 F.3d 901, 910 (5th Cir. 2006); *accord In re Boshears*, 110 F.3d 1538, 1540 (11th Cir. 1997); *Gage v. Chappell*, 793 F.3d 1159, 1166 (9th Cir. 2015); *Case v. Hatch*, 731 F.3d 1015, 1027 (10th Cir. 2013)); *LeBoeuf v. Hooper*, Civ. Action No. 21-329, 2023 WL 3238967, at *5 (M.D. La. Feb. 23, 2023), *report and recommendation adopted*, 2023 WL 3236490 (M.D. May 3, 2023) (rejecting petitioner's argument that "[w]hen examining the diligence requirement, it is only appropriate to consider it in the context that the State had affirmative duties under *Napue* and *Brady* to disclose Supplements 11 and 12" and that "[P]etitioner should not have been forced to file Public Records Act requests in order to obtain them" and finding that petitioner did not act with the requisite diligence for relief under § 2244(d)(1)(D)); *Heard v. Cain*, Civ. Action No. 06-3207, 2007 WL 763691, at *3 (E.D. La. Mar. 9, 2007) (finding petitioner's

habeas application untimely under § 2244(d)(1)(D), because the relevant date was when petitioner could have obtained the district attorney's file through a public records request and discovered the factual predicate of his *Brady* claim through due diligence). The question under Subsection D is not whether the State of Louisiana violated its duties under *Brady* or *Napue*, but instead whether the factual predicate of the claims could have been known earlier with reasonable diligence. Hence, the mere assertion that the State violated *Brady* and *Napue* does not supplant Section 2244(d)(1)(D)'s diligence requirement or indefinitely suspend Bradley's due-diligence obligation.

Here, the Court doubts that a *Brady* or *Napue* violation could be established on the record presented. Bradley asserts that the additional criminal history would have provided "deeper impeachment" of Larck, not just with regard to her criminal history, but "substantive facts regarding her life."[55] Because the impeachment evidence concerning Larck's out-of-state criminal history adds relatively little weight given Larck's admissions concerning her extensive criminal conviction history in Louisiana and the potential motivation for her to testify favorably for the prosecution based on that history, the evidence cited by Bradley likely would not satisfy the rule for *Brady* materiality.[56] In fact, the Louisiana Fifth Circuit addressed the *Brady* and *Napue* claim on the merits and found that the evidence did not qualify as *Brady* material or satisfy *Napue* criteria, because the value of

---

[55] ECF No. 25 at 3.

[56] ECF No. 21-1, Trial Transcript (Larck Cross-Examination) at 589-662.

the evidence was negligible and merely cumulative of other evidence presented at trial.[57] Undisclosed evidence is material if it could reasonably have " 'put the whole case in such a different light as to undermine confidence in the verdict.' " *Strickler v. Greene*, 527 U.S. 263, 290, 119 S.Ct. 1936, 144 L.Ed.2d 286 (1999). "But when the evidence could not have reasonably had such an effect, it is not material, and its erroneous nondisclosure does not justify relief." *Klein v. Martin*, No. 25-51, 2026 WL 189976, at *4 (U.S. Jan. 26, 2026). Here, the new impeachment evidence is not sufficient to undermine confidence in the

---

[57] In analyzing whether the claim fell within an exception to the time limitations under state law and reaching the merits, the state court of appeal applied state procedural law, La. C.Cr.P. art. 930.8(A)(1), which provides a different rule and set of criteria than that which is applicable to federal habeas cases. Louisiana Code of Criminal Procedure article 930.8 provides:

A. No application for post conviction relief, including applications which seek an out-of-time appeal, shall be considered if it is filed more than two years after the judgment of conviction and sentence has become final under the provisions of Article 914 or 922, unless any of the following apply:

(1) The application alleges, and the petitioner proves or the state admits, that the facts upon which the claim is predicated were not known to the petitioner or his prior attorneys. Further, the petitioner shall prove that he exercised diligence in attempting to discover any post-conviction claims that may exist. "Diligence" for the purposes of this Article is a subjective inquiry that shall take into account the circumstances of the petitioner. Those circumstances shall include but are not limited to the educational background of the petitioner, the petitioner's access to formally trained inmate counsel, the financial resources of the petitioner, the age of the petitioner, the mental abilities of the petitioner, or whether the interests of justice will be served by the consideration of new evidence. New facts discovered pursuant to this exception shall be submitted to the court within two years of discovery. If the petitioner pled guilty or nolo contendere to the offense of conviction and is seeking relief pursuant to Article 926.2 and five years or more have elapsed since the petitioner pled guilty or *nolo contendere* to the offense of conviction, the petitioner shall not be eligible for the exception provided for by this Subparagraph.

