**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **EARL BRADLEY** | **CIVIL ACTION** |
| **VERSUS** | **NO. 24-2678** |
| **TIM HOOPER, WARDEN** | **SECTION "P" (5)** |

PETITIONER'S OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Petitioner Earl Bradley, through undersigned counsel, respectfully submits the following objections to the March 24, 2026 Report and Recommendation ("R&R") recommending dismissal of his 28 U.S.C. § 2254 petition as untimely.

Petitioner objects on the grounds that the R&R (1) misapplies AEDPA's statute of limitations framework, including 28 USCS § 2244; (2) imposes an unduly restrictive view of equitable tolling; (3) construes the *McQuiggin v. Perkins*, 569 U.S. 383 (2013) actual-innocence gateway far more narrowly than Supreme Court and Fifth Circuit precedent permit; (4) misapplies *Brady*[1]/*Napue*[2] materiality and diligence standards; and (5) resolves complex credibility and factual disputes without the evidentiary hearing required under controlling authority.

Petitioner requests de novo review of all legal conclusions and all factual findings to which these objections are directed, and ultimately denial of the State's timeliness objection, an evidentiary hearing, and merits relief or, at minimum, a conditional grant of the writ.

OBJECTION #1: THE R&R MISAPPLIES AEDPA'S LIMITATIONS FRAMEWORK, INCLUDING § 2244(d)(1)(D)

Section 2244(d)(1)(D) provides a later trigger date for the *Brady/Napue* claims

[1] *Brady v. Maryland*, 373 U.S. 83 (1963)
[2] *NAPUE v. ILLINOIS*, 360 U.S. 264 (1959)

The R&R holds that 28 USCS § 2244(d)(1)(A) governs the petition as a whole and rejects application of 28 USCS § 2244(d)(1)(D) to Bradley's *Brady* and *Napue* claims based on newly discovered evidence of Amy Larck's out-of-state criminal history and probation status at the time of her testimony. That conclusion conflicts with the statute's text and with the Fifth Circuit's approach in both published and analogous contexts. Section 2244(d)(1) expressly provides that the one-year limitations period runs from the latest of four possible dates, including:

> "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence."
> 28 U.S.C. § 2244(d)(1)(D).

The Fifth Circuit has recognized that the limitations period may be triggered claim-by-claim, not necessarily by a single date for the entire application. In *In re Young*, 789 F.3d 518 (5th Cir. 2015), the court observed that "it appears that applying the statute of limitations to each claim is consistent with AEDPA and the precedent of other circuits," even though it did not have to decide the question definitively in that case. *Id*, 789 F.3d at 528, n. 3.

The R&R acknowledges *Young*'s dicta but then effectively treats the limitations period as governed solely by 28 USCS § 2244(d)(1)(A) for all claims, notwithstanding the fundamentally different factual predicate underlying the 2022–2023 *Brady*/*Napue* claims.

Here, the "factual predicate" of the *Brady* and *Napue* claims is: Larck had prior felony convictions in Florida (including child-abuse-related conduct and prostitution), she was on Florida probation at the time of the Louisiana homicide and had absconded, and the State failed to disclose this information and allowed her to testify falsely that her first conviction occurred in Louisiana in July 1999.

These are "new facts" in the sense relevant to 28 USCS § 2244(d)(1)(D): they were not known to the defense, they transformed the legal significance of Larck's testimony, and they directly

support the existence of constitutional claims (*Brady* and *Napue*) that did not exist in a legally cognizable form until that evidence surfaced. The R&R itself acknowledges that counsel first uncovered this out-of-state history via a Lexis search on December 25, 2022, then quickly confirmed the Florida records and promptly raised them in state post-conviction filings beginning December 28, 2022.