verdict. Similarly, " '[e]ven assuming that the prosecution presented (or failed to correct) false testimony, the critical factor is materiality.' " *United States v. Brumfield*, 89 F.4th 506, 519 (5th Cir. 2023) (quoting *U.S. v. Stanford*, 823 F.3d 814, 839 (5th Cir. 2016)). "The Supreme Court has 'defined materiality in terms of a "reasonable probability" of a different outcome,' which 'results when nondisclosure places the case in a different light so as to undermine confidence in the verdict.' " *Id*. (citations omitted) (quoting *U.S. v. O'Keefe*, 128 F.3d 885, 894 (5th Cir. 1997). Here, at least part of Larck's objectionable testimony was elicited on cross-examination by defense counsel, not the prosecution.[58] The United States Fifth Circuit Court of Appeals has held that " 'when the defense elicits the alleged perjury on cross-examination, no material falsehood has occurred because the government has not itself knowingly presented false testimony.' " *Brumfield*, 89 F.4th at 520 (quoting *O'Keefe*, 128 F.3d at 894; *United States v. Fields*, 761 F.3d 443, 477 (5th Cir. 2014) ("Here, the falsehood also occurred during cross-examination. As a result, the testimony is not material."). And again, even if Bradley could show that the prosecution failed to correct false testimony by Larck suggesting she had no criminal convictions before she arrived in Louisiana, it would not place the case in a different light so as to undermine confidence in the verdict.

Additionally, here, the factual predicate of the claims could have been discovered

---

[58] ECF No. 2 at 14, Memorandum in Support ("She also lied about her criminal record. Larck testified that her first criminal conviction was in Louisiana, from a case that she caught close in time to the case at bar"); ECF No. 25 at 2, Bradley's Reply; and ECF No. 21-1 at 528-29 (Trial Transcript, Larck Cross-Examination).

earlier through the exercise of due diligence. Counsel for Bradley states that he became aware of the fact that Larck had convictions before she came to Louisiana in July 1999, when he conducted a background search using the online research platform LexisNexis on December 25, 2022. His search revealed that she may have had convictions in North Carolina and Florida. He filed his fifth post-conviction relief application with the state district court several days later, on December 28, 2022. He submitted the evidence of her prior criminal history as a part of his *Brady* and fraud-upon-the-court claims. He subsequently confirmed the Florida conviction and parole status and submitted a motion for a subpoena for her criminal records from North Carolina.[59] It was not the ultimate receipt of the criminal records, but the research inquiry that resulted in the information that provided the factual premise for his claims. However, Bradley does not claim that the information about Larck's criminal history in other states was unavailable prior to 2022, or in the 20 years since Bradley was convicted. Nor does he explain why the research could not have happened earlier given that the information was readily ascertainable. Indeed, since the time of trial, Larck's criminal history and status as a parolee has been available and discoverable through the exercise of due diligence.

Any allegation that Bradley could not have suspected until 2022 that Larck had a criminal history before arriving in Louisiana is not convincing. The defense knew that

[59] ECF No. 21-2 at 1285, Motion for Subpoena, 4/25/2023. As of the time the Louisiana Fifth Circuit Court of Appeal rendered its decision, Bradley's counsel was still awaiting official confirmation of Larck's North Carolina convictions. *See* ECF No. 1-2 at 40 n. 10, *State v. Bradley*, No. 23-KH-377.

Larck first arrived in Louisiana on July 4, 1999, shortly before the incident, and that she moved around and had connections in different states, including North Carolina. She testified at trial that she was not from Louisiana and had just arrived from Illinois a few weeks before the crime took place. She said she was born in Illinois, raised in Virginia, and that her mother lived in North Carolina. Furthermore, the defense was fully aware of her extensive criminal history in the short time she was in Louisiana (including numerous felony convictions, involving possession of cocaine, theft, shoplifting, crimes against nature), which was thoroughly covered at trial and mentioned in Bradley's first two state-court applications for post-conviction relief.

At trial, the defense challenged Larck's credibility as the sole eyewitness to the murder. The defense knew that Larck was a self-confessed "former" pathological liar.[60] Her propensity to lie and manipulate was effectively displayed at trial, and her credibility was an obvious matter of contention not only at trial, but throughout subsequent appeals and post-conviction proceedings. Larck's remorseful letters to Bradley suggesting she lied out of fear were sent in 2005.[61] In fact, Bradley filed a post-conviction motion for an evidentiary hearing to present new evidence based on her letters in 2010.[62] The letters later prompted the 2013 Facebook communications between Larck and Teri-Lee Isaac

[60] ECF No. 21-1, Trial Transcript (Amy Larck) at 646.

[61] ECF No. 1-2 at 166-73.

[62] ECF No. 21-1 at 1045.

(Bradley's fiancé), as well as Isaac's 2022 affidavit.[63] Given the information available to the defense, Bradley, or one of his many attorneys, could have investigated Larck's criminal background well prior to December of 2022. *See LeBoeuf v. Hooper*, Civ. Action No. 21-329, 2023 WL 3238967, at *5 (M.D. La. Feb. 23, 2023), *adopted*, 2023 WL 3236490 (M.D. La. May 03, 2023); *Moore v. Wetzel*, Civ. Action No. 15-293, 2020 WL 9048744, at *10-12 (W.D. Pa. Sep. 25, 2020). Bradley fails to show that the *Brady* and fraud claims are based on factual predicates that could not have been discovered earlier through the exercise of due diligence. The Court agrees with the State that the timeliness of Bradley's federal claims is governed by § 2244(d)(1)(A). As previously discussed, Bradley's federal petition is untimely under subsection A, unless he is entitled to equitable tolling.