On those dates the *Brady/Napue* "claims presented" were newly viable. Under the Fifth Circuit's definition, the 28 USCS § 2244(d)(1)(D) "factual predicate" date is the date the petitioner is "on notice of the facts which would support a claim, not the date on which the petitioner has in his possession evidence to support his claim." *In re Young*, 789 F.3d at 528 (cited in the R&R). That standard is satisfied here by the December 25, 2022, discovery of the multi-state criminal history and probation status via Lexis, even before the certified records were obtained. The R&R's own chronology shows that, using December 25, 2022, as the trigger date, and tolling for the pendency of Bradley's fifth state PCR application through the Louisiana Supreme Court's denial on May 7, 2024, the November 14, 2024, federal filing is timely as to the *Brady* and *Napue* claims.

The R&R concedes as much but then refuses to give operative effect to 28 USCS § 2244(d)(1)(D), reasoning instead that because the same information "could" have been discovered earlier, subsection (D) does not apply. That reasoning improperly collapses the trigger inquiry into the diligence inquiry and fails to give meaningful effect to 28 USCS § 2244(d)(1)(D) in the *Brady/Napue* context.

<u>The R&R misapplies the "could have been discovered" / due-diligence standard</u>

The R&R's primary rationale for rejecting § 2244(d)(1)(D) is that, in its view, Larck's extra-jurisdictional record "could have been discovered" earlier because_defense counsel knew she was transient, she admitted extensive Louisiana convictions, the defense had long challenged her credibility, and_counsel (or some attorney over the ensuing 20-plus years) could have run a

nationwide criminal-history search sooner. But due diligence does not require omniscience, nor does it impose a duty on a capital or life-sentenced prisoner to repeatedly re-litigate every potential impeachment angle over decades with ever-evolving investigative tools. The Fifth Circuit's diligence precedents—primarily in the successive-petition context—make clear that the question is whether the factual predicate "could not have been discovered previously through the exercise of due diligence," not whether, with hindsight, a more expansive investigation might have been imagined. 28 USCS § 2244(d)(1)(D); *McQuiggin v. Perkins*, 569 U.S. at 394-398.

In the case at bar, Bradley's trial counsel and previous appellate and post-conviction counsel were all under the assumption, apparently, that all of Larck's criminal history records were not disclosed. It was only in the process of trying to find Larck that current counsel discovered that she had other convictions and was on probation at the time of her trial testimony, which was not disclosed by the State <u>at all</u>.

Moreover, 28 USCS § 2244(d)(1)(D) speaks in terms of the claim's factual predicate. Before the Florida and North Carolina records were uncovered, Bradley already had impeachment "themes" (drug use, Louisiana convictions, pathological lying) and used them at trial and in post-conviction, but he did not have a factual predicate for the specific federal constitutional claims at issue here: a *Brady* claim based on suppression of out-of-state convictions and absconded probation; and a *Napue* claim based on trial testimony falsely portraying Larck as first becoming a criminal only in Louisiana in July 1999, with the State's knowledge of her probationary status and prior felony record.

The fact that some impeachment was available and used earlier does not mean that the State's nondisclosure of additional, fundamentally different impeachment—probation absconding on a child-abuse-related case, directly tied to her motive to curry favor—was discoverable with "reasonable diligence" in 1999–2002. The R&R assumes, without any evidentiary record, that the

Jefferson Parish DA's Office necessarily had these Florida and North Carolina records, defense counsel should have expected out-of-state convictions despite Larck's testimony, and it was reasonable to demand that an indigent defendant's trial and post-conviction counsel repeatedly scour nationwide databases for every State's records for every jailhouse witness. That is an evidentiary and legal leap unsupported by the present record.

The R&R relies heavily on *In re Cantu*, 94 F.4th 462 (5th Cir. 2024) and similar diligence cases under 28 USCS § 2244(b)(2)(B). But those decisions involve the much more stringent successive-petition gatekeeping standard, not the initial-petition limitations trigger under 28 USCS § 2244(d)(1)(D), and they stress that suppressed *Brady* material cannot by itself satisfy diligence where the defendant had contrary indications in the record. Here, by contrast, nothing in the trial record signaled that Larck had fled supervision in Florida on serious charges and was testifying while wanted or exposed to revocation; indeed, she affirmatively suggested that her first contact with the criminal justice system was in Louisiana in July 1999. That is the kind of hidden, high-motive leverage that is quintessential *Brady* material. At minimum, the 28 USCS § 2244(d)(1)(D) diligence question cannot be resolved against Bradley without an evidentiary hearing.