**C. Equitable Tolling**

The United States Supreme Court has held that the AEDPA's statute of limitations is subject to equitable tolling. *Holland v. Florida*, 560 U.S. 631, 645 (2010). However, "a petitioner is entitled to equitable tolling only if he shows (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." *Id*. at 649 (internal quotation marks omitted); *see also Davis v. Johnson*, 158 F.3d 806, 811 (5th Cir. 1998) (holding that the AEDPA's statute of limitations can be equitably tolled "in rare and exceptional circumstances"). A petitioner bears the burden of proof to establish entitlement to equitable tolling. *Alexander v. Cockrell*, 294 F.3d 626, 629 (5th Cir. 2002).

---

[63] ECF No. 21-4 at 104-117, 120-126.

To the extent Bradley asserts equitable tolling based on the State's suppression of Larck's out-of-state criminal history and prosecutorial misconduct during her testimony, these do not qualify as extraordinary circumstances that would have prevented him from seeking federal habeas relief in a timely manner. The alleged suppression at the time of trial does not qualify as an extraordinary circumstance preventing him from seeking timely federal relief, because, as previously addressed, the information was available and could have been discovered in the 20 years since trial. Bradley also fails to establish the requisite diligence given the inexplicable two-decade delay in investigating whether Larck had a criminal history before she arrived in Louisiana in 1999. It is also well-settled that mistake, ignorance of the law, and a prisoner's *pro se* status do not suffice to justify equitable tolling. *Johnson v. Quarterman*, 483 F.3d 278, 286 (5th Cir. 2007); *Cousin v. Lensing*, 310 F.3d 843, 849 (5th Cir. 2002); *Fierro v. Cockrell*, 294 F.3d 674, 682 (5th Cir. 2002); *Felder v. Johnson*, 204 F.3d 168, 171 (5th Cir. 2000). The Court finds that Bradley has not demonstrated entitlement to equitable tolling.

**D. Actual-Innocence Exception**

Bradley also invokes the actual-innocence exception to avoid the time-bar. In *McQuiggin v. Perkins*, the United States Supreme Court held that "actual innocence, if proved, serves as a gateway through which a petitioner may pass... [to excuse] the expiration of the statute of limitations." *McQuiggin v. Perkins*, 569 U.S. 383, 386 (2013). The Supreme Court has cautioned, however, that "tenable actual-innocence gateway pleas are rare[.]" *Id*. To succeed on this claim, a petitioner must present a credible claim of actual innocence

based on "new reliable evidence... that was not presented at trial," and he "must show that it is more likely than not that no reasonable juror would have found him guilty beyond a reasonable doubt" in light of that new evidence of his factual innocence. *Schlup v. Delo*, 513 U.S. 298, 324-29 (1995).

In *Floyd v. Vannoy*, the United States Fifth Circuit Court of Appeals summarized the relevant analysis in discussing fingerprint comparison evidence that existed at the time of trial but was not known to the prosecution or the defense and was not presented at trial. The Fifth Circuit explained:

> An actual-innocence claim is only established when it is shown that, in the light of newly-discovered evidence, "it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt". *Schlup*, 513 U.S. at 327, 115 S.Ct. 851; *see also McQuiggin*, 569 U.S. at 399, 133 S.Ct. 1924. Therefore, a credible claim must be supported by "new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial". *Schlup*, 513 U.S. at 324, 115 S.Ct. 851. Actual innocence is then demonstrated only when the court scrutinizes the likely impact on reasonable jurors of "the overall, newly supplemented record", *House*, 547 U.S. at 538, 126 S.Ct. 2064, to conclude that, in the light of all evidence—both the evidence presented at trial and that newly discovered—"no juror, acting reasonably, would have voted to find [petitioner] guilty beyond a reasonable doubt", *McQuiggin*, 569 U.S. at 386, 133 S.Ct. 1924 (quoting *Schlup*, 513 U.S. at 329, 115 S.Ct. 851). As re-stated in *McQuiggin*, the court must conclude "it is more likely than not that no reasonable juror would have convicted [the petitioner]". *Id*. at 395, 133 S.Ct. 1924 (quoting *Schlup*, 513 U.S. at 329, 115 S.Ct. 851) (alteration in original).

*Floyd v. Vannoy*, 894 F.3d 143, 155 (5th Cir. 2018).

As part of the reliability assessment of the first step, the court "may consider how the timing of [the petitioner's] submission and the likely credibility of the [witnesses] bear on the probable reliability of that evidence," as well as the circumstances surrounding the