Even if the Court ultimately concludes that diligence under 28 USCS § 2244(d)(1)(D) is a close question, it cannot be resolved against Bradley on this paper record alone. The R&R draws sweeping inferences about what Bradley's many counsel "could have" done, how readily Florida and North Carolina convictions were accessible in the late 1990s and early 2000s, and what records the prosecution actually possessed or searched—all without evidence. These are classic fact questions inappropriate for resolution without an evidentiary hearing, particularly where, as here, those same facts go to the heart of the *Brady* and *Napue* claims, not just timeliness.

Under *Schriro v. Landrigan*, 550 U.S. 465, 474-475 (2007), a federal court may deny a hearing only when "the record refutes the applicant's factual allegations or otherwise precludes habeas

relief." *See also Shank v. Vannoy*, 2017 U.S. App. LEXIS 25179, *7 (5th Cir. Oct. 26, 2017). The R&R invokes *Schriro* to deny a hearing on timeliness, relying on the public record alone. But the record here does not refute Bradley's allegations that the State suppressed out-of-state criminal and probation records, neither he nor his counsel had any actual knowledge of those records before December 2022, and reasonable diligence at trial and in earlier state PCR proceedings would not necessarily have uncovered the specific factual constellation (Florida probation absconder; serious child-abuse-related and prostitution convictions; favorable dispositions after return) that now underpins both the constitutional claims and the § 2244(d)(1)(D) trigger.

Under *Townsend v. Sain* and its progeny, when "material facts were not adequately developed" in state court and there is a "substantial allegation of newly discovered evidence," a federal evidentiary hearing is warranted. Whether § 2244(d)(1)(D) applies is itself intertwined with the merits of the *Brady*/*Napue* claims. The R&R's purely record-based rejection of subsection (D) is therefore erroneous. *Townsend v. Sain*, 372 U.S. 293, 312-314 (1963).

OBJECTION #2: THE R&R APPLIES AN UNDULY RESTRICTIVE EQUITABLE TOLLING STANDARD

The R&R further holds that equitable tolling is unwarranted because (1) suppression of Larck's criminal history and probation status is not an "extraordinary circumstance," and (2) Bradley did not exercise sufficient diligence over the 20-plus years since his conviction. That analysis conflicts with *Holland v. Florida*, 560 U.S. 631 (2010) and its application in the Fifth Circuit. Under *Holland*, a petitioner is entitled to equitable tolling when he shows "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." *Holland v. Florida*, 560 U.S. at 649.

The Fifth Circuit has emphasized that equitable tolling is available in "rare and exceptional circumstances," but it remains a flexible, case-specific doctrine. *Davis v. Johnson*, 158 F.3d 806, 811

(5th Cir. 1998). State suppression of exculpatory evidence can constitute an "extraordinary circumstance". The R&R summarily concludes that "the alleged suppression at the time of trial does not qualify as an extraordinary circumstance preventing him from seeking timely federal relief, because, as previously addressed, the information was available and could have been discovered in the 20 years since trial."

That conclusion is both fact-driven and legal; on both fronts, it is problematic. Factually, the State's suppression of Larck's out-of-state record deprived Bradley of the very information that would have alerted him to an actionable *Brady*/*Napue* violation and to a powerful actual-innocence case. The R&R itself acknowledges that the Louisiana Fifth Circuit accepted there was a discovery violation—i.e., a failure to disclose—though it found it cumulative under state law.