evidence and any supporting corroboration. *House v. Bell*, 547 U.S. 518, 537 (2006) (internal quotation marks and citation omitted); *see also McQuiggin*, 569 U.S. at 399. In *Floyd*, the Fifth Circuit observed "that the Court, in *McQuiggin*, held no threshold diligence requirement applies to actual-innocence claims; the delay is simply a factor in the court's reliability evaluation. 569 U.S. at 399, 133 S.Ct. 1924. Scientific-based evidence, like the fingerprint-comparison results, is less susceptible to manipulation and, therefore, is appropriately considered reliable evidence despite the time lapse." *Floyd*, 894 F.3d at 156 (citing *Schlup*, 513 U.S. at 399–400, 133 S.Ct. 1924). The Fifth Circuit also found that the reliability of an affidavit provided was not affected by the passage of time because that individual has neither died, nor otherwise become unavailable for further questioning. *Id*. at 159 (citing *McQuiggin*, 569 U.S. at 399-400 & n. 4, 133 S.Ct. 1924). However, in *Floyd*, the reliability of the affidavit was strengthened by the unlikelihood the affiant, a friend of the murder victim, would falsely assert a particular defendant did not fit the profile of the likely killer, in order to support the defendant's innocence. *Id*. (citing *House*, 547 U.S. at 551, 126 S.Ct. 2064 (ruling witness' disinterest in aiding defendant supports credibility of post-conviction testimony)).

In assessing actual innocence, the Court begins with a review of the "old" evidence (*i.e.*, evidence presented at trial and on which his conviction was based) as summarized on direct appeal:

> On August 1, 1999, the body of Barton Sanford was found beneath a trailer located at 7501 ½ Fourth Street near the Happy Hour Saloon in Marrerro. The cause of death was a bullet wound to the chest. Detective Donald Meunier of the Jefferson Parish Sheriff's Office investigated and eventually developed

Bradley as a possible suspect. On August 7, 1999, Detective Meunier interviewed Bradley and obtained several statements.

In the statements, Bradley indicated that he had attended a party at the Happy Hour Saloon on Friday, July 30, 1999 but denied knowing the victim. However, when confronted with a surveillance video tape taken outside of the Happy Hour Saloon on July 30, 1999 showing him with the victim, Bradley recanted his prior statements. Bradley told Detective Meunier that the victim wanted to purchase crack cocaine and that he had arranged for the victim to make the purchase from an individual named Jason Rivet. However, before the drug deal was completed, Bradley stopped the drug transaction and pulled the victim away because "something looked like it was going down." Bradley subsequently returned to the bar where he remained for approximately one hour before going to the Budget Motel where he remained for the night.

Detective Meunier also interviewed an eyewitness, Amy Larck, who identified Bradley as the shooter. At trial, Lark testified that at the time of the shooting she was a drug addict who supported her habit by prostitution. Larck knew both Bradley and Russell and had been at Russell's house on the evening of July 30, 1999. While there, she overheard Bradley ask Russell if he had a gun to which Russell responded, "I got that for you."

Later that evening, Larck was outside the Happy Hour Saloon where she smoked crack for most of the night. Later that night, while inside the Happy Hour Saloon, Bradley informed Larck that he had a "trick" for her, whom Larck identified as the victim. Larck and Bradley left the bar and walked around the block to give the victim time to come outside. Larck then walked into an alley behind the Happy Hour Saloon where she met the victim. Larck agreed to perform oral sex upon the victim and the victim displayed approximately sixty dollars. At that moment, Bradley and Russell walked around the corner. Bradley had a gun and was screaming at the victim. Larck began backing out of the alley and heard a gunshot. She then ran from the scene and ended up at the Budget Motel with Bradley. After five to ten minutes, Larck left the motel and received a ride to the levee from a stranger who later raped her. She later reported the rape to police but did not mention the murder at that time. Not until police picked her up in connection with the homicide investigation did she mention anything to police about the murder.

After Larck's testimony, the State rested and the defense called its first witness, Karen Breaux. Breaux testified that on July 30, 1999 she was at Russell's house until midnight and did not recall either Larck or Bradley being at the home that day or evening. At around midnight that evening, she went to

> the Happy Hour Saloon where she observed the victim and Bradley engaged in an argument outside. The victim was accusing Bradley of having ripped him off which Bradley denied. After a brief moment, Breaux left the area fearing police would arrive shortly.
>
> The defense also called Tammy Disher who testified that, on the evening of July 30, 1999, she saw the victim fighting with an individual named Jason Rivet, who was carrying a gun. She did not see an argument between Bradley and the victim. However, Disher testified that while she was incarcerated with Larck prior to trial, Lark had told her that she was involved in the killing of the victim. Larck told her that she was supposed to "trick" the victim and that Bradley was supposed to rob him but that something went wrong and Bradley ended up shooting the victim.[64]

In this case, there was no physical evidence linking Bradley to the crime and no confession, although Bradley did recant a prior statement that he "never saw the victim"[65] and admitted to having interacted with the victim that night. Larck's testimony was critical to the State's case. Despite interviewing dozens of people, there were no other witnesses to the shooting, only the altercation between Bradley and the victim.[66] Larck placed Bradley in the alley with the gun just before the victim was shot and killed. Bradley now claims that Larck's testimony was unreliable and that other evidence casts doubt on his guilt.

Bradley points to both old and new evidence in support of his actual-innocence claim. He cites the following list of "evidence discovered since trial" that was not presented at trial or in a previous post-conviction motion:

---

[64] *State v. Bradley*, 03-384 (La. App. 5 Cir. 9/16/03), 858 So.2d 80, 83-84.

[65] ECF No. 21-1, Trial Transcript (Detective Meunier) at 477-80.

[66] *Id*. at 469.