Where suppressed evidence not only underpins a new constitutional claim but goes to the reasonableness of the petitioner's delay in filing, federal courts have recognized that such concealment can be an extraordinary circumstance justifying equitable tolling. *Clarke v. Rader*, 721 F.3d 339, 344 (2013); *In re Wilson*, 442 F.3d 872, 875 (2006). Legally, *Holland* does not require that the extraordinary circumstance physically prevent filing; it is enough that it "stood in the way" and "prevented timely filing" in a causal sense. *Holland v. Florida*, 560 U.S. at 649-650; *Shank v. Vannoy*, 2017 U.S. App. LEXIS 25179, *4. The State's concealment of the very facts necessary to articulate a viable *Brady*/*Napue* claim did exactly that: it prevented Bradley from timely asserting the present claims because he lacked the factual basis to do so. The R&R's contrary view effectively writes *Brady*-type impediments out of the equitable-tolling doctrine.

<u>The R&R undervalues Bradley's post-discovery diligence</u>

*Holland*'s diligence requirement is not perfection over decades; it is whether the petitioner, "with reasonable diligence," pursued his rights in light of the circumstances. *Shank v. Vannoy*, *supra*.

Once Bradley, through present counsel, identified Larck's hidden criminal history and probation records in late 2022, he moved with speed:

- December 25, 2022: Lexis search reveals out-of-state record and probation status.
- December 28, 2022: Fifth state PCR application filed citing this newly discovered evidence and raising *Brady*/*Napue* and actual-innocence claims.
- 2023–2024: Litigation of those claims in state courts through the Louisiana Supreme Court's May 7, 2024 denial.
- November 14, 2024: § 2254 petition filed in this Court asserting the same claims.

The R&R concedes that, if December 25, 2022 is used as the start date for the *Brady* and *Napue* claims, the federal filing is timely. This same chronology demonstrates diligence for equitable-tolling purposes: once the predicate facts came to light, Bradley promptly and continuously litigated them in state and federal court. That satisfies *Holland*'s diligence prong even if the Court ultimately disagrees about § 2244(d)(1)(D)'s application.

<u>The R&R's reliance on generic "ignorance of the law" cases is misplaced</u>

The R&R cites standard Fifth Circuit language that ignorance of the law, pro se status, or ordinary prison conditions do not justify equitable tolling. Those principles are correct but inapposite: Bradley is not claiming that mere lack of legal sophistication or typical prison barriers delayed his filing; he is arguing that a concealed body of exculpatory and impeachment evidence, uniquely within the State's control, prevented him from timely raising the *Brady*/*Napue* claims and from marshaling a compelling actual-innocence showing.

<u>Equitable tolling is reserved for "rare and exceptional circumstances."</u>

A homicide conviction obtained largely on the testimony of a single witness later revealed to be a multi-state felon and probation absconder—whose true criminal history and state leverage were never disclosed—fits squarely within that exceptional category.[3]

OBJECTION #3: THE R&R MISAPPLIES THE *McQUIGGIN* / *SCHLUP* ACTUAL-INNOCENCE GATEWAY

The R&R acknowledges *McQuiggin v. Perkins*, which holds that "actual innocence, if proved, serves as a gateway through which a petitioner may pass to excuse the expiration of the statute of limitations." *McQuiggin v. Perkins*, 569 U.S. 383, 386 (2013). It correctly recites that under *Schlup v. Delo*, a petitioner must present "new reliable evidence … not presented at trial" and show that, in light of the new evidence plus the old, "it is more likely than not that no reasonable juror would have found him guilty beyond a reasonable doubt." *Schlup v. Delo*, 513 U.S. 298, 324-29 (1995). It then proceeds, however, to treat this standard as nearly insurmountable, discounting each category of Bradley's new evidence in isolation and mischaracterizing his claim as merely another sufficiency challenge.

The Fifth Circuit's decision in *Floyd v. Vannoy* illustrates the proper approach. *Floyd v. Vannoy*, 894 F.3d 143 (5th Cir. 2018). There, the court held that an untimely § 2254 petition could proceed under *McQuiggin* where new fingerprint-comparison evidence and a corroborating affidavit sufficiently undermined the State's identification case. *Floyd v. Vannoy*, 894 F.3d at 160. The court emphasized that: the gateway test requires evaluation of the "overall, newly supplemented record," not piecemeal scrutiny, new scientific or documentary evidence is inherently less susceptible to manipulation and thus often highly reliable, and even delayed affidavits can retain reliability where circumstances suggest no improper motive and where they are corroborated by objective evidence.