(1) Police report of Bradley's drug arrest at 7:50 am on July 31, 1999;[67]

(2) October 24, 2022 (notarized December 22, 2022) affidavit of Teri-Lee Isaac, Bradley's fiancé, setting forth Larck's assertions in her letters to Bradley and her Facebook communications with Isaac that her testimony was coerced and untrue;[68]

(3) February 18, 2023 affidavit of Bradley's co-defendant, Albert Russell, refuting his own conviction for killing a victim he had never seen in his life and denying he was at the Happy Hour Saloon at the time of the murder;[69]

(4) June 10, 2022 affidavit of Mae Lucille Rivet Smith, who gave multiple recorded statements to police following the murder and was herself at one point considered a suspect but did not testify at trial, that she has known Bradley for 24 years; she was at the Happy Hour Saloon and saw Bradley enter the alleyway and waved to him; as they waved to each other she heard "shots ring out" somewhere beyond the alleyway; Bradley did not have a gun in his hand; the victim was not in the alley when she waved to Bradley and heard the shots; Larck and Russell were not in the alley together when shots rang out and were not with Bradley; and neither Larck nor Russell were at the Happy Hour Saloon that weekend;[70]

(5) January 13, January 27, and April 30, 2005 letters from Amy Larck to Bradley

---

[67] ECF No. 1-2 at 133.

[68] ECF No. 1-2 at 152.

[69] ECF No. 21-2 at 1272.

[70] ECF No. 1-2 at 175.

stating that she was scared and the police led her to testify falsely;[71]

(6) Florida and North Carolina criminal history of Amy Larck;[72] and

(7) History of misconduct by Sgt. Grey Thurman, as evidenced by a 2012 federal civil rights complaint filed by an exonerated former inmate alleging misconduct by Thurman and other Jefferson Parish officials.[73]

Bradley contends that this new evidence in conjunction with the available evidence at trial proves his actual innocence. As for the available evidence that also proves his innocence, he cites to the following: (1) Detective Meunier's supplemental report that details the findings regarding the video surveillance tapes showing only one person, the victim, enter the alley at 1:25 am on July 31, 1999, and only one other person, Mae Rivet Smith, entering and exiting the alley after that time;[74] (2) the video surveillance tapes, which do not capture Larck, Bradley or Russell either entering with the victim or leaving the alley during the relevant time frame; and (3) the medical examiner's testimony estimating that the murder occurred 24-36 hours before the victim's body was brought to the medical examiner's office at 6:30 pm on August 1, 1999, which Bradley alleges 24 hours would place the victim's time of death at 6:30 pm on July 31, 1999 (by which time he was already under arrest for the drug offense), or 36 hours would place the victim's death at 6:30 am on July

---

[71] ECF No. 1-2 at 167.

[72] ECF No. 1-2 at 571.

[73] ECF No. 1-2 at 657.

[74] ECF No. 1-2 at 110.

31, 1999 (at which time surveillance video does not confirm his presence at the Happy Hour Saloon or in the alley).[75]

The Court must consider the evidence presented at trial in the light of all newly discovered reliable evidence. In support of his actual-innocence claim, Bradley submits a new affidavit from Teri-Lee Isaac detailing that Larck wrote letters to Bradley stating she lied to police about everything, including being at the Happy Hour Saloon that night and Bradley shooting the victim, because she was coerced by police. Courts generally treat recantations with skepticism. *See Herrera v. Collins*, 506 U.S. 390, 423, 113 S. Ct. 853, 122 L. Ed. 2d 203 (1993) (O'Connor, J., concurring) (affidavits made many years after trial, purporting to exculpate a convicted prisoner through a new version of events, are "not uncommon" and "are to be treated with a fair degree of skepticism"); *United States v. Nixon*, 881 F.2d 1305, 1311 (5th Cir. 1989) ("The recanting of prior testimony by a witness is ordinarily met with extreme skepticism."). Though Bradley concedes that recantations are looked at skeptically, he suggests this is credible because it is not a true recantation, but rather, an admission that she committed perjury, and, because she, in fact, fears she could face perjury charges. Regardless, the question for this Court in assessing actual innocence is the reliability of the new evidence. This new evidence from Isaac was first submitted 20 years after Bradley's conviction. In the 24 years since Bradley's conviction, Larck has not come forward with a sworn affidavit of her own attesting to these details, and a subjective

[75] ECF No. 1-2 at 137.

fear of perjury charges at this time cannot fully explain her reticence.[76] Even now, it was Teri-Lee Isaac, who because of her personal relationship with Bradley, sought out Larck via Facebook to elicit the information. Once contacted, Larck demanded money from Isaac and Bradley before she would tell her whole story to help Bradley, and the brief correspondence ended.[77] For these reasons, the Court is not convinced that the affidavit constitutes reliable evidence.