[3] Lest we not forget that Larck has stated on multiple occasions that she lied at Bradley's trial.

Bradley has presented multiple forms of "new reliable evidence" within the meaning of *Schlup* and *Floyd*. The R&R under-credits the breadth and interlocking nature of Bradley's newly presented evidence:

1. Video and police-report evidence: The surveillance footage and Detective Meunier's supplemental report show that only the victim entered the alley at approximately 1:25 a.m. on July 31, 1999, and that no one matching Bradley's or Larck's description is seen entering or exiting the alley in the relevant window. The R&R acknowledges this but dismisses it as known to defense and thus not "new," and as compatible with an alternative entry route. Under *Schlup*, however, "new" means not presented to the jury; evidence may be "new" even if known in some form to counsel, where it was never actually put before the factfinder. Here, the jury never saw the key portions of the video demonstrating that Sanford entered the alley alone and never re-emerged, nor did it hear the detailed explanation from the supplemental report regarding the absence of Bradley and Larck on any camera angle.
2. Medical examiner evidence: Dr. Garcia's 24-to-36-hour time-of-death estimate, when aligned with the undisputed fact that Bradley was arrested and in custody at 7:50 a.m. on July 31, 1999, substantially narrows the possible time window in a manner favorable to innocence. The R&R treats this as trial-known and therefore not "new," but the point is that trial counsel failed to marry the ME's estimate with the arrest timing and video chronology to present a coherent exculpatory theory. Under *Schlup*, such previously unpresented syntheses of known components—especially when corroborated by objective documents—can constitute "new" evidence.
3. Mae Rivet Smith affidavit: Smith's sworn statement, corroborated by the video and reports, places Bradley in the doorway of the Happy Hour when shots were heard

from elsewhere, states that Sanford was not yet in the alley at that time, affirms that she was in and out of the alley repeatedly and did not see a body until Sunday afternoon, and asserts that Larck and Russell were not present that weekend. The R&R discounts Smith because she was "known" to police, had earlier contact with investigators, and her vantage point allegedly could not see into the alley. But Smith's willingness now, decades later, to swear that she would have seen Sanford's body had it been there earlier—and her account's concordance with the video timing—constitute precisely the sort of "trustworthy eyewitness account" *Schlup* contemplates.

4. Terri-Lee Isaac affidavit documenting Larck's recantations: Isaac's affidavit recounts Larck's written and social-media admissions that she lied at trial after being threatened with accessory charges, that she was not at the Happy Hour the night of the murder, and that detectives led her through her statement. The R&R invokes skepticism toward recantations generally and notes that Larck herself has not sworn an affidavit. But as *Floyd* teaches, the reliability calculus takes into account corroboration and context. Here, Isaac's account is corroborated by Larck's actual letters (with envelopes) and Facebook messages that match her narrative, and by the independent inconsistency between Larck's trial testimony and the objective video/ME evidence. Nor is the passage of time dispositive. In *Floyd* the Fifth Circuit accepted post-trial affidavits where circumstances suggested no motive to lie. *Floyd v. Vannoy*, 894 F.3d at 159.

5. Albert Russell affidavit: Russell's statement that he never saw or knew the victim, was not at the Happy Hour, and sat in jail for a crime he did not commit, while less directly exculpatory of Bradley, nonetheless undermines the State's theory that both

men approached Sanford in the alley as Larck claimed. The R&R dismisses Russell's affidavit as self-serving, but under *Schlup* it must be evaluated in conjunction with the rest of the record.