Even if considered, Larck's current version of the events comes full circle and simply mirrors what she initially told police in her first recorded statement when she denied having any knowledge or involvement in Sanford's death, but at that time, she attributed it to her fear of Bradley and Russell. This was brought out at trial. Lark also testified at trial that she only implicated Bradley after Detective Thurman informed her that they knew what happened and that he would charge her with conspiracy if she was not truthful. Defense counsel used her testimony in his closing argument.[78] On direct appeal, the appellate court addressed this when analyzing the claim of sufficiency of the evidence finding that it did not appear to have undermined her credibility. The appellate court also addressed the fact that Larck later willingly confessed to Disher while in prison that Bradley shot the victim, as Disher testified to at trial, and found that it undermined her assertions that she only told

[76] The Court notes that in her letter to Bradley dated January 13, 2005, she states she is not worried that what she has to say can be held against her. ECF No. 1-2 at 159.

[77] ECF No. 1-2 at 161-64 (Facebook message exchange).

[78] ECF No. 21-1, Closing Argument at 705.

police what they wanted to hear because they threatened and coerced her.[79] Under the circumstances, Isaac's affidavit relaying assertions by a recanting witness casts doubt on its reliability and does not satisfy the *Schlup* test.

The same is true of Mae Lucille Rivet Smith's belated affidavit. Mae Rivet Smith is not a new witness. She was interviewed multiple times by the police and initially considered a suspect. Defendant attempted to subpoena her for trial, but those efforts were unsuccessful. Mae Rivet Smith's statements were proffered by the defense at trial. Bradley submitted two letters from Mae Rivet Smith in a 2005 post-conviction relief application in support of a claim of ineffective assistance of counsel in which she explained she never received notice to appear at his trial because his attorney was not given her correct name.[80] Despite her professed knowledge, she divulged none of the information concerning Bradley, Larck, Russell, or the victim in any of her police interviews. Her assertion that the victim was not in the alley when she waved to Bradley from the door of the Happy Hour Saloon is unbelievable, because from her vantage point she could not see into the alleyway. Her assertion that Larck was not at the Happy Hour Saloon all weekend conflicts with the trial testimony of Karen Breaux who said Bradley was at the bar with Amy that night.[81] Nor has it been asserted that the surveillance video captured her waving to Bradley as Mae Rivet Smith described.

---

[79] *State v. Bradley*, 858 So.2d at 85. *See also* ECF No. 21-1 at 576-77.

[80] ECF No. 21-1 at 961-68.

[81] ECF No. 21-1, Trial Testimony (Karen Breaux) at 667.

Russell's belated affidavit also lacks reliability. And it offers no new evidence for Bradley's innocence. It merely attempts to further impugn Larck's credibility and her version of the events, more than 20 years after he entered an *Alford* plea to an amended charge of accessory after the fact to second-degree murder, by attesting that Russell was not at the Happy Hour that night and did not know or have any contact with the victim.

Bradley also claims he is actually innocent of second-degree murder because the prosecution withheld evidence of Larck's past convictions in Florida and North Carolina from the defense and committed "fraud on the court" by knowingly eliciting false testimony from Larck about her past criminal convictions. This official criminal record evidence was not considered by jurors and its reliability is not questioned. However, Bradley falls short of satisfying his burden to demonstrate that it is more likely than not that no reasonable juror would have convicted him of murdering the victim if they were aware of Larck's prior conviction for simple assault in North Carolina and prior convictions for prostitution and child abuse in Florida, the latter of which she was on probation for at the time of Bradley's trial. Larck was questioned extensively at trial about her drug addiction, life of prostitution, lengthy criminal conviction history in Louisiana, possibility of prosecutorial deals in exchange for her testimony against Bradley,[82] and propensity to lie, and the jury considered all of this in determining her credibility and weighing her testimony. Specifically, the record shows that jurors heard that Larck engaged in prostitution in the area

[82] ECF No. 21-1, Trial Transcript at 624-54 (Cross Examination); pp. 654-62 (Redirect Examination). At one point, she admits she "used to be" a pathological liar. *Id.* at 646.

surrounding the Happy Hour Saloon to sustain her crack cocaine addiction. She was incarcerated for skimming poker machines when she gave her statement to police. She wore prison garb when testifying and acknowledged her lengthy arrest record and prior criminal convictions in Louisiana, which included her currently serving a five-year sentence on a guilty-plea conviction for possession of cocaine, possession of cocaine with intent to distribute, crime against nature, and theft of goods in excess of $300.[83] *McQuiggin*, 569 U.S. at 394–95. Larck's credibility or lack thereof was of critical importance in this case and the defense left no stone unturned with the evidence it had in its arsenal. While the additional impeachment evidence would have added to the defense's impeachment evidence arsenal, it simply does not lead to the conclusion that " 'no juror, acting reasonably, would have voted to find Bradley guilty beyond a reasonable doubt.' " *McQuiggin*, 569 U.S. at 386 (quoting *Schlup*, 513 U.S. at 329, 115 S.Ct. 851).

In support of his actual innocence claim, Bradley also includes an unrelated 2012 civil rights complaint filed by a formerly incarcerated person, Michael Williams, who was deemed wrongly convicted of a crime. In that complaint, the plaintiff names Sgt. Thurman and makes allegations against him involving dishonesty and misconduct. These are speculative allegations, not new facts, and certainly not new reliable evidence of the sort that raises sufficient doubt about Bradley's guilt to undermine confidence in the result of the trial. Again, Bradley must first identify "new reliable evidence" and then show that considering this evidence, no juror, acting reasonably, would have voted to find him guilty beyond a

[83] ECF No. 21-1, Trial Transcript at 483-85, 505-07, 528-33.

reasonable doubt. This alleged new "evidence" fails to satisfy the rigorous burden to prove actual innocence.