6. Newly discovered impeachment / motive evidence regarding Larck: As discussed above, the Florida and North Carolina convictions and probation records demonstrate that Larck was a multi-state felon, probation violator, and fugitive at the time she implicated Bradley; that she received exceptionally lenient treatment upon her return to Florida; and that the jury was given a materially sanitized account of her criminal history and motives. In *Floyd*, the Fifth Circuit gave substantial weight to "credibility" evidence that undermined the State's lone eyewitness and combined with scientific evidence, rendered the conviction unreliable. The same dynamic is present here. *Floyd v. Vannoy*, 894 F.3d at 162-167.

The R&R improperly weighs and atomizes the new evidence instead of assessing the "newly supplemented record" as a whole. *McQuiggin* and *Floyd* require the court to consider "the overall, newly supplemented record," and to ask whether, in light of all of the evidence, "no juror, acting reasonably, would have voted to find [petitioner] guilty beyond a reasonable doubt." The R&R instead rejects each affidavit or item of evidence in isolation based on credibility quibbles, repeatedly notes that some impeachment was already presented at trial, and concludes that, because a rational juror could still believe some version of Larck's story, the gateway standard is not met. That approach conflates the *Schlup* question with a sufficiency review. As the Supreme Court and Fifth Circuit have stressed, the actual-innocence gateway asks whether the totality of new and old evidence would leave any reasonable juror convinced of guilt beyond a reasonable doubt—not whether the State's evidence retains some theoretical plausibility.

Here, when the record is properly synthesized, the State's case collapses. There is no physical evidence linking Bradley to the shooting. There was no confession. At most, there were inconsistent statements about his contact with the victim, which are consistent with drug-transaction involvement but not homicide. The only eyewitness account placing Bradley in the alley with a gun is contradicted by surveillance footage showing Sanford alone entering and never exiting, a ME time-of-death estimate inconsistent with the State's chronology, Smith's affidavit and the video indicating no body present until Sunday, Larck's own extra-judicial admissions that she was not there and was pressured to testify, and newly revealed evidence of Larck's powerful motive to curry favor to avoid Florida probation revocation and further incarceration.

Under Floyd's framework, this combination of objective documentary/forensic evidence, corroborated eyewitness affidavits, and powerful impeachment of the lone State witness suffices to cross the *McQuiggin* gateway.

The R&R's emphasis on "delay" contradicts *McQuiggin*'s holding that lack of diligence is a factor, not a bar. The R&R repeatedly references the "two-decade delay" in discovering or presenting some of this evidence and suggests that delay undercuts reliability. *McQuiggin* held that "unjustifiable delay" may inform a court's assessment of the reliability of actual-innocence evidence, but it expressly rejected any threshold diligence requirement.

Scientific and documentary evidence, in particular, "is less susceptible to manipulation" and therefore may remain reliable despite time lapses. Here, the critical new components—surveillance-video interpretation tied to time-of-death and arrest records, out-of-state conviction and probation records, and the civil-rights allegations against Detective Thurman—are documentary and objective in nature. Their reliability is not diminished by when they were unearthed. Indeed, the reason they were not used earlier is itself part of the *Brady*/*Napue* story. Under *McQuiggin*, that is not a permissible ground to deny gateway relief at the threshold.

## OBJECTION #4: THE R&R MISAPPLIES *BRADY/NAPUE* MATERIALITY AND IMPROPERLY RESOLVES THOSE CLAIMS UNDER THE GUISE OF LIMITATIONS

Although ostensibly focused on timeliness, the R&R effectively reaches and rejects the *Brady* and *Napue* claims on the merits, concluding that the newly discovered out-of-state convictions and probation status are "cumulative" of existing impeachment, they are not "material" under *Brady* because they would not place the case in a "different light", and any *Napue* violation is non-material because the new facts would not have changed the verdict. Those conclusions conflict with Supreme Court precedent such as *Kyles v. Whitley*, 514 U.S. 419 (1995), *Wearry v. Cain*, 577 U.S. 385 (2016), *Smith v. Cain*, 565 U.S. 73 (2012), *Cone v. Bell*, 556 U.S. 449 (2009), and with the Fifth Circuit's own articulation of materiality in cases like *Floyd*. *Floyd v. Vannoy*, 894 F.3d at 165-167.