Finally, Bradley points to the police report from his drug arrest as evidence not presented at trial. He claims that the timing of his arrest on July 31, 1999, at 7:50 a.m., and the medical examiner's estimation of the victim's time of death, combined with surveillance video over the relevant time-period that does not show Bradley in the area where the deceased victim was found, conclusively establishes his actual innocence. This police report is not "new" evidence. It was known and available to defense counsel at the time of trial. Obviously, defense counsel sought to keep evidence about Bradley's involvement in other crimes from the jury.[84] Overall, Bradley's argument amounts to nothing more than a claim of ineffective assistance of counsel based on defense counsel's investigation, trial strategy and presentation of a defense. Indeed, this claim, which truly focuses on the surveillance video and time of death, mirrors Bradley's claim for ineffective assistance of counsel where he alleges counsel failed to investigate or call Mae Lucille Rivet Smith and use the surveillance footage, the medical examiner's time of death and the sheriff's supplemental report to prove Bradley's innocence.[85] However, allegations that counsel provided ineffective assistance offer no support for actual innocence. In fact, that time-barred and

---

[84] Evidence of Bradley's prior criminal record and purported drug use and distribution was the subject of a motion in limine filed by the defense seeking to exclude the evidence from trial. ECF No. 21-1 at 101, Motion in Limine. He also sought to exclude portions of his statements to police that referenced his arrest. ECF No. 21-1 at 103, Motion in Limine Portions of Defendant's Statement to Police.

[85] ECF No. 2 at 30, Memorandum in Support.

procedurally barred substantive claim cannot even be considered unless and until Bradley satisfies the actual-innocence exception.[86] And quite simply, evidence that was both known and available to trial counsel before trial does not qualify as "new." *See Floyd v. Vannoy*, 894 F.3d at 156 (because this fingerprint-comparison results was information not presented at trial, and remained unknown to the prosecution, defense, and trial judge throughout the trial, it is "new" evidence) (citing *Schlup*, 513 U.S. at 339, 115 S.Ct. 851); *Hancock v. Davis*, 906 F.3d 387, 390 (5th Cir. 2018); accord *Tyler v. Davis*, 768 F. App'x 264, 265 (5th Cir. 2019).

Even if considered for purposes of the actual innocence claim, the drug arrest report and the other available evidence does not lead to the conclusion that "no juror, acting reasonably, would have voted to find Bradley guilty beyond a reasonable doubt." Bradley argues that based on Dr. Garcia's testimony as to a 24-36 hour window for the time of death, the only two critical times are the 24-hour window placing time of death at 6:30 p.m. on July 31, 1999 (by which time Bradley was already arrested), and the 36-hour window placing time of death at 6:30 a.m. on July 31, 1999 (when surveillance fails to show Bradley at the saloon or in the alley). However, the medical examiner, Dr. Susan Garcia, merely gave an estimation. She did not specify an exact time of death, and, in fact, stated she could not do so. Dr. Garcia could offer only a general estimate as to the time of death about 24-36 hours.

[86] Bradley first alleged a claim of ineffective assistance of counsel concerning how defense counsel handled the surveillance video evidence, the impact of the prosecution showing still shots from the video in closing argument, and his failure to locate Mae Rivet Smith as a witness in his 2005 post-conviction relief application. ECF No. 21-1 at 923, 932-34, 961-68.

She testified that because the weather was warm and the changes in decomposition were early, she believed it could be closer to 24 hours, but simply could not give a precise time.[87] Contrary to Bradley's suggestion, Dr. Garcia's testimony does not lead to the inescapable conclusion that the victim's death occurred 24 hours before, at 6:30 p.m. on July 31, 1999, after Bradley's drug arrest.

Bradley's contention regarding the 36-hour window has nothing to do with his drug arrest report. It appears to be an attempt to challenge the sufficiency of the evidence or counsel's defense strategy, neither of which plays a role in determining actual innocence. The defense at trial sought to show that many other people could have killed the victim, and that the State's only eyewitness was untrustworthy, manipulative, and lying. Defense counsel had Detective Meunier's supplemental police report at trial and therefore was aware of the details of the investigation. At times, during Detective Meunier's testimony, he referred to the report.[88] The surveillance video was introduced at trial by the State and Detective Meunier testified that the video from the four surveillance cameras was used to assist in their investigation.[89] On cross-examination, Detective Meunier testified that the surveillance video showed the victim entering the alley alone and he was not seen ever exiting the alley.[90] He also testified that Mae Rivet Smith was seen entering and exiting the

[87] ECF No. 21-1, Trial Transcript (Dr. Garcia) at 407-08, 414-16.

[88] ECF No. 21-1, Trial Transcript (Detective Meunier) at 452, 457.

[89] *Id*. at 422, 439, 443.