Cumulative-evidence characterization is improper where the new impeachment alters the fundamental "story" and motive. The R&R reasons that because the jury knew Larck was a drug-addicted prostitute with Louisiana convictions and a plea agreement, her undisclosed Florida and North Carolina convictions and probationary status add "relatively little weight" and are "merely cumulative" impeachment. That misapprehends *Brady*'s cumulative-evidence doctrine.

As *Kyles* explains, evidence can be "cumulative" only if it is "of the same kind" and does not add a new dimension that would "put the whole case in such a different light as to undermine confidence in the verdict." *Kyles*, 514 U.S. at 435. Here, the out-of-state record does far more than incrementally reinforce the notion that Larck was a liar or criminal. This evidence demonstrates that, contrary to her sworn testimony, she had been a criminal for years before Louisiana, including felony child-abuse-related conduct and prostitution convictions. The evidence shows she was on Florida probation and an absconder at the time she implicated Bradley. Finally, the evidence strongly suggests she received lenient treatment in Florida after being returned from Louisiana, which is

classic evidence of an undisclosed inducement or expectation of leniency. This is not simply "more of the same" impeachment. It fundamentally alters the jury's understanding of who Larck was and what leverage the State had over her, paralleling the Supreme Court's reasoning in *Wearry* and *Smith* where impeachment of the State's key witness was found material even where some impeaching facts were already before the jury. *Wearry v. Cain*, 577 U.S. at 392-394; *Smith* v. *Cain*, 565 U.S. at 76.

The R&R applies an impermissibly outcome-determinative, rather than confidence-in-the-verdict, test. *Brady* materiality does not require proof that the defendant "more likely than not" would have been acquitted, only that the suppressed evidence "could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict." The R&R, however, repeatedly asks whether the new impeachment would necessarily have changed the jurors' minds, and whether the State's case remains theoretically viable, thereby imposing a sufficiency-type test inappropriate at the *Brady* stage.

Given that the State's case rested "almost entirely" on Larck's testimony—precisely the scenario *Kyles*, *Smith*, and *Wearry* identify as one where impeachment evidence is especially likely to be material—the suppression of evidence that she was a multi-state felon, on probation, and a fugitive from that probation when she testified cannot be dismissed as immaterial as a matter of law. A reasonable juror, learning that the lone eyewitness had lied about being a first-time offender and was in fact testifying under the shadow of potential revocation and new charges in another state, could easily harbor reasonable doubt.

The R&R's *Napue* analysis is truncated and ignores constructive knowledge and the low materiality threshold. Under *Napue*, a conviction obtained through the State's knowing use of false material testimony violates due process. Materiality in the *Napue* context is satisfied if there is "any reasonable likelihood that the false testimony could have affected the judgment of the jury"—a

standard even more defense-friendly than *Brady*'s "reasonable probability." *Glossip v. Oklahoma*, 604 U.S. 226, 246 (2025).

Here, there is every indication that:

1. Larck testified falsely when she claimed her first conviction was in Louisiana in July 1999 and presented herself as a previously law-abiding telemarketer from Illinois;
2. the State either actually or constructively knew of her Florida and North Carolina record and probation status by the time of trial, given her incarceration for years and routine interstate record checks;
3. this misrepresentation went directly to her credibility and motive.

The R&R dismisses the *Napue* claim largely on the same "cumulative" and "immaterial" grounds as the *Brady* claim. But under *Napue*'s "reasonable likelihood" standard, the question is simply whether correcting Larck's falsehoods about when and where her criminal career began, and exposing her probationary exposure, could have influenced at least one juror. With an 11–1 verdict and a first trial that hung 6–6, the answer is plainly yes.

OBJECTION #5: THE R&R ERRONEOUSLY DENIES ANY EVIDENTIARY HEARING

Finally, the R&R concludes that "regardless whether Bradley's claims are cognizable or otherwise procedurally barred, the petition must be dismissed as untimely" and that "an evidentiary hearing is not required to resolve the matter," relying on *Shank v. Vannoy*, *supra*. But *Shank*'s procedural posture and record are materially different, and the R&R's refusal to hold a hearing here conflicts with both *Schriro* and *Townsend*.