[90] As Bradley points out, the video time stamp at 1:25 a.m. on July 31, 1999, depicting Sanford walking into the alleyway where he was found, was one piece of evidence that

alley at various times after the victim, but it was confirmed that she did so to retrieve a crack-pipe.[91] The jury accepted the version of events as Larck described them at trial. Bradley's story evolved over time after he was confronted with a surveillance tape of that evening, and he eventually admitted to police that he did know the victim and had arranged a drug sale for him. There was also testimony at trial that Bradley had fought with the victim earlier that evening thus providing a possible motive for the murder. And there was testimony that Larck repeated the story she told detectives to a fellow inmate and friend about how she was involved in the incident and that Bradley shot the victim.

The surveillance videotapes were admitted into evidence by the State, but were not shown to jurors during the trial testimony.[92] However, over defense counsel's objection, the prosecution played excerpts from the tapes during closing argument and identified the

---

guided the investigator's belief as to when and how the victim was killed and who committed the crime. The 1:25 a.m. time frame on July 31, 1999, falls only slightly outside the 36-hour window (by five hours) estimated by Dr. Garcia.

[91] ECF No. 21-1 at 463.

[92] Defense counsel tried this case twice. Although the transcript of the first trial is not part of the record, the minute entries from that trial do not reflect that the videotapes were admitted as exhibits or shown to the jury. ECF No. 21-1 at 19-24; *see also* ECF No. 21-3 at 1192, 24th JDC evidence list (8/27/2001). Based on the pretrial hearing transcript from August 2001, defense counsel believed the tape quality was perhaps less than ideal. ECF No. 21-1 at 381-83. Before the first trial, counsel made an oral motion in limine to restrict how the tapes would be used at trial. Specifically, defense counsel argued the tapes speak for themselves and it would be improper to use them for specific identification purposes (*i.e.,* detective for example identifying a particular person in the video). The State suggested it had no intention of using them for that purpose but did not want to preclude entirely the possibility. The trial judge did not rule on the motion, but stated the court will take it up if it becomes an issue. That trial ended in a 6-6 hung jury and the instant trial verdict was 11-1.

victim, Amy and Bradley on the tape.[93] The tape excerpts were effective as evidenced by the jurors' request for the video tapes shown during summation by the prosecutor and the complete set of surveillance tapes and videotape of Larck and Bradley.[94] Bradley takes issue with defense counsel's failure to use the tapes as part of the defense to show that Larck, Bradley and Russell were not seen leaving the alley after the victim entered. However, the Court notes that Detective Meuniere's report offers a possible explanation for why the other individuals would not have appeared in the video — a third exterior surveillance camera concealed atop a wooden pole on Jung Boulevard at the south-east corner of the alley behind the Happy Hour Saloon was positioned in such a way as to allow unobserved entry and exit of the alley if approached from the south on Jung Boulevard. The report states that Bradley and Russel were not captured on video surveillance entering the alley because they entered from the south on Jung Boulevard at the direction of Bradley. It also states that during questioning, Bradley acknowledged he was aware of the Jung Boulevard camera and its positioning in relation to the alley.[95] In any event, Bradley's contention again goes to the substantive claim of ineffective assistance of counsel, which is not before the Court. Nor would legal insufficiencies or legal errors make a colorable showing of factual innocence. Legal sufficiency is not the standard for an actual innocence claim. *Schlup*, 513 U.S. at 329; accord *Bosely v. Cain*, 409 F.3d 657, 665 (5th Cir. 2005) ("At best, [petitioner]'s new evidence

---

[93] ECF No. 21-1 at 713-19, Trial Transcript (Closing Argument).

[94] ECF No. 21-2 at 1832-34.

[95] ECF No. 21-2 at 628, 633.

shows that a reasonable doubt could have been found to exist; it fails, however, to satisfy his burden of showing that no reasonable juror would have found him guilty."); *Watson v. Dretke*, No. 2:01-cv-0298, 2004 WL 1454405, at *3 (N.D. Tex. June 25, 2004), *adopted*, 2004 WL 1630237 (N.D. Tex. July 21, 2004). To the extent Bradley challenges the sufficiency of the evidence or trial counsel's alleged ineffective trial strategy he fails to satisfy the rigorous burden of proving actual innocence.

After assessing all the evidence, including the proffered new evidence, the Court finds that Bradley has not convincingly established actual innocence. Bradley has not satisfied the demanding actual-innocence gateway exception by setting forth new reliable evidence demonstrating that it is more likely than not that no reasonable juror would have found him guilty beyond a reasonable doubt after considering the new evidence.

In sum, the instant petition was filed well beyond the one-year federal limitations period. Bradley has not established that he is entitled to statutory tolling or shown any credible basis for equitable tolling or actual innocence to avoid the time-bar. His federal application for habeas corpus relief is therefore untimely and should be dismissed with prejudice.

## RECOMMENDATION

For the foregoing reasons, it is **RECOMMENDED** that Earl Bradley's untimely application for federal habeas corpus relief be **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14)

days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. 28 U.S.C. § 636(b)(1); *Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).[96]

New Orleans, Louisiana, this 24th day of March, 2026.

**MICHAEL B. NORTH**
**UNITED STATES MAGISTRATE JUDGE**

[96] *Douglass* referenced the previously applicable 10-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend that period to 14 days.