In *Shank*, the Fifth Circuit denied a certificate of appealability where the petitioner's limitations arguments failed on their face, and he presented no new reliable evidence of actual innocence. The panel emphasized *Shank* had no new evidence, that the timeline was undisputed, and that there were no factual disputes requiring a hearing. By contrast, in Bradley's case:

1. There is extensive new record evidence post-dating the original trial—video analysis, ME timing synthesis, affidavits of Smith, Isaac, and Russell, and newly uncovered criminal/ probation history of the State's key witness;
2. the significance of that evidence for both timeliness (via § 2244(d)(1)(D), equitable tolling, and the *McQuiggin* gateway) and the merits is sharply disputed; and
3. the R&R itself repeatedly weighs credibility, posits alternative interpretations of the video and time-of-death, and draws inferences about counsel's and the State's knowledge—classic issues requiring live testimony.

Under *Schriro*, no hearing is necessary only when the record conclusively precludes relief. Here, far from precluding relief, the existing state-court record and newly submitted materials strongly support at least the timeliness of the *Brady*/*Napue* claims under 28 USCS § 2244(d)(1)(D), equitable tolling based on State suppression and post-discovery diligence; and the *McQuiggin*/*Schlup* actual-innocence gateway, given the overall newly supplemented record.

*Townsend* expressly contemplates hearings in precisely such circumstances: where "the merits of the factual dispute were not resolved in the state hearing," "the fact-finding procedure employed by the state court was not adequate to afford a full and fair hearing," and there is a "substantial allegation of newly discovered evidence." *Craker v. Procunier*, 756 F.2d 1212, 1214 (5th Cir. 1985) Every one of those conditions is met here. No state court has ever heard from Smith, Isaac, or Russell live, no factfinder has confronted Larck with her newly uncovered criminal history and correspondence; and no court has taken testimony from Detective Meunier, the prosecutors, or Florida probation officials about what was known and withheld. Denying a hearing on this record both misapplies AEDPA's hearing standard and deprives Bradley of the "one meaningful opportunity" to present his evidence of innocence.

CONCLUSION

For the foregoing reasons, Petitioner respectfully objects to the Report and Recommendation's conclusions that § 2244(d)(1)(A) categorically governs the petition and that 28 USCS § 2244(d)(1)(D) is inapplicable to the *Brady/Napue* claims, equitable tolling is unavailable despite State suppression and post-discovery diligence, the *McQuiggin* actual-innocence gateway is not satisfied, the newly discovered impeachment and recantation evidence is immaterial for *Brady* and *Napue* purposes; and no evidentiary hearing is warranted.

WHEREFORE, Petitioner requests that the District Judge: reject the R&R's timeliness analysis; hold that the *Brady* and *Napue* claims are timely under 28 USCS § 2244(d)(1)(D), and that in any event the entire petition is reviewable under the *McQuiggin* actual-innocence gateway and equitable tolling; order an evidentiary hearing on timeliness, actual innocence, and the *Brady/Napue* and ineffective-assistance claims; and after such hearing, grant the writ, vacate Bradley's conviction and sentence, and order the State to retry him within a reasonable time or release him or for any other remedy this Court deems just and proper.

**Dated: April 5, 2025**
**Forest Hills, NY**

RESPECTFULLY YOURS,

Justin Bonus

**JUSTIN C. BONUS, ESQ.**
**(Pro Hac Vice)**
305 Broadway, 7th Floor
New York, NY 10007
(347)920-0160
justin.bonus@gmail.com

The Lasiter Law Firm

P. Walker Lasiter, Bar Roll # 38102
4430 Laurel Street
New Orleans, LA 70115
504-388-7769
pwlasiter@gmail.com

Attorneys for Petitioner,
Earl Bradley